**COZEN O'CONNOR**
Maria Louise Cousineau (SBN 002876)
*maria.cousineau@cozen.com*
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: (213) 892-7900
Facsimile: (213) 892-7999

**GASS WEBER MULLINS LLC**
J. Ric Gass (admitted *pro hac vice*)
*gass@gwmlaw.com*
Michael B. Brennan (admitted *pro hac vice*)
*brennan@gwmlaw.com*
309 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414)223-3300
Facsimile: (414)224-6116

**CHRISTIAN, KRAVITZ, DICHTER, JOHNSON & SLUGA, LLC**
Martin J. Kravitz
*mkravitz@ksjattorneys.com*
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 362-6666
Facsimile: (702) 992-1000

Attorneys for Plaintiff
CENTURY SURETY COMPANY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CENTURY SURETY COMPANY, a foreign corporation;<br><br>Plaintiffs,<br><br>v.<br><br>DENNIS PRINCE, GEORGE RANALLI, and SYLVIA ESPARZA,<br><br>Defendants. | Case No.: **2:16-cv-02465**<br><br>**COMPLAINT** |

Plaintiff Century Surety Company ("Century Surety"), by and through its attorneys, Maria Cousineau of Cozen & O'Connor, J. Ric Gass and Michael B. Brennan of Gass Weber Mullins LLC, and Marty Kravitz of Christian, Kravitz, Dichter, Johnson & Sluga, LLC, for its Complaint against

1

Defendant Dennis Prince, Defendant Sylvia Esparza, and Defendant George Ranalli, state, assert, and allege as follows:

**NATURE OF THE CASE**

1. This lawsuit alleges that three Las Vegas lawyers violated Nevada's RICO law as well as engaged in a civil conspiracy when they created and brought about a bad faith insurance "set up" which resulted in a multi-million dollar judgment against Plaintiff Century Surety in Clark County District Court Case No. A-11-632845-C.

2. Clients represented by Defendant Prince now seek to collect this fraudulently obtained default judgment from Plaintiff Century Surety in an action pending in the United States District Court for the District of Nevada, *Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev.), alleging that the misrepresentations adopted in the default judgment are binding on Plaintiff Century Surety.

**PARTIES**

3. At all times relevant herein, Century Surety is and was a foreign corporation domiciled in the State of Ohio and authorized to do the business of insurance as a surplus lines carrier in the State of Nevada since August 31, 1995. Century Surety is currently active and in good standing in the State of Nevada.

4. Dennis Prince is a lawyer licensed to practice in the State of Nevada. Attorney Prince previously practiced with the law firm of Prince & Keating, and he now practices with the law firm of Eglet Prince, 400 S. 7th Street, Suite 400, Las Vegas, NV 89101.

5. George Ranalli is a lawyer licensed to practice in the State of Nevada, who practices with the law firm of Ranalli, Zaniel, Fowler & Moran, LLC, located at 2400 W. Horizon Ridge Pkwy., Henderson, NV 89052.

6.  Sylvia Esparza is a lawyer licensed to practice in the State of Nevada, who practices at 3340 Pepper Lane # 105, Las Vegas, NV 89120.

## JURISDICTION and VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff Century Surety is domiciled in a state different than that of the Defendants and the amount in controversy exceeds $75,000.

8.  Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside in this District (as defined in 28 U.S.C. § 1391(b)(1)), and a substantial part of the events giving rise to the claim occurred in this District (as defined in 28 U.S.C. § 1391(b)(2)).

## SUMMARY OF THE BAD FAITH SET-UP

9.  This case arises from an accident in which Ryan Pretner ("Pretner") was injured by a Ford F-150 pickup truck driven by Michael Vasquez ("Vasquez") while Pretner was riding his bicycle on a Nevada highway (the "Accident").[1]  The Ford F-150 truck was covered by a personal auto liability insurance policy ("Personal Auto Policy") issued to Vasquez by Progressive Casualty Insurance Company ("Progressive").  Vasquez was the sole owner and manager of Blue Streak Auto Detailing, LLC ("Blue Streak"), which had a Commercial Liability Garage Coverage policy ("Garage Policy") issued by Plaintiff Century Surety.  According to every account of the accident, Vasquez was driving the Ford F-150 as his personal vehicle to run a personal errand and was not in the course and scope of his employment with Blue Streak at the time of the Accident.

