1  ROBERT T. EGLET, ESQ.
   Nevada Bar. No. 3402
2  ERICA D. ENTSMINGER, ESQ.
   Nevada Bar No. 7432
3  **EGLET PRINCE**
4  400 South Seventh Street, #400
   Las Vegas, Nevada 89101
5  *eservice@egletlaw.com*
6  (702) 450-5400 phone
   (702) 450-5451 facsimile
7
8  JOSEPH P. GARIN, ESQ.
   Nevada Bar No. 6653
9  MEGAN H. HUMMEL
   Nevada Bar No. 12401
10 **LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.**
   9900 Covington Cross Drive, Suite 120
11 Las Vegas, Nevada 89169
12 *Attorneys for Defendant*
   *Dennis Prince*

13

14                    **UNITED STATES DISTRICT COURT**

15                          **DISTRICT OF NEVADA**

16

17 CENTURY SURETY COMPANY, a            Case No.: 2:16-cv-02465-JCM-PAL
   foreign corporation,

18
                       Plaintiff,       **DEFENDANT DENNIS PRINCE'S**
19                                       **SPECIAL MOTION TO DISMISS**
                                         **PURSUANT TO NRS 41.660**
20 vs.

21 DENNIS PRINCE, GEORGE RANALLI,
   AND SLYVIA ESPARZA,
22
                       Defendants.
23

24

25        Defendant Dennis Prince, ("Prince") by and through its attorneys, Eglet Prince and

26 Lipson, Neilson, Cole, Seltzer & Garin, P.C., hereby moves this Honorable Court pursuant to

27 NRS 41.660 for an order dismissing all of Plaintiff's claims.

28

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

Plaintiff Century Surety Company ("Century") chose not to defend its insureds in a catastrophic personal injury lawsuit. As a result, a substantial default judgment was entered against its insureds in a state court action. Century was thereafter unsuccessful in its efforts to have the judgment set aside. As such, there remains in effect a valid, final state court judgment.

In a subsequent bad faith action brought against Century, *Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev. 2012), the Honorable Andrew Gordon ruled as a matter of law that Century breached its duty to defend its insureds, and was therefore bound by the state court judgment. In doing so, Judge Gordon also ruled that Century was precluded from engaging in further discovery – including taking the depositions of Defendants Prince and Ranalli – because Century failed to conduct such discovery in connection with its "fraud and collusion" defense asserted for *over four years* in the bad faith action.

Century's Complaint before this Court now alleges that local attorneys Prince, Ranalli and Esparza somehow conspired to obtain the default judgment against Century's insureds. In addition to being baseless, Century's Complaint is a SLAPP Complaint prohibited by NRS 41.660 <u>and</u> is barred by the litigation privilege because Prince and the co-defendants were at all times acting on behalf of their respective clients in furtherance of the litigation process. If allowed to proceed, the claims brought by Century would effectively chill Prince and other attorneys from vigorously advocating for injured clients by forcing attorneys to defend themselves against claims for personal liability for purely strategic litigation decisions.

Century has been litigating the issues raised in its Complaint for over <u>four years</u> in *Andrew*, and therefore already has a forum to seek redress for the alleged wrongdoing. More importantly, Century's Complaint is a clear attempt to circumvent unfavorable rulings by two different judges related to the same allegations, and to improperly obtain discovery Judge Gordon has precluded Century from pursing in *Andrew*. Indeed, over <u>three years</u> before Century filed this Complaint, Judge Gordon expressed doubt about Century's fraud and collusion defense related to the default judgment, however, he invited Century to present such evidence <u>if</u> it was

uncovered.  See **Exhibit 1,** October 10, 2013 Order at 16:14-22.  Two years later, Judge Gordon entered more unfavorable rulings against Century, "I now hold that Century is bound by the default judgment, absent unreasonableness, fraud, or collusion."  See **Exhibit 2,** September 28, 2015 Order at 1:12-27. In the same Order, Judge Gordon confirmed he would not reopen discovery to permit Century to conduct discovery on its fraud and collusion allegations because, "Century raised this defense from the outset" and "Century therefore had ample opportunity to investigate its fraud or collusion defense." Id. at p. 28. fn 9.[1]

Regardless of the improper and retaliatory nature of the instant action, Prince is protected by Nevada's anti-SLAPP statute (NRS 41.660) which protects persons from civil liability arising out of good faith communication in furtherance of the right to petition a judicial body, and the Complaint should be immediately dismissed.

## II.  BACKGROUND FACTS

### A.  The January 12, 2009 Collision

On January 12, 2009, Ryan Pretner was riding his bicycle on the shoulder of St. Rose Parkway when Michael Vasquez struck Pretner with his 2007 Ford F-150 pickup truck.  The collision caused Pretner to be violently thrown from his bicycle resulting in a catastrophic brain injury and over $2,000,000 in medical expenses.  See **Exhibit 3** at 0001. At that time, there were at least two policies of liability insurance potentially providing coverage for Pretner's injuries. The first was Vasquez's personal liability policy issued by Progressive insurance. The Progressive policy had a $100,000 policy limit.  See **Exhibit 4** at CF000189.  The second was a "garage policy" issued by Century to Blue Streak.  Blue Streak was a mobile detailing business owned and operated by Vasquez. The Century policy had a limit of $1,000,000.00.  See **Exhibit 5** at CF000138-190.[2]

---

[1] *Andrew* is stayed pending certification of a related issue to the Nevada Supreme Court in another case. See *Nalder v. United Automobile Ins. Co.*, Case No. 2:09-cv-01348-RJC-GWF.

[2] Exhibit 5 is the complete Century claim file containing all of the information Century had when making its decisions regarding the Pretner claim and related lawsuit.

**B. Progressive Immediately Offers Its Policy Limits; Century Denies the Claim.**

Given the size of the policy compared to the claimed injuries, Progressive offered Pretner's prior counsel Esparza the full $100,000 from the beginning.[3]  Because of the extent of Pretner's injuries, however, Esparza could not provide a release until all possible insurance coverage was exhausted. Accordingly, on May 26, 2009, Esparza requested that Progressive provide a Covenant Not to Execute to allow her to explore coverage under other policies, including the Century policy. See letter attached as **Exhibit 6.**

Pretner's claim was also reported to Century.  As is relevant here, Century knew that Blue Streak was a mobile detail business with no physical location, and that Vasquez drove "the company trucks home every night." See **Exhibit 5** at CF000034. Century thereafter hired an independent adjuster to investigate whether Vasquez was using the truck for business at the time of the crash. Vasquez gave the investigator a recorded statement indicating he was on a personal errand when he struck Pretner.[4]  During the investigation, Century also learned that a potential witness had seen Vasquez working before the collision.  Id. at CF000062.