10.  After previously being represented by Defendant Esparza, Pretner and his co-legal guardians retained Defendant Prince to pursue a personal injury action as a result of the Accident. Because Defendant Prince regularly represented Progressive and considers Progressive a client, Defendant

---

[1] After Pretner was injured, Dana Andrew, Pretner's sister, and Lee Pretner, Pretner's father, were appointed as co-legal guardians.

Prince informed Progressive that he planned to represent Plaintiffs before filing suit against Vasquez and Blue Streak, but assured Progressive that he planned to set up Plaintiff Century Surety for a subsequent bad faith claim and that he would not pursue Vasquez personally. After striking this deal with Progressive, Defendant Prince filed Clark County District Court Case No. A-11-632845-C against Vasquez and Blue Streak alleging that Vasquez was in the course and scope of his business with Blue Streak at the time of the Accident. There was no evidence to support this allegation and all of the evidence available and known to Defendant Prince, as well as Defendant Esparza and Defendant Ranalli, expressly contradicted material allegations in the complaint in Clark County District Court Case No. A-11-632845-C.

11.     Despite assuring Progressive that Vasquez had an indefinite extension of time in which to answer the complaint and promising not to enter default, Defendant Prince subsequently entered defaults against Blue Streak and Vasquez, representing to the Clark County District Court in Case No. A-11-632845-C that no extension had been granted. Defendant Prince then orchestrated a settlement agreement along with the help of Defendant Ranalli under which Progressive agreed to pay Pretner and his co-legal guardians the $100,000 policy limit under the Personal Auto Policy. In exchange, Pretner and his co-legal guardians agreed not to execute upon Vasquez and Blue Streak and Vasquez and Blue Streak assigned to Pretner and his co-legal guardians their rights against Plaintiff Century Surety under the Garage Policy. Neither Defendant Prince nor Progressive informed Plaintiff Century Surety of the settlement agreement.

12.     Defendant Prince then applied for entry of default judgment against Vasquez and Blue Streak, reasserting unsupported allegations such as that Vasquez was in the course and scope of his work with Blue Streak at the time of the Accident. Defendant Prince did not disclose the settlement agreement, covenant not to execute, assignment, or that he had granted an open extension to answer. Based on these misrepresentations and a proposed judgment prepared and submitted to the Clark

County District Court by Defendant Prince, that court entered judgment against Vasquez and Blue Streak in the amount of $18,050,185.45, adopting Defendant Prince's misrepresentations.

13. Pretner and his co-legal guardians, represented by Defendant Prince, now seek to collect this fraudulently obtained default judgment from Plaintiff Century Surety in an action pending in the United States District Court for the District of Nevada, *Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev.), alleging that the misrepresentations adopted in the default judgment are binding on Plaintiff Century Surety and "create" coverage under the Garage Policy.

## FACTUAL AND PROCEDURAL BACKGROUND TO CENTURY SURETY'S CLAIMS

14. Blue Streak was a duly registered Nevada Limited Liability Company that provided mobile car detailing services, such as washing, waxing, and carpet cleaning. Vasquez and Blue Streak were entirely separate entities, which/who drove separate automobiles, used separate addresses and telephone numbers, had different insurers, and had different named insureds. Blue Streak owned a Chevy Silverado truck, and Vasquez's owned a Ford F-150 truck. These trucks were insured separately to keep the business and personal separate.