On May 26, 2009, Defendant Esparza made a policy limits demand on Century.[5]  Id. at CF000066-69.  As she did with Progressive, Esparza indicated Pretner would provide a covenant not to execute. Id. On June 15, 2009, Century rejected Pretner's demand based on its position that Vasquez's truck was not being used for business purposes at the time of the crash. Id. at CF000089-95.   Thereafter, Esparza requested a complete copy of the Century policy for review, however, Century refused Esparza's request.  Id.

---

[3] Progressive thereafter repeatedly made offers to resolve the claim for policy limits, leaving Prince nothing further to pursue with regard to that policy. See **Exhibit 25**.

[4] An email from Century's senior claims adjuster, suggests Century instructed the investigator to approach the investigation in a way designed to lead Vasquez into confirming he was running personal errands at the time of the collision.  **Exhibit 5** at CF000057.

[5] Century falsely alleges in the Complaint that Prince made this demand on Century. It is undisputed that Prince never made any demand on Century at any time.

4

**C.  State Court Litigation is Commenced**

On December 18, 2010, a few weeks before the statute of limitations was set to expire on Pretner's claims, Pretner's guardians (Dana Andrew and Lee Pretner) retained Prince as litigation counsel.  See **Exhibit 7** at p. 3.[6]  At the time he was hired, Prince was informed about Vasquez's mobile detailing business, and that there was a "JSTDTLD" ("just detailed") license plate on the truck.  See **Exhibit 3** at 0002.  Prince was also told of the potential witness who saw Vasquez working shortly before the collision.  Most importantly, Prince was already familiar with case law, including *Evans v. Southwest Gas Corp.*, 108 Nev. 1002, 842 P.2d 719 (1992), suggesting a broad application of "course and scope" in connection with mobile businesses like Blue Streak.  On January 7, 2011, five days before the statute of limitations expired, Prince filed a complaint in state court naming both Vasquez and Blue Streak as defendants.  See **Exhibit 5** at CF000099-107.  The claims against Blue Streak were based upon allegations that Vasquez was in the course and scope of his employment at the time of the collision.  Id. at pp. 2,7.

**D.  Century Refuses To Defend Its Insureds**

On March 3, 2011, over <u>five years</u> before Century filed this Complaint, Prince sent Century a letter of representation that included a courtesy copy of the Pretner complaint.  See **Exhibit 5** at CF000096-98. In the attached cover letter, Prince explained his position to Century, disclosed the policy limits offer by Progressive, and referred to "legal research" that "indicates coverage exists under your policy."  Id. at CF000097-98.  At the time Prince filed the Pretner complaint he did not have a copy of the Century policy (as Esparza's prior request was denied).  As such, Prince's letter requested a copy of the Century policy, and noted that he "**filed a Complaint with the District Court** <u>**to preserve the statute of limitations in this matter**</u>." Id. Century never called Prince or inquired into the basis of the claims against Blue Streak.

Four days after receiving the Complaint from Prince, Century's claim file acknowledges that Lisa Henderson, a licensed attorney assigned to the claim, not only knew about the Respondent Superior allegations against Blue Streak, but she summarized the claims,

---

[6] Pretner's guardians were referred to Prince by commercial attorney Mark Ferrario.  See Deposition of Dana Andrew at 17:9-20, attached as **Exhibit 8.**

"Complaint alleges count of negligence, negligence per se, negligent entrustment, **respondeat superior**… **Insured was driving 2007 Ford F-150 which complaint alleges insured was using for business purpose for Blue Streak business of mobile detailing**." See **Exhibit 5** at CF000002-3 (emphasis added). Attorney Henderson reviewed the allegations in the complaint, and denied coverage again. Id. at CF000192-198. Per Prince's request, Henderson did provide him with a copy of the garage policy for the first time, however, nobody at Century ever contacted Prince to discuss the case or the claims against Blue Streak.

On June 27, 2011, defaults were entered against Blue Streak and Vasquez after they failed to answer the complaints. Id. at CF000214-217. That same day, Prince sent letters to both Henderson and claims adjuster Holland enclosing copies of the defaults, and requesting they contact his office to discuss the matter in "greater detail." Id. at CF000200-210. Rather than contact Prince to discuss the basis for the defaults, Henderson responded via e-mail to Prince the same day that, "Century has no coverage for this matter," and that it was her "understanding that this matter is being handled by Progressive Insurance." Id. at CF000218. Henderson, however, never verified if Progressive was going to provide a defense. See **Exhibit 9** at 140:25-141:19; 142:24-143:7; 147: 14-21; 149:24-150:1. With full knowledge of the pending complaint and defaults against its insureds, Century took the "riskiest of all litigation strategies" by closing its file instead of providing a defense to its insured.[7]

**E. Settlement Agreement and Covenant Not to Execute.**

As of June 27, 2011, Century had denied coverage, closed its file, and declined to defend Blue Streak or Vasquez. At that point Prince had no duty or obligation to Century, but had an ongoing obligation to vigorously pursue Pretner's claims. Accordingly, Prince offered to resolve the claim against Progressive's policy in exchange for the covenant not to execute. See **Exhibit 10,** 08/03/11 entry at CF000229.[8] Progressive thereafter retained attorney George Ranalli as

---

[7] *Transportation Ins. Co. v. Piedmont Construction Group, LLC*, 686 S.E.2d 824, 829 (Ga. App. 2009)

[8] Progressive's claim file reflects that <u>Progressive</u> asked for a covenant not to execute for its insured. Id. at CF000231, and **Exhibit 11.**

defense counsel to represent Vasquez and Blue Streak in connection with the covenant and settlement negotiations because Progressive "typically refers covenants to [Ranalli] to review and meet with our insureds."  See Torres Depo. attached as **Exhibit 12** at 100:25-101:1. On October 20, 2011, Vasquez, Blue Streak and Pretner's guardians executed a Settlement Agreement and Covenant Not to Execute ("Settlement Agreement").  See **Exhibit 13**.  In essence, Pretner agreed not to execute against the assets of Vasquez and Blue Streak in exchange for Progressive's $100,000.00 policy limits, and an assignment of Blue Streak and Vasquez's rights against Century and any other applicable insurers.[9] Id at p. 2.