15. The Accident occurred on January 12, 2009 while Vasquez was running a personal errand in his personal vehicle several hours after work:

   a. At 7 a.m., Vasquez left home at 1886 Via Firenze, Henderson, NV 80044 for work, driving his personal Ford F-150 truck.

   b. At approximately 1-2 p.m. Vasquez finished work and went home to 1886 Via Firenze, Henderson, NV 80044 to relax.

   c. Between approximately 1-5:30 p.m. Vasquez relaxed at home for several hours, eats, and showers.

   d. Just before 5:30 p.m. he left home to go to his uncle's house to pick up mail and for a family visit, driving his personal Ford F-150 truck.

  e. At approximately 5:30 p.m. the accident occurred.

  f. At approximately 6:00 p.m., at the scene of the Accident, Vasquez tells investigating police officers that he was "off work" and "on his way to Uncle's home coming from his house."  The police reports state that the Ford F-150 was registered to Michael Vasquez and insured by Progressive Insurance.

16. On January 13, 2009 Vasquez gave a recorded statement to Progressive stating that he was "off work" and running "personal errands" at the time of the Accident.

17. On March 18, 2009, Vasquez again told Progressive that "he had been off work around 2 or 3 pm in the afternoon and had been home" prior to the accident and "was in his personal truck."

18. On April 28, 2009, Vasquez confirmed to Plaintiff Century Surety that he was off work and on a personal errand at the time of the Accident.

19. On May 26, 2009, Defendant Prince made a pre-suit demand and enclosed a form affidavit for Vasquez to execute to determine if additional insurance coverage was available.

20. On June 12, 2009 Vasquez executed an affidavit averring that:

  a. On the day of the accident, Vasquez worked from 7:00 am until 1:00 pm.

  b. Vasquez "was driving from home located at 1886 Via Firenze Henderson, NV 80044" and "was going to [his] aunt and uncle's house… for the purpose of [a] visit."

  c. "Just prior to the accident, I had been at home, located at 1886 Via Firenze, Henderson NV 89044 for approx. 4 . . . hours."

  d. "The reason I was going to the above location was . . . to visit . . . 'family'"

  e. "At the time of the accident, the owner of the vehicle I was driving was Michael Vasquez, who was myself and whose last known address is 1886 Via Firenze Henderson NV 89044."

      f.    "The car I was driving that was involved in the accident was insured with Progressive with a policy number of 66805848-4"

21. On June 15, 2009, Progressive provided Vasquez's affidavit to Defendant Prince with a cover letter stating: "As you are no doubt aware, Mr. Vasquez was not doing anything connected with his work" at the time of the accident.

22. On January 7, 2011, on behalf of Pretner, Defendant Prince filed Clark County District Court Case No. A-11-632845-C.

23. On October 20, 2011, Vasquez signed a settlement agreement, assigning to Pretner and his co-legal guardians all "rights, interests, and the claims in the policy of insurance issued by Century."

24. On April 11, 2012, the Clark County District Court entered the default judgment prepared and submitted by Defendant Prince.

25. Pretner and his co-legal guardians were initially represented by Defendant Sylvia Esparza, an immigration attorney who handled the case as a personal matter because she was in a romantic relationship with Pretner. Defendant Esparza and Pretner were "high school sweethearts" who were dating at the time of the Accident and later married. Defendant Esparza never informed Plaintiff Century Surety of her relationship with Pretner, explaining that "I didn't want to let them know that I was actually involved with [Pretner] and that personal relationship" "because I thought it would be awkward that I was, you know, his partner and also representing him."

26. Before filing Clark County District Court Case No. A-11-632845-C, Pretner and his co-legal guardians retained Defendant Prince to replace Defendant Esparza as counsel. Defendant Esparza interviewed other attorneys and was involved in the decision to retain Defendant Prince. Defendant Esparza provided her entire case file— including the notarized Vasquez affidavit and police reports— to Defendant Prince in connection with him taking over the case.

27. The complaint in Clark County District Court Case No. A-11-632845-C asserted four claims against Vasquez and Blue Streak:

   a. negligence against Vasquez;

   b. negligence *per se* against Vasquez;

   c. negligent entrustment against Blue Streak; and

   d. *respondeat superior* against Blue Streak.