On February 15, 2012, Prince filed an Application for Entry of Default Judgment requesting judicial determination of damages. See **Exhibit 14** (without exhibits). Prince then filed a Notice of Prove Up Hearing, and served the hearing notice on Ranalli as counsel for Vasquez and Blue Streak.  See **Exhibit 15.**  After a hearing, Judge Herndon entered a Default Judgment in the amount of $18,050,185.45.  See April 11, 2012 Order attached as **Exhibit 16.**

**F.  FEDERAL COURT ACTION**

On **April 23, 2012**, over <u>four years</u> before Century filed this Complaint,  Prince filed the *Andrew* complaint against Century seeking damages related to the default judgment and Century's bad faith. See **Exhibit 17**.  The *Andrew* complaint cited to the October 20, 2011 Agreement (hereinafter "Settlement Agreement") as the basis for the alleged claims.  Id. at 5:19-25, ¶22. On June 8, 2012, Century removed the action to federal court.

On **June 15, 2012**, Century filed its answer and alleged a "fraud and collusion" defense, "Century is informed and believes that Plaintiffs' alleged right to seek damages against Century was obtained **through fraud, misrepresentation, and/or collusion**."  See **Exhibit 18** at 19:8-10, ¶ 67 (emphasis added). Four months later, Century for the first time attempted to intervene in the state court action by seeking to set aside the default judgment.  See **Exhibit 19** (without exhibits). Judge Herndon considered Century's arguments regarding the Settlement Agreement,

---

[9] Pretner's covenant not to execute was not unexpected as Esparza's prior offers to <u>both</u> Century and Progressive included a covenant as coverage issues had not yet been resolved.

and denied Century's motion to intervene in its entirety. See **Exhibit 20.**   In doing so Judge Herndon concluded that Century "stuck its head in the sand" by not participating in the litigation when they already had notice of it. See **Exhibit 26** at 32:25-33:24.

Despite having alleged "fraud and collusion" in *Andrew* since June 2012, Century never filed any counter-claims against any of the Defendants (as they attempt to do now). Further, Judge Gordon has <u>rejected</u> Century's request to conduct discovery into their "fraud and collusion" defense because Century had "raised that issue from the outset" and had already had sufficient opportunity to conduct discovery on those issues.  See **Exhibit 2** at p. 28. fn 9.

## II.

## LEGAL ARGUMENT

**A.  NEVADA SUBSTANTIVE LAW APPLIES TO THIS ACTION**

When sitting in diversity, a federal district court must apply the substantive law of the forum state in which it resides.[10]  In the absence of controlling precedent from the Nevada Supreme Court, a federal district court must use its own best judgment to predict how the state's highest court would decide the relevant substantive issue.[11]

**B.  CENTURY'S COMPLAINT IS A SLAPP SUIT AGAINST PRINCE THAT IS SUBJECT TO IMMEDIATE DISMISSAL UNDER NRS 41.660.**

In 1993, the Nevada legislature enacted statutory provisions to protect persons making good faith communications to judicial bodies from being subject to retaliatory litigation arising from those communications, commonly called the "anti-Strategic Lawsuits Against Public Participation" or "anti-SLAPP" statute.[12]  Generally speaking, a "SLAPP" lawsuit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."[13] In 1997, the Legislature explained that SLAPP lawsuits abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs.[14] To ensure that speech made in

---

[10] *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938)

[11] *Allstate Ins. Co. v. Sanders,* 495 F.Supp.2d 1104, 1106 (D. Nev. 2007)

[12] *John v. Douglas County School Dist.*, 219 P.3d 1276 (Nev. 2009)

[13] *Dickens v. Provident Life and Acc. Ins. Co.*, 11 Cal. Rptr. 3d 877, 882 (2004)

[14] 1997 Nev. Stat., ch. 387, preamble, at 1364

8

connection with a public issue is not chilled through abuse of the judicial process, Nevada's anti-SLAPP statute (NRS 41.660) authorizes a party to file a special motion to dismiss any cause of action that is "based upon a good faith communication in furtherance of the right to petition…"[15]

Once the special motion to dismiss is filed, the trial court must first decide whether the defendant has made a threshold showing, by a preponderance of the evidence, that the claim is based on the defendant's free speech or petitioning activity.[16] The defendant need only show that the plaintiff's cause of action arises out of protective activity; the court is not required "to engage in an inquiry as to the plaintiff's subjective motivations before it may determine the anti-SLAPP statute is applicable."[17]  If the moving party meets its burden, the trial court must next determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim.[18]  The district court shall treat the special motion to dismiss as a motion for summary judgment, and its granting of the motion is an adjudication upon the merits.[19]

## C. PRINCE SATISFIES THE FIRST PRONG OF THE ANTI-SLAPP ANALYSIS BECAUSE CENTURY'S TWO CLAIMS ARISE FROM PROTECTED ACTIVITY

As discussed above, to meet his threshold burden, Prince must show that "the cause of action is *based on* the defendant's protected free speech or petitioning activity."[20]  Century's Complaint alleges two causes of action against Prince: Civil Conspiracy and Civil RICO.  The basis of these claims is identical: that the Defendants negotiated the Settlement Agreement (which assigned the claims of Century's insureds to Pretner), and obtained default judgments against Century's insureds based on allegedly false allegations contained in the Prenter complaint.  All of the alleged conduct and communications, however, were performed by the Defendant attorneys in connection with legal proceedings (or "to further a right to petition") and are protected by the Anti-SLAPP statute.

---

[15] NRS 41.660(1)(a); *Stubbs v. Strickland*, 129 Nev. Adv. Op. 15, 297 P.3d 326, 329 (2013)

[16] NRS 41.660(1)(a); *Feldman v. 1100 Park Lane Associates*, 160 Cal.App.4[th] 1467, 1478 (2008).

[17] *Campbell v. Zumbrun & Findley, et al.,* 2002 WL 1999755 (Cal. App. 3 Dist.) at *5

[18] NRS 41.660(1)(b)

[19] NRS 41.660(5)

[20] *John v. Douglas Cnty. Sch. Dist.*, Id. at Id. at 1281.

NRS 41.637(3) defines a "good faith communication in furtherance of the right to petition" to include statements or writings before a judicial proceeding, or any other official proceeding authorized by law, **and statements or writings made in connection with an issue under consideration or review by a judicial body** or any other official proceeding authorized by law.  Essentially, "petitioning activity" includes any statements, writings, or pleadings made in connection with civil litigation. Here, because both of Century's claims arise from the same conduct by Prince in furtherance of his pursuit of a lawsuit on behalf of his injured client, it is clear that these claims arise from activity protected under the anti-SLAPP statute, and the Complaint must be dismissed.