28. Defendant Prince informed Plaintiff Century Surety that he represented Pretner and his co-legal guardians and provided a copy of the complaint to Plaintiff Century Surety. In support of their claims, Pretner and his co-legal guardians alleged that "Vasquez and Blue Streak used the 2007 Ford F-150 vehicle as an integral part of their business" and that Vasquez was "driving [the] 2007 Ford F-150" "in the course and scope of his business with Blue Streak" at the time of the accident.

29. Upon information and belief, Defendant Prince was not interested in going after Vasquez personally because Progressive is one of his clients.

30. Defendant Prince made it clear to Progressive from the outset that he was only interested in pursuing a setup action against Century, and he had no intention of going after Vasquez. A Progressive adjuster Pamela Torres has given a deposition in which she confirmed that Defendant Prince wanted to make a demand against Plaintiff Century Surety and have them reject it. Progressive's claim notes evidence the same thing.

31. Defendant Prince provided an open and indefinite extension of time in which to file an answer to the complaint in Clark County District Court Case No. A-11-632845-C, and Defendant Prince promised that he would not take a default against Vasquez.

32. Despite granting an "open extension" to respond to the complaint and promising not to take a default, Prince requested that the Clark County District Court enter defaults against Vasquez and Blue Streak. Based on prior correspondence between Plaintiff Century Surety and Progressive in which Progressive informed Plaintiff Century Surety that it would contact Vasquez to discuss his defense under the Personal Auto Policy, Plaintiff Century Surety believed that Progressive was defending the action.

33. While Plaintiff Century Surety believed that Progressive was defending the lawsuit, Progressive did not do so because of its secret agreement with Defendant Prince. In the course of defending Progressive in a separate case, Defendant Prince provided Progressive with his plan to secure a settlement with Progressive and then move for default judgment against Vasquez and Blue Streak in order to pursue Plaintiff Century Surety.

34. Because of Defendant Prince's assurances that he would provide a covenant not to execute, upon information and belief Progressive was unconcerned about a default judgment and took no action to set aside the improperly obtained defaults.

35. Progressive and Defendant Prince agreed to a settlement under which Progressive would pay its $100,000 policy limit, Pretner and his co-legal guardians would obtain an assignment by Blue Streak and Vasquez of their rights to proceed against Plaintiff Century Surety under the Garage Policy, and Defendant Prince would proceed to obtain a default judgment against Vasquez and Blue Streak. The agreement also provided that Pretner and his co-legal guardians would provide a covenant not to execute on the resulting judgment.

36. On August 24, 2011, Progressive retained Defendant George Ranalli to advise Vasquez. Progressive informed Defendant Ranalli that Prince "has agreed to give us a Covenant Not to Execute in exchange for the payment of our policy limit" and instructed Defendant Ranalli to work with Prince to draft a settlement agreement.

37. Thus, instead of retaining counsel to *defend* Vasquez and Blue Streak, Progressive hired Defendant Ranalli to work *with* Prince to draft and execute the settlement agreement.

38. Defendant Ranalli reported that Vasquez was reluctant to sign the settlement agreement because, as all of the evidence reflected, Vasquez was not in the course and scope of employment at the time of the Accident and Vasquez did not think that Plaintiff Century Surety's Garage Policy applied.

39. Vasquez subsequently confirmed this, averring that he was reluctant to sign it because he did not believe Century Surety had any responsibility for the accident. Vasquez has consistently told everyone he spoke to that the Accident happened while he was running a personal errand and had nothing to do with his business.

40. Nonetheless, after pressure from Defendant Ranalli, Vasquez ultimately executed the settlement agreement on October 20, 2011.

41. Defendant Prince then filed in Clark County District Court Case No. A-11-632845-C an application for entry of default judgment, again falsely alleging that "[a]t the time of the accident, Vasquez was in the course and scope of his employment with Blue Streak . . . ."

42. Pretner and his co-legal guardians did not provide notice of the application to Vasquez, Blue Streak, or Plaintiff Century Surety prior to the default judgment hearing.

43. Rather, Defendant Prince purported to serve the application for entry of default judgment upon Defendant Ranalli as "Attorneys [sic] for Defendants *Michael A. Vasquez and Blue Streak Auto Detailing, LLC*."