**D. PRINCE SATISFIES THE SECOND PRONG OF NRS 41.660(1) BECAUSE HIS CONDUCT, STATEMENTS AND COURT FILINGS ARE ALREADY BEING LITIGATED IN THE *ANDREW* CASE, AND FALL WITHIN THE ABSOLUTE LITIGATION PRIVILEGE.**

Prince has demonstrated that Century's claims arise from protected activity.  Century must "now demonstrate with prima facie evidence a probability of prevailing on the claim."[21]

**1. Century Cannot Prevail On its Claims Because Century's Claims Are Already Being Litigated in the *Andrew* Case.**

As an initial matter, Century cannot prevail on its claims here because Century's allegations are already being litigated in the *Andrew* case.[22]  Indeed, Judge Gordon has already ruled in *Andrew* that he will not hold Century liable for the default judgment if Century can prove its fraud and collusion defense related to the entry of the default judgment. That is the

---

[21] See NRS 41.660(1)(b).

[22] The complaint collaterally attacks valid state court orders in the underlying case of *Pretner v Vasquez*, Clark County District Court case no. 11-A632845-C. Plaintiff may not, in a new forum, relitigate the claims and issues that were, or could have been, determined in the prior state court case. *See, e.g., Weddell v Sharp*, 350 P3d 80, 86 (Nev. 2015); *Five Star Capital Corp. v Ruby*, 194 P.3d 709, 713 (Nev. 2008). The state court orders are entitled to full faith and credit under U.S. Const. art. IV, § 1 and 28 U.S.C.A. § 1738.  *Migra v Warren City Sch. Dist. Bd. of Educ.*, 465 US 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Subject matter jurisdiction is therefore lacking to sustain the collateral attack. *Gilbert v Ben-Asher*, 900 F2d 1407 (9th Cir. 1990), cert. denied, 112 LEd.2d 141 (1990).

legal remedy available to Century to address the alleged conduct.[23]   If Century successfully proves their defense in *Andrew*, then no judgment will be entered against it, and Century will suffer <u>no damages</u> as a result of the alleged conduct.   Century, however, failed to bring any affirmative counterclaims in *Andrew*, and the April 11, 2013 deadline for amending the pleadings has long passed.   See **Exhibit 21** at p. 2.   Accordingly, Century cannot make a prima facie showing of a probability of prevailing on its claims as required by NRS 41.660.

> **2.  <u>Century Cannot Prevail On Its Claims Because Prince's Conduct, Statements And Court Filings Fall Within The Absolute Litigation Privilege</u>**.

Century also cannot demonstrate any probability of prevailing on its claims because all of the causes of action arise from Prince's privileged actions as litigation counsel.[24]  Because Prince cannot be liable for any civil damages arising from the claims alleged by Century, Prince's Special Motion to Dismiss should be granted.

Nevada law is clear that allegations made in legal proceedings fall within the absolute privilege and are not actionable, regardless of whether the filing was malicious or in bad faith. The Nevada Supreme Court recognized "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." [25]  The policy behind the absolute privilege, as it applies to attorneys participating in judicial proceedings, is to grant them "as officers of the court the utmost freedom in their efforts to obtain justice for their clients," and as its name indicates, the privilege is **<u>absolute</u>**: it "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." [26]

---

[23] Century's Complaint also suffers from a ripeness defect as there is no pending judgment against Century, and therefore Century has incurred no damages.

[24] See *Feldman v. 1100 Park Lane Associates,* 160 Cal.App.4th at 1485 ("The litigation privilege is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.")

[25] *Circus Circus Hotels v. Witherspoon,* 99 Nev. 56, 60, 657 P.2d 101, 104 (1983)

[26] *Fink v. Oshins*, 118 Nev. 428, 432, 49 P.3d 640, 643 (2002)

The litigation privilege has been described as "the backbone to an effective and smoothly operating judicial system."[27] **It is broadly recognized, liberally applied, and "based upon a public policy of security to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients."[28]** Other courts have found that the privilege encourages loyalty and zealous representation on behalf of clients,

> [I]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, <u>he would be forced constantly to balance his own potential exposure against his client's best interest.</u>[29]

The litigation privilege embraces the notion that "an attorney acting within the law, in a legitimate effort to zealously advance the interests of his client, shall be protected from civil claims arising due to that zealous representation."[30] When an attorney is speaking or acting on behalf of his client and for that client's interests, the privilege is presumed to apply.[31]

Although rooted in defamation, the privilege has been applied to protect attorneys in a broad range of other claims including, defense of claims for bad faith and breach of fiduciary duty, interference with business relationships, civil conspiracy and racketeering.[32] This "litigation privilege" extends to attorneys during the representation of their clients based on policy considerations, including: (1) promoting candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the

---

[27] *Loigman*, 889 A.2d 426, 436 (2006)

[28] Restatement (Second) of Torts § 586 cmt. a (1977)

[29] *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. Ct. App. 2005)

[30] *Taylor v. McNichols*, 243 P.3d 642, 656 (Idaho 2010)

[31] *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1166 (Utah 2012)

[32] See, e.g., *Jackson v. BellSouth Telecomms*., 372 F.3d 1250 (11th Cir. 2004) (tortious interference and conspiracy to defraud); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184 (D. Nev. 2006) (bad faith and breach of fiduciary duty); *Boca Investors Group, Inc. v. Potash*, 835 So.2d, 273 (Fla. Dist. Ct. App. 2002) (interference with business relationships); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 151 P.3d 732 (Haw. 2007) (interference with prospective economic advantage); *Debry v. Godbe*, 992 P.2d 979 (Utah 1999) (judicial proceedings privilege extends not only to defamation, but to all claims arising from the same statements).