44. Similarly, Defendant Prince did not provide notice of the default judgment hearing to Vasquez, Blue Streak, or Plaintiff Century Surety and again purported to serve notice of the hearing only upon Defendant Ranalli as "Attorneys [sic] for Defendants *Michael A. Vasquez and Blue Streak Auto Detailing, LLC*."

45. Neither Defendant Ranalli nor Progressive provided notice of the hearing to Vasquez, Blue Streak, or Plaintiff Century Surety after receiving it from Defendant Prince.

46. Defendant Ranalli forwarded the notice setting the default judgment hearing to Progressive and asked whether he should "attend and monitor?" to which the Progressive adjuster Pamela Torres said "no."

47. Progressive adjuster Pamela Torres explained that Progressive instructed Defendant Ranalli not to attend or monitor the hearing because "[t]here was no reason for him to" because the "insured and Blue Streak had been protected by the covenant."

48. Consequently, there was no appearance by or on behalf of Vasquez or Blue Streak at the hearing

49. The Clark County District Court in case no. A-11-632845-C entered the default judgment against Vasquez and Blue Streak, adopting the allegation made by Prince that "[a]t the time of the accident, Vasquez was in the course and scope of his employment and/or agency of Blue Streak acting in furtherance of its business interests."

50. The total amount of the default judgment was $18,050,185.45. Although the judgment itself was for $12,888,492 (plus $6,295.99 in costs), the Court added to the judgment $5,155,396.80 in attorneys' fees based on Prince's representation to the Court that his 40% contingency fee should be added on top of the actual judgment.[2]

51. Defendant Prince did not provide notice of the default judgment to Vasquez, Blue Streak, or Plaintiff Century Surety. Rather, like the application for entry of default judgment and notice of default judgment hearing, Prince served notice of the entry of default judgment only upon Defendant Ranalli as "Attorneys [sic] for Defendants *Michael A. Vasquez and Blue Streak Auto Detailing, LLC*."

52. Neither Progressive nor Defendant Ranalli provided a copy of the default judgment to Vasquez or Blue Streak, and Plaintiff Century Surety was never served with the default judgment.

53. While Plaintiff Century Surety was aware of the underlying litigation, it believed that Progressive was defending the action, and reasonably continued to harbor that (erroneous) belief because it was purposefully never informed about the settlement agreement, the default judgment hearing, or the entry of default judgment.

54. Defendant Prince, aided and abetted by the actions and decisions of Defendant Esparza and Defendant Ranalli, now seeks to collect this fraudulently obtained judgment from Plaintiff Century Surety, alleging that the misrepresentations adopted in the default judgment are binding on Plaintiff Century Surety and "create" coverage under the Garage Policy. *See Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev.), Dkt. No. 14, at 13. In that case Defendant Prince on behalf of Pretner and his co-legal guardians alleges that, pursuant to the terms of the settlement agreement, Pretner and his co-legal guardians have the right to pursue Plaintiff Century Surety for the full amount of their damages as determined by the Clark County District Court in Case No. A-11-632845-C.

---

[2] In the pending federal action, *Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev.), the Honorable Andrew P. Gordon has held that Century is not bound by the $5 million-plus attorney fee award because there were no grounds on which to properly add attorneys' fees to the judgment. *See* Dkt. No. 210 at p. 21 ("The attorney's fee award was unreasonable because it had no legal or factual basis.").

## ETHICAL DUTIES OWED BY THE DEFENDANTS AS ATTORNEYS

55. The duties owed by attorneys to the court are codified in the Nevada Rules of Civil Procedure and the Nevada Rules of Professional Conduct.

56. An attorney must certify that there is evidentiary support for every allegation or factual contention in a pleading or paper filed with a court. *See* NRCP 11(b)(3).