EGLET PRINCE

1  finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous

2  advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.[33]

3      The Florida Supreme Court has held that the absolute privilege afforded defamatory

4  statements also applies to other misconduct, **"[A]bsolute immunity must be afforded to any**

5  **act occurring during the course of a judicial proceeding, regardless of whether the act**

6  **involves a defamatory statement or other tortious behavior…."**[34] Therefore, the litigation

7  privilege is broad enough to cover all claims against opposing attorneys for civil damages,

8  including claims of intentional misconduct.[35]  In California, the litigation privilege has been

9  codified and applied to both witnesses and parties. Civil Code section 47(b) defines a "privileged

10 publication" as including one made "[i]n any… judicial proceeding....", and the privilege applies

11 to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

12 other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have

13 [*sic*] some connection or logical relation to the action."[36]

14     Finally, in at least one case, the Nevada Supreme Court applied the litigation privilege in

15 the broadest possible manner in order to "facilitate the policy of zealous advocacy by attorneys,

16
17     Nevada follows the "long-standing common law rule that communications
       [made] in the course of judicial proceedings [even if known to be false] are
18     absolutely privileged." In order to facilitate the policy of zealous advocacy
       by attorneys underlying this privilege, its scope is "quite broad," and that it
19     should be applied "liberally." **As such, when "determining whether the**
       **privilege applies [we] resolve any doubt in favor of a broad application."**
20     Consistent with its broad applicability, this court has concluded that "the
       privilege applies not only to communications made during actual judicial
21

22
_____

23 [33] *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 155, 73 P.3d 687, 693 (2003)

   [34] *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance*
24 *Company* 639 So.2d 606, 608 (FL.A. 1994) (emphasis added); see also *Moss v. Parr Waddoups*
   *Brown Gee & Loveless,* 285 P.3d 1157 (Utah 2012)(litigation privilege extends to attorney's conduct
25 enforcing an ex parte order to seize evidence); *Christonson v. United States,* 415 F. Supp. 2d 1186,
   1195  (D. Idaho 2006)(privilege applied to civil RICO and conspiracy claims).
26 [35] *Unarco Material Handling, Inc. v. Liberato*, 2010 WL 744394, 6 (Tenn.Ct.App. 2010); *Schott v.*
   *Glover,* 440 N.E.2d 376 (Ill.Ct.App.1982); *Maness v. Star-Kist Foods, Inc.,* 7 F.3d 704, 709 (8th
27 Cir.1993); *Reynolds v. Shrock,* 142 P.3d 1062 (Or.2006)
   [36] *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212
28

proceedings, but also to 'communications preliminary to a proposed judicial proceeding."[37]

In *Bullivant*, the Nevada Supreme Court relied upon many of the same cases addressed above to conclude that the privilege should not only be applied broadly (see above), but that there is <u>no difference</u> between "communications" and "conduct" when applying the privilege,

> **Additionally, there is "no reason to distinguish between communications made during the litigation process and conduct occurring during the litigation process."** … When applicable, "[a]n absolute privilege bars any civil litigation based on the underlying communication."[38]

The *Bullivant* Court concluded that "communications are protected by the absolute litigation privilege **even if they were known to be false or made with malicious intent**." [39] Accordingly, because Century's Complaint challenges actions taken by Prince on his client's in legal proceedings, the conduct is protected by the litigation privilege- even if Prince intentionally engaged in conduct or communications he knew to be false (which he firmly denies), Century cannot succeed on the merits and the Complaint should be immediately dismissed.

   a. **Century Is Wholly Responsible For Any Judgment Against Its Insureds Because Century Breached Its Duty to Defend.**

To fully appreciate the frivolity of Century's claims, it is important to understand Century's duty to its insureds under the well-established law; the same law relied upon by Judge Gordon when he ruled that Century breached its duty as a matter of law. See **Exhibit 1, p.1.** Century wants to blame the Defendants for its current predicament, however, Century at all times had the requisite knowledge and ability to act to protect the interests of its insureds.

Under Nevada law, an insurer must defend any suit brought against its insured that potentially seeks damages within the coverage of the policy, and "**[i]f facts are alleged which, if**

---

[37] See *Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court,* No. 57991, 2012 Nev. Unpub. LEXIS 461 (Mar. 30, 2012) at *6-7 [citations omitted], attached hereto as **Exhibit 22**. Although this case is not binding precedent, it demonstrates the Nevada Supreme Court's reliance on the same cases and arguments set forth herein.

[38] Id [citations omitted].

[39] Id. at p.5.

**proven, would give rise to the duty to indemnify, then the insurer must defend.  It is immaterial whether the claim asserted is false, fraudulent, or unprovable.  The potentiality of covered liability is the test.**"[40]  Whether an insurer owes a duty to defend is determined by comparing the allegations within the "four corners" of the complaint to the policy terms.[41]  If a claim falls within the coverage, then the duty to defend is triggered because an insurer's duty to defend is based on the *nature* of the claim- not the *merits* of the claim.[42] An insurer must defend lawsuits where liability under the policy is at issue to avoid liability for a resulting judgment.[43]

Century took the position from day one that the "course and scope" allegations were false.  Once faced with allegations triggering coverage, Century had four options: (1) defend the case and dispute liability; (2) proceed under a reservation of rights and defend the case; (3) proceed under a reservation of rights and file a declaratory relief action as to coverage; or (4) decline to defend its insureds.  Despite having notice of these allegations against Blue Streak, Century chose the fourth option- not to defend at all. This choice has been described by courts as the "riskiest of all litigation strategies."[44] This is because Courts have imposed automatic liability for the full amount of the resulting judgment on insurers who wrongfully refuse to defend.[45]  In *Pershing Park Villas Homeowners Ass'n v. United Pacific Insurance Co.*, the Ninth Circuit reaffirmed the imposition of automatic liability for a default judgment where the insurer wrongfully refuses to defend its insured.[46]

Century's in-house counsel testified that it was an option to provide a defense to its insureds under a reservation of rights but Century chose not to do so.  See **Exhibit 9** at 111:3-23. Whether the allegations in the complaint are ultimately found to be false is irrelevant to

---

[40] *Rockwood Ins. Co. v. Federated Capital Corp.,* 694 F.Supp. 772, 776 (D. Nev.1988).

[41] *United National Ins. Co. v. Frontier Ins. Co.,* 120 Nev. 678, 99 P.3d 1153, 1158 (2004); *Loosmore v. Perent*, 613 N.W.2d 923, 929 (Wis. App. 2000).

[42] *Newmont USA Ltd. v. American Home Assurance*, 676 F.Supp.2d 1146, 1157 (E.D. Wash. 2009).

[43] *See Amato v. Mercury Casualty Company*, 61 Cal.Rptr.2d 909 (Cal. App. 1997); *see also Montrose Chemical Corporation v. Superior Court*, 24 Cal.Rptr.2d 467 (1993).

[44] *Transportation Ins. Co. v. Piedmont Construction Group, LLC*, 686 S.E.2d 824 (Ga.App. 2009). (Insurer choosing not to defend a lawsuit chooses the "riskiest of all litigation strategies.")