57. Further, a "lawyer shall not knowingly: Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" Nev. R. Professional Conduct 3.3(a)(1); *see also* Restatement (Third) of the Law Governing Lawyers, § 120(1)(b) (2000) ("A lawyer may not: knowingly make a false statement of fact to the tribunal."). Under the Rule, "a knowing false statement of fact includes a statement on which the lawyer then has insufficient information from which reasonably to conclude that the statement is accurate." *See* Restatement (Third) of the Law Governing Lawyers, § 120(1)(b), Note to Illustration No. 5 ("A lawyer may make conditional or suppositional statements so long as they are so identified and are neither known to be false nor made without a reasonable basis in fact for their conditional or suppositional character.").

58. An attorney's duties to the court are at their zenith in a non-adversarial *ex parte* proceeding, like the default judgment described above: "In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Nev. R. Professional Conduct 3.3(d); *see also* ABA Model Rule 3.3, Comment ¶ [2] (Representations by a Lawyer) ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation").

## FIRST CAUSE OF ACTION
## NEVADA STATE COURT RICO CLAIM

59. All preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

60. Pursuant to Nevada's RICO statutes, NRS 207.350 to 207.520, a RICO cause of action may be based on allegations and proof that the Defendants "engaged in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering."

61. NRS 207.360 defines a "crime related to racketeering" as "the commission of, attempt to commit or conspiracy to commit" any of 35 enumerated crimes, including:

    a. no. 26, obtaining possession of money or property valued at $650 or more, or obtaining a signature by means of false pretenses;

    b. no. 27, perjury or subornation of perjury;

    c. no. 28, offering false evidence;

    d. no. 30, insurance fraud pursuant to NRS 686A.291.

62. Each Defendant violated Nevada's RICO statutes by the acts described in the prior paragraphs, and as further described below, including but not necessarily limited to the following:

**A.    Predicate Acts Alleging Vasquez was in the "course and scope of his employment."**

63. The allegations that Vasquez was in the course and scope of his employment at the time of the Accident in paragraphs 5, 8, and 36 of the complaint in Clark County District Court case no. A-11-632845-C were expressly contradicted by evidence that was available and known to Defendant Prince, Defendant Esparza, and Defendant Ranalli, including, but not necessarily limited to:

    a. The police report concerning the Accident;

    b. Vasquez's June 12, 2009 affidavit at paragraph 10;

    c. Progressive's June 15, 2009 letter to Defendant Prince.

64. Defendants cannot identify any evidentiary basis suggesting that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident.

65. Not only was there no evidence to suggest that there was any truth to the allegations that Vasquez was in the course and scope of his employment with Blue Streak, the allegations were completely contrary to, and refuted by, the evidence that was known to Defendant Prince, Defendant Esparza, and Defendant Ranalli.

66. Not only was there no evidence to support the allegations in the complaint in Clark County District Court case no. A-11-632845-C, but Defendant Esparza recognized and knew that there was no such evidence, as she admitted in her April 26, 2013 deposition at pp. 56-57, 69, 92, and 94.

67. By signing the complaint in Clark County District Court case no. A-11-632845-C, Defendant Prince represented to that court that based on a õreasonable inquiryö there was õevidentiary supportö for õthe allegations and other factual contentionsö in that complaint that Vasquez was driving his Ford F-150 in the course and scope of his business with Blue Streak at the time of the accident. *See* Nevada Rule of Civil Procedure 11(b)(3).

68. Those allegations and other factual contentions in the complaint were not true and Defendant Prince, Defendant Esparza, and Defendant Ranalli knew that those allegations were not true.

69. These predicate acts satisfy the definition of at least no. 28 (offering false evidence) and no. 30 (insurance fraud), if not other definitions of a crime related to racketeering as defined in NRS 207.360.

**B.     Predicate Acts Alleging Blue Streak owned the Ford F-150.**

70. The allegations that Blue Streak owned the Ford F-150 in paragraphs 7, 24, 34, and 37 of the complaint in Clark County District Court case no. A-11-632845-C were expressly contradicted by

evidence that was available and known to Defendant Prince, Defendant Esparza, and Defendant Ranalli, including but not necessarily limited to:

    a.    The police report concerning the Accident;

    b.    Vasquez's June 12, 2009 affidavit at paragraphs 11 and 12.