[45] *Amato*, 61 Cal.Rptr.2d at 914

[46] 219 F.3d 895 (9th Cir. 2000)

Century's duty. Indeed, if Prince's allegations were so blatantly fraudulent (as Century now suggests), Century could have easily dispensed with such allegations had it taken <u>any</u> action to intervene or to otherwise defend its insureds.  Instead, on March 31, 2011, Century notified Vasquez and Blue Streak that it "declines to provide you with either a defense or indemnity in the action brought by Pretner." See **Exhibit 5** at CF000192-197.[47]

       b.  **The Predicate Acts Activities Alleged in Century's Complaint are Activities That Are Protected Under the Anti-SLAPP Statue and the Absolute Litigation Privilege.**

Under NRS 207.390, a Nevada RICO complaint must allege at least two "not isolated" predicate acts "that have the same or similar pattern, intents, results, accomplices, victims or methods of commission." See also *Siragusa v. Brown,* 114 Nev. 1384, 1398-99, 971 P.2d 801, 810-11 (1998).  Century's complaint alleges three "predicate acts."[48]   To the extent that the privileged nature of all of Century's allegations is not clear, Prince next examines each of the "predicate acts" alleged in Century's Complaint which are all directly based upon pleadings and other documents filed and negotiated by Prince in the course of his representation of Pretner.

       i.  ***Century's First Alleged "Predicate Act" Is Prince's Allegation in the State Court Complaint That Vasquez was in the Course and Scope of His Employment at the Time of the Crash.***

In support of two alleged RICO violations (offering false evidence and insurance fraud), Century alleges that Prince engaged in the "predicate act" of alleging that Vasquez was acting within the course and scope of his employment in the Pretnar complaint, and that Prince "cannot identify any evidentiary basis suggesting that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident." *See* ECF Doc. No. 1 at ¶¶ 63 and 64.

In a staggering display of irony, Century attempts to support its "predicate act" of Prince allegedly pleading false facts– by itself pleading facts that Century knows are false.  Century

---

[47] Plaintiff's expert in the *Andrew* case opined that " Century completely failed its insureds" and "Century issued a coverage denial that was self-serving, and was the result of an investigation and evaluation that was meant to protect only the company."  Feldman also concluded that the manner in which century investigated, evaluated, and concluded this claim was unreasonable and fell outside insurance industry standards." See **Exhibit 26** at para. 39.

[48] Century's Civil Conspiracy Claim is based on the same conduct of Prince and his co-defendants.

*knows* item (c) to paragraph 63 in its Complaint is false because the June 15, 2009 letter was sent to <u>Defendant Esparza</u>, not Prince.  See June 15, 2009 letter to Esparza attached as **Exhibit 23.**  While an isolated error might be excusable, Century <u>repeats</u> this same false allegation again in its Complaint <u>and</u> even quotes from the letter to Esparza while stating the letter was sent to <u>Prince</u>, "On June 15, 2009, Progressive provided Vasquez's affidavit <u>to Defendant Prince with a cover letter stating, "As you are no doubt aware, Mr. Vasquez was not doing anything connected with his work" at the time of the accident.</u>"  See ECF Doc. No. 1 at ¶ 21 at 7:3-5(emphasis added).  Century <u>knows</u> this allegation is false because it quotes language directly from a letter clearly addressed to <u>Esparza</u> (not Prince).  See **Exhibit 23.**

Century pleads other allegations it knows to be false, including the allegation that,  "On May 26, 2009, <u>Defendant Prince</u> made a pre-suit demand and enclosed a form affidavit for Vasquez to determine if additional coverage was available."  See ECF Doc. No 1 ¶ 19 at 6:13-14.  Century also <u>knows</u> that this letter was sent by Esparza - <u>not Prince</u>.  See **Exhibit 6**.[49]  Century also falsely alleges that the default judgment was entered against Century.  ECF Doc. No. 1 at 2:4-8.  Of course, Century knows that there is no judgment against it at this time because the default judgment was against Vasquez and Blue Streak only.  See **Exhibit 16**.

Prince was retained approximately three weeks before the statute of limitations was going to expire, and he was aware of two potential sources of insurance coverage.  Given the nature of Vasquez's mobile car-detailing business, Prince made the strategic litigation decision to protect a potential $1,000,000 claim from being time barred by asserting claims against Blue Streak.  **This is the very conduct NRS 41.660 and the litigation privilege must protect.**

Moreover, Century alleges that, "According to <u>every account of the accident</u>, Vasquez was driving the Ford F-150 as his personal vehicle to run a personal errand and was not in the course and scope of his employment with Blue Streak at the time of the Accident."  See ECF Doc. No.1 at ¶ 9.  Century fails to note, however, that the only "accounts" of the accident were statements by Vasquez.  Vasquez may have informed his insurers that he was not acting within

---

[49] Century alleges Prince was going "to make a demand against Plaintiff Century and have them reject it."  See Complaint at 8:16-18.  However, Prince <u>never</u> made <u>any</u> demand on Century.

the course and scope of his business, but Prince was not required to rely on those statements given the circumstances. That Vasquez did not think he was doing anything business related does not end the inquiry. With the statute of limitations expiring, Prince was obligated to protect his catastrophically injured client, and Prince had to name Blue Streak as a defendant in the complaint to preserve a $1,000,000 claim.

Century's suggestion that "Defendants cannot identify any evidentiary basis suggesting that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident" is simply false. Prince informed Century that he had legal research to support an allegation that Vasquez was in the course and scope of his business– even if at the moment of the collision he was not doing anything business related, and Century never bothered to ask him to provide such authority.[50] Indeed, in *Evans*, an off-duty Southwest Gas employee was driving home in a company vehicle with a company radio, but he was required to come back to work if he received a call. While driving home, the employee collided with another vehicle. Even though the employee was off-duty, the injured party sued Southwest Gas. The Nevada Supreme Court held that because the employee was *required* to be on-call and took work vehicle home to respond to emergencies, the employer was deriving a benefit. Thus, the Court ruled that the employee was in the course and scope of his employment at the time of the accident.[51]

In addition to being an experienced advocate with extensive knowledge of the applicable case law, when Prince filed the Pretner complaint he knew that: (1) Vasquez was a one-man mobile detailing business; (2) Pretner's father believed a potential witness saw Vasquez working just prior to the collision (**Exhibit 5** at CF000062); and (3) the Ford F-150 had a license plate stating "JSTDTLD" as an acronym for "just detailed" (**Exhibit 3** at p. 2). This is more than enough information to support the subject allegations. Moreover, Century knew that: (1) Blue Streak provided mobile detailing services at the customers' location; (2) Blue Streak was operated from Vasquez's home; (3) Vasquez drove the "company" trucks home every night

---

[50] See, e.g. *Evans,* 108 Nev. 1002, 842 P.2d 719 (1992)
[51] Id. at 1006, 842 P.2d at 722.