71. Defendant Prince, Defendant Esparza, and Defendant Ranalli ignored the only known evidence – the police reports concerning the Accident and Vasquez's affidavit – which indicated that Vasquez was driving the Ford F-150 truck his personal vehicle at the time of the Accident.

72. By signing the complaint in Clark County District Court case no. A-11-632845-C, Defendant Prince represented to that court that based on a "reasonable inquiry" there was "evidentiary support" for "the allegations and other factual contentions" in that complaint that Blue Streak owned the Ford F-150 truck at the time of the Accident. *See* Nevada Rule of Civil Procedure 11(b)(3).

73. Those allegations and other factual contentions in the complaint were not true and Defendant Prince, Defendant Esparza, and Defendant Ranalli knew that those allegations were not true.

74. These predicate acts satisfy the definition of at least no. 28 (offering false evidence) and no. 30 (insurance fraud), if not other definitions of a crime related to racketeering as defined in NRS 207.360.

**C. Predicate Acts Related to the Settlement Agreement and Obtaining Vasquez's Signature on the Covenant Not to Enforce.**

75. Defendant Prince orchestrated a settlement agreement along with the help of Defendant Ranalli and with the knowledge of Defendant Esparza under which Progressive agreed to pay Pretner and his co-legal guardians the $100,000 policy limit under the Personal Auto Policy.

15

76. In exchange, Pretner and his co-legal guardians agreed not to execute upon Vasquez and Blue Streak and Vasquez and Blue Streak assigned to Pretner and his co-legal guardians their rights against Plaintiff Century Surety under the Garage Policy.

77. Neither Defendant Prince, Defendant Esparza, Defendant Ranalli, nor Progressive informed Plaintiff Century Surety of the settlement agreement.

78. Neither Defendant Prince, Defendant Esparza, Defendant Ranalli, nor Progressive disclosed the settlement agreement.

79. Defendant Prince then applied for entry of default judgment against Vasquez and Blue Streak, reasserting unsupported allegations such as that Vasquez was in the course and scope of his work with Blue Streak at the time of the Accident. Defendant Prince did not disclose the settlement agreement, covenant not to execute, assignment, or that he had granted an open extension to answer. Based on these misrepresentations and a proposed judgment prepared and submitted to the Clark County District Court by Defendant Prince, that court entered judgment against Vasquez and Blue Streak in the amount of $18,050,185.45, adopting Defendant Prince's misrepresentations.

80. Defendant Ranalli knew Defendant Prince had agreed to give Progressive a covenant not to execute, and Defendant Ranalli worked with Defendant Prince to draft the settlement agreement, rather than defend Vasquez and Blue Streak.

81. Defendant Ranalli also persuaded Vasquez to sign the settlement agreement which, as detailed above, contained misrepresentations, which Defendant Ranalli knew from the police reports and the previous Vasquez affidavit.

82. Upon information and belief Vasquez let Defendant Ranalli know that Vasquez was not driving the course and scope of his employment at the time of the Accident, and that Vasquez did not think Plaintiff Century Surety's Garage Policy applied, yet Defendant Ranalli went forward and persuaded Vasquez to sign the settlement agreement anyway.

83. Defendant Ranalli also had the notice of entry of default judgment, the notice of the default judgment hearing, and a copy of the default judgment served on him as attorney for Vasquez and Blue Streak, yet he failed to pass this information on to Plaintiff Century Surety.

84. Defendant Ranalli also failed to attend or monitor the default judgment hearing, notwithstanding that he had been retained to advise Vasquez and Blue Streak.

85. Defendant Esparza, as a result of her relationship with Pretner, her previous representation of Pretner and his co-legal guardians, and the facts Defendant Esparza knew as a result of that representation – including but not limited to the police report of the Accident and the Vasquez affidavit – knew about and participated in the commission of these predicate acts as defined in NRS 207.360.

86. Defendant Esparza never informed Plaintiff Century Surety of her relationship with Pretner, and Defendant Esparza was involved in the decision to retain Defendant Prince, after which she provided her entire case file to him – including the notarized June 12, 2009 Vasquez affidavit and the police reports of the Accident – with which she was familiar.