(including the subject Ford F-150), while the trailers and other equipment were stored elsewhere; and (4) Vasquez used his cell number as his business number. (**Exhibit 5** at CF000007-34) Blue Streak's website also states that Blue Streak "is always available." See **Exhibit 24**.

Given his knowledge, Prince had to include the "course and scope" allegations to protect the potential claims of his client. To suggest that Prince, or any other attorney, prior to any discovery being conducted, could be held personally liable for *allegations* made in a complaint could have a chilling effect on the claims of all types of plaintiffs, and is the very reason that NRS 41.660 and the litigation privilege exist.[52]  Indeed, Prince likely would have been subject to professional liability if he <u>did not</u> name Blue Streak as a defendant and discovery later confirmed that Vasquez was acting in the course and scope of his employment when he struck Pretner. NRS 41.660 and the litigation privilege protect attorneys from these types of "catch 22" situations by shielding them from personal liability for litigation-related decisions.

Allegations in a complaint are covered by the litigation privilege and cannot be considered "predicate acts" to support civil RICO or conspiracy claims.  Prince's allegations regarding the "course and scope" of Vasquez's business were brought with the in good faith expectation they could be supported with further discovery. More importantly, even assuming *arguendo* that Prince <u>knew</u> the allegations were false (which he did not), such communications are still protected by the absolute privilege, and cannot constitute predicate acts.[53]

### ii. Century's Second "Predicate Act" Is Prince's Allegation in the State Court Complaint That Blue Streak Owned the Ford F-150.

Century next alleges that Prince engaged in a second "predicate act" supporting two alleged civil RICO actions (offering false evidence and insurance fraud) because Prince alleged that Blue Streak owned the Ford F-150 in the Pretner complaint, and Prince "ignored the only known evidence - the police reports concerning the Accident and Vasquez's affidavit - which

---

[52] Although attorneys may be subject to NRCP 11 sanctions for unsupported pleadings, nothing in Nevada law suggests allegations in a complaint would subject an attorney to personal liability.

[53] *Virtual Educ.*, 125 Nev. at 382, 213 P.3d at 502; *Hampe v. Foote*, 118 Nev. 405, 409, 47 P.3d 438, 440 (2002).

indicated that Vasquez was driving the Ford F-150 truck his personal vehicle at the time of the Accident." *See* ECF Doc. No. 1 at pp. 14-15, ¶¶ 70 and 71. Plaintiff also alleges that Prince's signing of the Pretner complaint was a predicate act. Id. at ¶ 72.

Century cites to NRCP 11 in its Complaint to suggest that Prince acted improperly by alleging Blue Streak's ownership of the truck. NRCP 11, however, undermines Century's position that personal liability should attach to statements made by attorneys in Court pleadings. A request for sanctions under NRCP 11 *is* the remedy to address an attorney making unsupported allegations in a complaint (or signing a complaint without proper basis) - not personal liability for presenting false evidence under the Nevada civil RICO statute. This is because allegations made in a court pleading are protected by the litigation privilege.[54]

The only "evidence" of ownership available to Prince when the Complaint was filed were self-serving statements by Vasquez, and a police report noting the "Just Detailed" license plate. Moreover, Century did not provide Pretner's counsel with a copy of the policy until *after* filing the Complaint. Only then could Prince confirm that Century's policy covered vehicles not owned by Blue Streak. Id. at CF000154. Indeed, because Vasquez also owned other autos used in the business, Blue Streak's use of the subject truck, as opposed to actual ownership of the truck, was ultimately the only relevant fact to coverage. Nonetheless, given the information available at the time, Prince's allegations were "good faith communications in furtherance of the right to petition," as defined in NRS 41.650, and Prince is immune from liability arising from the filing of the state court Complaint through entry of the default judgments. Accordingly, this second "predicate act" cannot support Century's RICO or civil conspiracy claims.

### iii. Century's Third Alleged Predicate Act is the Execution of the Settlement Agreement and Covenant Not to Sue.

Given that the two alleged "predicate acts" set forth above are based on statements made in pleadings, there are insufficient "predicates acts" to support a Civil RICO claim. Nonetheless,

---

[54] Rule 11 provides a safe harbor provision requiring notice to the offending attorney and a 21-day period wherein the attorney can withdraw the pleading. This demonstrates further reluctance by the Courts to punish offending attorneys for alleged pleading errors.

should this Court elect to examine it, Century next asserts that the Defendants engaged in a third predicate act "Related to the Settlement Agreement and Obtaining Vasquez's Signature on the Covenant Not to Enforce." ECF Doc. 1 at 15:22-17:24. In essence, Century suggests that Prince should be subject to personal liability based on the same "course and scope" allegations (discussed above), and based on Prince's not informing Century or Judge Herndon of the Settlement Agreement before seeking a default judgment.  See ECF Doc. 1 at p. 16,  ¶¶ 77-80.

As discussed above, <u>Progressive</u> proposed the covenant to Prince to finally be able to pay the policy limits it had been offering for years.  Progressive did not and hire Ranalli to negotiate the covenant until <u>after</u> Century had denied the claim.  Discussions between Progressive and Prince are well documented, and were undertaken in the furtherance of resolving litigation. Century can point to no law or rule that prohibited such a settlement.  It is undisputed that Century had copies of the subject defaults, and that Century could have learned about the prove-up hearing had they simply monitored the case.  Once Century closed its file, there is nothing under Nevada law that required any of the Defendants to inform Century of their settlement negotiations or to disclose to them any intention to enter into the Settlement Agreement.

The law is also clear that when a liability insurer denies coverage and refuses to provide a defense, the insureds are free to make the best good faith deal possible with the third party including a stipulated judgment with a covenant not to execute.[55] When an insurer breaches the duty to provide a defense, the duty of cooperation does not prevent the insured from entering into a settlement with the claimant and assigning his rights under the policy.[56]  Further, under Nevada law an insured's claims for breach of contract and breach of the duty of good faith and fair dealing are fully assignable against an insurer.[57] An action for damages in excess of the policy limits based upon an insurer's wrongful breach of the duty of good faith and fair dealing including the duty to defend <u>is assignable</u> whether the action is considered sounding in tort or

---

[55] *Hamilton v. Maryland Casualty*, 41 P.3d 128, 134 (Cal. 2002); *USAA v. Alaska Insurance Co.*, 114 Cal.Rptr.2d 449, 453 (Cal. App. 2002)
[56] *Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969)
[57] *See Gallegos v. Malco Enterprises of Nevada, Inc.*, 255 P.3d 1287 (Nev. 2012)

21

1   contract.[58] Accordingly, there was nothing improper or even unusual about the Settlement

2   Agreement- especially given the significant exposure to Century's insureds resulting from

3   Century's improper claims handling.  Despite all of the notice Century had regarding the

4   respondent superior claim and the defaults, Century had refused to defend and closed its file.