87. Based on Defendant Esparza's previous representation of Pretner, she knew there was no evidence to support the allegations in the complaint in Clark County District Court case no. A-11-632845-C, which she admitted this in her in her April 26, 2013 deposition at pp. 56-57, 69, 92, and 94.

88. These predicate acts satisfy the definition of at least no. 26 (obtaining a signature by means of false pretenses), no. 27 (suborning perjury), no. 28 (offering false evidence) and no. 30 (insurance fraud), if not other definitions of a crime related to racketeering as defined in NRS 207.360.

**D.   Facts Common to All Predicate Acts.**

89. Plaintiff Century Surety's injuries and damages flow from Defendants' violations of the Nevada RICO Act, NRS 207.360, because as a result of the Defendants' actions the default

17

judgment was entered in Clark County District Court case no. A-11-632845-C in the amount of $18,050,185.45.

90. Plaintiff Century's Surety's injuries and damages were proximately caused by Defendants' violations of the predicate acts.

91. Plaintiff Century Surety did not participate in the commission of any of the predicate acts, as detailed above. Plaintiff Century Surety had no knowledge of the crimes related to racketeering as detailed above.

92. In fact, Defendant Prince, Defendant Esparza, and Defendant Ranalli withheld information from Plaintiff Century Surety to bring about this bad faith set up, including but not limited to not disclosing the settlement agreement, the covenant not to execute, the assignment, or that Defendant Prince had granted an open extension to answer.

## SECOND CAUSE OF ACTION
## CIVIL CONSPIRACY

93. All preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

94. By engaging in the actions described above, Defendant Prince, Defendant Esparza, and Defendant Ranalli together combined and engaged in concerted actions intending to accomplish the unlawful objective of creating a "bad faith" set up which wrongfully resulted in a multi-million dollar judgment against Plaintiff Century Surety in Clark County District Court Case No. A-11-632845-C for the purpose of harming Plaintiff Century Surety and which resulted in damages to Plaintiff Century Surety.

95. These Defendants formed and had a conspiracy agreement, explicit or tacit, to harm Plaintiff Century Surety.

96. These Defendants associated together, as detailed above.

97. These Defendants had an unlawful objective to deprive Plaintiff Century Surety of monies.

98. These Defendants had an agreement and understanding with regard to the objective of depriving Plaintiff Century Surety of monies and the manner in which it was to be achieved through the bad faith set up, as detailed above.

99. In furtherance of his agreement or understanding, Defendants did wrongful acts including but not limited to the predicate acts and other facts as detailed above.

100. As a result of Defendants' actions and civil conspiracy Plaintiff Century Surety was damaged including in the state court award of a default judgment in the amount of $18,050,185.45 in Clark County District Court case no. A-11-632845-C.

///

///

///

///

///

///

///

WHEREFORE, Plaintiff Century Surety respectfully seeks the following relief:

A. For judgments against the Defendants, jointly and severally, including general and special damages in an amount to be determined by a jury;

B. Recovery of treble damages and attorneys' fees pursuant to Nevada's RICO statute, NRS 207.470(1);

C. An award of costs, fees, and other disbursements allowed by law;

D. Such further relief as the Court deems just and appropriate.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38,
PLAINTIFF REQUESTS A JURY TRIAL.**

Dated:   October 21, 2016                    Respectfully submitted,


By: /s/ Maria Louis Cousineau
MARIA LOUISE COUSINEAU
Nevada Bar No. 002876
601 S. Figueroa Street, Suite 3700
Los Angeles, CA  90017

GASS WEBER MULLINS LLC
J. Ric Gass (admitted *pro hac vice*)
Michael B. Brennan (admitted *pro hac vice*)
309 North Water Street, Suite 700
Milwaukee, Wisconsin  53202

CHRISTIAN, KRAVITZ, DICHTER,
JOHNSON & SLUGA, LLC
Martin J. Kravitz
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123


Attorneys for Plaintiff
CENTURY SURETY COMPANY