5   Prince was therefore under no duty to provide Century any further notice.

6          Additionally, the Settlement Agreement did not contain a stipulated or confessed

7   judgment thereby eliminating the risk of fraud or collusion.   The parties at all times

8   contemplated that the damages and other relief would be judicially determined, and had no role

9   in determining the amount of the judgment.  Judge Herndon awarded damages pursuant to

10  NRCP 55(b)(2) after hearing evidence at a public hearing on Pretner's application for entry of

11  default judgment.  As noted above, the default judgment was entered against Vasquez and Blue

12  Streak- not Century.  At the time the agreement was executed, it had no impact on Century,

13  Century's ability to intervene into the case, or Century's ability to take further action to protect

14  its own interests or the interest of its insureds.  Neither Prince nor any other co-defendant had

15  knowledge of any ongoing action Century was taking with regard to the claim or if Century was

16  monitoring the case through the court's public website (which Century easily could have done).

17         The Settlement Agreement only became relevant when Century failed to timely intervene

18  or take further action on behalf of Vasquez and Blue Streak.  As a result, Prince, on behalf of his

19  client, used the Settlement Agreement as a basis to file the *Andrew* lawsuit, and expressly cited

20  to the Settlement Agreement in support of the specific claims.  Prince's conduct in connection

21  with the Settlement Agreement was done solely in furtherance of the interests of his

22  catastrophically injured client so it is absolutely protected by the litigation privilege. Moreover,

23  even if Prince knew that the Covenant was not enforceable (which he does not), he is not subject

24  to personal liability for negotiating it or using it as a basis for filing the *Andrew* complaint.

25         Finally, the suggestion that Vasquez was somehow induced to commit perjury is false.

26  Nothing in the Settlement Agreement required Vasquez to recant his version of events. See

27

28

---

[58] *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 328 P.2d 198 (1958)

**Exhibit 13**. Vasquez made no false statements, and he certainly did not state that he was operating his vehicle in the course and scope of his employment.  Id. Rather, Vasquez freely executed the Settlement Agreement because there was a significant probability that a verdict would be entered in Pretner's favor. Id. at ¶5.  The Settlement Agreement was simply the only way Pretner could accept the Progressive offer and still retain the ability to pursue Century. Moreover, Esparza had already been discussing a covenant not to execute with both Progressive and Century since 2009- long before Prince became involved in the case.

**G. CENTURY CANNOT PREVAIL ON ITS CLAIMS BECAUSE THEY ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Based on the foregoing, this Court has sufficient basis to immediately dismiss Century's Complaint under NRS 41.660 because all of the alleged conduct is protected by the litigation privilege. Century's claims, however, also fail because they are barred by the statute of limitations. Regardless of how the two claims are styled, both allege fraud and collusion with regard to the Settlement Agreement and default judgments.  The statute of limitation for fraud is three years.[59] The statute of limitations for civil conspiracy is 4 years.[60] The *Andrew* Complaint which disclosed the Settlement Agreement was filed on **April 28, 2012**.  Century asserted its defense of "fraud" and "collusion" on **June 15, 2012**.  See **Exhibit 18**. Century has had actual notice of claims for fraud and civil conspiracy for over four years, and therefore Century will not be able to prevail on its second claim for relief of Civil Conspiracy.

Likely recognizing its Civil Conspiracy claim is untimely, Century has attempted to restyle the claim as a sham civil RICO claim to invoke the 5-year statute of limitations.[61] As discussed above, this claim also fails because all of the subject "predicate acts" are protected by the litigation privilege.  Moreover, Century had actual notice of two of the three alleged "predicate acts" on March 3, 2011 when it received copies of the Pretner complaint.  Because two of the three predicate acts took place well outside the five-year statute of limitations,

---

[59] See NRS 11.190(3)(d).
[60] See NRS 11.220.
[61] NRS 207.350 to NRS 207.520

Century does not have two requisite predicate acts to support a Civil RICO Claim.[62] Further, although Century claims it did not learn about the Settlement Agreement and default judgments until April 28, 2012 (the third predicate act), Century should have taken to action to discover that information following receipt of the Complaint from Prince in March 2011.  When Century closed its file on June 27, 2011, it was on notice that its insureds were free to protect themselves from an excess judgment - including execution of the Settlement Agreement. Century should not be permitted to use its failure to monitor and intervene in the subject action – which would have lead to discovery of the facts related to the execution of the October 20, 2011 Settlement Agreement – to support its sham Civil RICO claim.

### III.

### CONCLUSION

For the reasons stated herein, Defendant Prince respectfully request this Court to enter an order pursuant to NRS 41.660 granting its Special Motion to Dismiss all causes of action and make an award of attorney's fees as allowed by statute.

DATED this 16th day of December, 2016.

**EGLET PRINCE**

*/s:/ Robert T. Eglet, Esq.*

_____
Robert T. Eglet (Bar No. 3402)
Erica D. Entsminger (Bar No. 7432)
400 South 7th Street, Box 1, 4th Floor
Las Vegas, NV 89101

**LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.**
Joseph P. Garin (Bar No. 6653)
Megan H. Hummel (Bar No. 12401)
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
*Attorneys for Defendant Prince*

_____
[62] *Siragusa v. Brown,* 114 Nev. 1384, 1398-99, 971 P.2d 801, 810-11 (1998).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of December, 2016, I served the foregoing **DEFENDANT DENNIS PRINCE'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** by electronically serving the document(s) listed above with the United States District Court's CM/ECF upon the following:

Maria Louise Cousineau
**COZEN O'CONNOR**
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
*Attorney for Plaintiff*

J. Ric Gass
Michael B. Brennan
**GASS WEBER MULLINS LLC**
309 North Water Street
Milwaukee, Wisconsin 53202
*Attorneys for Plaintiff*

Martin J. Kravitz
**CHRISTIAN, KRAVITZ, DICHTER,
JOHNSON & SLUGA, LLC**
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
*Attorney for Plaintiff*

Joseph P. Garin
Megan H. Hummel
**LIPSON NEILSON COLE
SELTZER & GARIN, P.C.**
9900 Covington Cross Drive, Suite 120
Las Vegas, NV 89144
*Attorneys for Defendant*

Matthew L. Sharp
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV 89501
*Attorney for Defendant*

_____
*/s/ Kimberly Culley*
An Employee of EGLET PRINCE