**COZEN O'CONNOR**
Maria Louise Cousineau (SBN 002876)
*maria.cousineau@cozen.com*
601 S. Figueroa Street, Suite 3700
Los Angeles, CA  90017
Telephone: (213) 892-7900
Facsimile:  (213) 892-7999

**GASS WEBER MULLINS LLC**
J. Ric Gass (admitted *pro hac vice*)
*gass@gwmlaw.com*
Michael B. Brennan (admitted *pro hac vice*)
*brennan@gwmlaw.com*
309 North Water Street
Milwaukee, Wisconsin  53202
Telephone: (414)223-3300
Facsimile:  (414)224-6116

**CHRISTIAN, KRAVITZ, DICHTER,**
**JOHNSON & SLUGA**
Martin J. Kravitz
*mkravitz@ksjattorneys.com*
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 362-6666
Facsimile:  (702) 362-2203

Attorneys for Plaintiff
CENTURY SURETY COMPANY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CENTURY SURETY COMPANY, a foreign corporation;<br><br>  Plaintiffs,<br><br>v.<br><br>DENNIS PRINCE, GEORGE RANALLI, and SYLVIA ESPARZA,<br><br>  Defendants. | Case No.: 2:16-cv-02465-JCM-PAL<br><br>**CENTURY SURETY COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DENNIS PRINCE'S MOTION TO DISMISS PURSUANT TO NRS 41.660 [ECF #37, 40, and 43]** |

**Introduction**

Plaintiff Century Surety Company ("Century") asserts Nevada state law RICO and civil conspiracy claims against Defendants Dennis Prince ("Prince"), Sylvia Esparza ("Esparza"), and George Ranalli ("Ranalli") (collectively, "Defendants") arising out of a civil conspiracy whereby Defendants agreed to create and brought about a bad faith insurance "set up" against Century, which resulted in an $18-plus million dollar default judgment.  (ECF #1.)  Prince now moves to dismiss.

Prince does not challenge the sufficiency of Century's claims under Rule 12(b)(6).  Rather, Prince moves to dismiss only under Nevada's anti-SLAPP statute, which provides that "if a person is sued based upon good faith communications in furtherance of the right to petition, the person against whom the action is brought may file a special motion to dismiss."  *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-cv-00513, 2010 WL 2773530, at *2 (D. Nev. July 12, 2010).  Under the statute, Prince must "make a threshold showing that the lawsuit is based on *good faith communications* made in furtherance of the right to petition the government."  *Doe v. Brown*, No. 62752, 2015 WL 3489404, at *1 (Nev. May 29, 2015) (emphasis added) (citation and quotation omitted).  "Good faith communications" are "communications that are ***truthful or made without knowledge of falsehood***."  *Moonin v. Nevada ex rel. Dep't of Pub. Safety Highway Patrol*, 960 F. Supp. 2d 1130, 1146 (D. Nev. 2013) (emphasis added).  Prince fails to make the initial required showing here and his motion should be denied.

**Material Facts**

**I.     The accident.**

The underlying action arises from a January 12, 2009 accident in which Ryan Pretner ("Pretner") was injured by a Ford F-150 pickup truck owned and operated by Michael Vasquez

("Vasquez") while Pretner was riding his bicycle on a Nevada highway (the "Accident").[1]  The Ford F-150 was covered by a personal auto liability insurance policy issued to Vasquez by Progressive Casualty Insurance Company ("Progressive").   Vasquez was the sole owner and manager of Blue Streak Auto Detailing, LLC ("Blue Streak"), a Nevada Limited Liability Company that provided mobile car detailing services, such as washing, waxing, and carpet cleaning.   Vasquez and Blue Streak were entirely separate entities, with separate addresses, phone numbers, and automobiles.  (*See* Progressive Claim File, attached as **Exhibit A** to Declaration of J. Ric Gass in Support of Century Surety Company's Memorandum of Points and Authorities in Opposition to Defendant Dennis Prince's Motion to Dismiss ("Gass Decl."), at CF000189.)  Blue Streak owned a 2008 Chevy Silverado, which was insured under a Commercial Liability Garage Coverage policy issued to Blue Streak by Century.   Blue Streak's Chevy Silverado and Vasquez's Ford F-150 were "insured separately to keep the business separate from his personal." (*Id.* at CF000239.)

II.     **The Accident occurred while Vasquez was running a personal errand in his personal vehicle several hours after work.**

Vasquez was driving the Ford F-150 as his personal vehicle to run a personal errand and was **not** in the course and scope of his employment with Blue Streak at the time of the accident.  (*Id.* at CF000069-70.)   Around 7 a.m. on January 12, 2009, Vasquez left his home at 1886 Via Firenze, Henderson, NV 80044 for work, driving his personal Ford F-150 truck.  (*See id.*)  At approximately 1-2 p.m. Vasquez finished work and went home to relax.  (*Id.*)  Between approximately 1 p.m. and 5:30 p.m., Vasquez relaxed at home, had something to eat, and showered.  (*Id.*)  Just before 5:30 p.m., Vasquez left home to go to his uncle's house to pick up mail and for a family visit, driving his personal Ford F-150 truck.  (*Id.*)  The accident occurred around 5:30 p.m. while Vasquez was on his way to his Uncle's house.  (*See id.*)  At the scene of the Accident, Vasquez told investigating police

---

[1] After Pretner was injured, Dana Andrew, Pretner's sister, and Lee Pretner, Pretner's father, were appointed as co-legal guardians.

officers that he was "off work" and "on his way to Uncle's home coming from his house." (*See* George Ranalli Case File, attached as **Exhibit B** to Gass Decl., at GR000142 ("I specifically asked him questions pertaining to what his destination was and he stated that he was on his way to his Uncle's home coming from his house."); *id.* at GR000143 ("Michael stated that he had been on his way to his Uncle's house").) The police reports state that the Ford F-150 was registered to Michael Vasquez and insured by Progressive Insurance.

On January 13, 2009 Vasquez gave a recorded statement to Progressive in which, consistent with the information he provided to the police after the accident, Vasquez stated that he was "off work" and running "personal errands" at the time of the Accident. On March 18, 2009, Vasquez again told Progressive that "he had been off work around 2 or 3 pm in the afternoon and had been home" prior to the accident and "was in his personal truck." (Progressive Claim File at CF000240.) On April 28, 2009, Vasquez again confirmed that he was off work and on a personal errand at the time of the Accident:

> A: I was going to my uncle's house to pick up some mail. . . . Running personal errands really.
>
> Q: It was a personal errand you were running?
>
> A: Yes. . . .
>
> Q: Just to conclude, you say that you were on a personal errand? It wasn't business. Is that correct?
>
> A: Yes, that's correct. It was a personal errand. I probably got off work probably about 2:00, maybe even earlier than that. I came home, ate, relaxed, showered up and then I left. I went to go see some family and pick up some mail.

(April 28, 2009 Recorded Statement of Michael Vasquez, attached as **Exhibit C** to Gass Decl., at 13.)

Plaintiffs were initially represented by Esparza, an immigration attorney who handled the case as "personal" matter "[b]ecause of [her] relationship to [Pretner]." (April 26, 2013 Deposition of Sylvia Esparza ("Esparza Dep."), attached as **Exhibit D** to Gass Decl., at 10:10-18, 22:14-18.)

Esparza and Pretner were "high school sweethearts" who were dating at the time of the Accident and later married.  (*Id.* at 16:15-16, 17:6-10.)  Esparza never informed Century of her relationship with Pretner, explaining that "I didn't want to let them know that I was actually involved with [Pretner] and that personal relationship" "because I thought it would be awkward that I was, you know, his partner and also representing him."  (*Id.* at 75:13-21.)

On May 26, 2009, Esparza made a pre-suit demand and enclosed a form affidavit for Vasquez to execute.  On June 12, 2009 Vasquez executed an affidavit averring that:

- On the day of the accident, Vasquez worked from 7:00 am until 1:00 pm.  (Progressive Claim File at CF000070.)

- Vasquez "was driving from home located at 1886 Via Firenze Henderson, NV 80044" and "was going to [his] aunt and uncle's house… for the purpose of [a] visit."  (*Id.*)

- "Just prior to the accident, I had been at home, located at 1886 Via Firenze, Henderson NV 89044 for approx. 4 . . . hours."  (*Id.*)

- "The reason I was going to the above location was . . . to visit . . . "family."  (*Id.*)

- "At the time of the accident, the owner of the vehicle I was driving was Michael Vasquez, who was myself and whose last known address is 1886 Via Firenze Henderson NV 89044."  (*Id.*)

- "The car I was driving that was involved in the accident was insured with Progressive with a policy number of 66805848-4" (*Id.*)

On June 15, 2009, Progressive provided Vasquez's affidavit to Esparza with a cover letter stating:  "As you are no doubt aware, Mr. Vasquez was not doing anything connected with his work" at the time of the accident.  (*Id.* at CF000068-72, CF000117.)

**III.   Plaintiffs' Complaint alleged that Vasquez was in the course and scope of his employment with Blue Streak at the time of the Accident despite all of the available information that Vasquez was not in the course and scope of his employment at the time of the Accident.**

Three weeks before the statute of limitations was to expire, but prior to filing the Complaint, Plaintiffs retained Prince to replace Esparza as counsel.  (*See* ECF #37 at 17.)  Esparza provided her entire case file—including the notarized Vasquez affidavit and police reports—to Prince.  (Esparza

Dep. at 48:3-24, 90:20-23, 99:18-23.)  Progressive is one of Prince's clients.  (*See* April 2, 2013 Deposition of Pamelee Torres ("Torres Dep."), attached as **Exhibit E** to Gass Decl., at 67:11-16; Progressive Claim File at CF000231.)  Accordingly, Prince made clear to Progressive from the outset that he was only interested in pursuing a "setup" action against Century—and had no intention of going after Vasquez or Progressive.  (Torres Dep. at 67:25-68:2, 80:12-21; Progressive Claim File at CF000231.)

On January 7, 2011, Plaintiffs filed suit against Vasquez and Blue Streak in Nevada state court asserting four claims: (1) negligence (against Vasquez); (2) negligence *per se* (against Vasquez); (3) negligent entrustment (against Blue Streak); and (4) *respondeat superior* (against Blue Streak).  The Complaint alleged that "Vasquez and Blue Streak used the 2007 Ford F-150 vehicle as an integral part of their business" and that Vasquez was "driving [the] 2007 Ford F-150" "in the course and scope of his business with Blue Streak" at the time of the accident.  Prince then provided an open and indefinite extension of time in which to file an answer to the Complaint and promised that he would not take a default against Vasquez.  (Torres Dep. at 83:17-18, 84:1-4; 87:4-7; *see also* Progressive Claim File at CF000230-31.)  Despite granting an "open extension" to respond to the Complaint and promising not to take a default, Prince obtained defaults against Vasquez and Blue Streak.

**IV.    The Settlement Agreement between Plaintiffs, Vasquez, and Blue Streak.**

Progressive and Prince agreed to a settlement under which Progressive would pay its $100,000 policy limit, Plaintiffs would obtain an assignment by Blue Streak and Vasquez of their rights to proceed against Century under the Garage Policy, and Prince would proceed to obtain a default judgment against Vasquez and Blue Streak.  The agreement also provided that Plaintiffs would provide a covenant not to execute on the resulting judgment.  (Progressive Claim File at CF000023.)  Progressive retained Ranalli to advise Vasquez in connection with the settlement and

instructed him to work with Prince to draft a settlement agreement.  (*See id.* at CF000022 ("I would like you to call Mr. Prince and get further details on his proposal and ask him to draft a Covenant he would be comfortable with.  After you and Mr. Prince agree on the language, please have [Vasquez] come back into your office for a final review of the Covenant and get his signature on the document."); *id.* at CF000229.)  On October 20, 2011, Vasquez executed the settlement agreement.[2]  After getting Vasquez to sign, Ranalli reported to Progressive that Vasquez "did not want to sign as he insisted he was not on the job and Century should not be involved."  (*See id.* at CF000154.)  Neither Prince nor Progressive informed Century of the Settlement Agreement.

## V.      The Default Judgment.

Prince then filed an Application for Entry of Default Judgment, again alleging that "[a]t the time of the accident, Vasquez was in the course and scope of his employment with Blue Streak" (*See* Ranalli Case File at GR000111, GR000118.)  Prince did not provide notice of the default judgment application or notice of the default judgment hearing to Vasquez, Blue Streak, or Century.  Rather, Prince purported to serve the Application for Entry of Default Judgment and notice of the Default Judgment hearing upon Ranalli as "Attorneys [sic] for Defendants *Michael A. Vasquez and Blue Streak Auto Detailing, LLC*."  (*See* Ranalli Case File at GR000123; Progressive Claim File at CF000144.).  Neither Ranalli nor Progressive provided notice of the application or hearing to Vasquez, Blue Streak, or Century after receiving it from Prince.  (*See* Torres Dep. at 115:11-24.)  Ranalli did not attend the default judgment hearing.  (Progressive Claim File at CF000143.)  Consequently, there was no appearance by or on behalf of Vasquez or Blue Streak at the April 11, 2012 default judgment hearing at which the Court entered the $18,050,185.45 default judgment against Vasquez and Blue Streak, adopting the allegation made by Prince that "[a]t the time of the

---

[2] The Settlement Agreement contained only one signature line, listing both Vasquez and Blue Streak underneath.

accident, Vasquez was in the course and scope of his employment and/or agency of Blue Streak acting in furtherance of its business interests."

Prince did not provide notice of the default judgment to Vasquez, Blue Streak, or Century. Rather, like the Application for Entry of Default Judgment and Notice of Default Judgment Hearing, Prince served notice of the Entry of Default Judgment only upon Ranalli as "Attorneys [sic] for Defendants *Michael A. Vasquez and Blue Streak Auto Detailing, LLC*."  (*See* Ranalli Case File at GR000272.)  Neither Progressive nor Ranalli provided a copy of the default judgment to Vasquez or Blue Streak and Century was never served with the default judgment.  (*See* Torres Dep. at 117:19-24.)

**VI.**   **Plaintiffs now seek to enforce the Default Judgment against Century.**

On May 15, 2012, Century was served with a complaint in the case captioned *Andrew v. Century Surety Co.*, No. A-12-660544-C, filed in Nevada State District Court, Clark County. Plaintiffs, as alleged assignees of Blue Streak and Vasquez, asserted claims against Century for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claims practices and seek to enforce the default judgment against Century.  Century removed the case to the United States District Court for the District of Nevada.  *Andrew v. Century Surety Co.*, No. 2:12-cv-00978 (D. Nev.)[3]

**Legal Standards**

**I.**    **Special motion to dismiss under Nevada's anti-SLAPP statute.**

Nevada's anti-SLAPP statute provides that a person "who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication."  NRS 41.650.  The statute "only protects citizens who petition the government

---

[3] Citations to docket entries and ECF filings in the Andrew litigation are indicated by "*Andrew*" preceding the ECF number.

from civil liability arising from *good-faith communications*" and "is not an absolute bar against federal substantive claims; rather, it bars claims from persons who seek to abuse other citizens' rights to petition their government, and it allows meritorious claims against citizens who do not petition the government in good faith." *John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1281 (Nev. 2009).   "Good faith communications" are "communications that are **truthful or made without knowledge of falsehood**." *Moonin*, 960 F. Supp. 2d at 1146 (emphasis added).

Under the statute, "if a person is sued based upon good faith communications in furtherance of the right to petition, the person against whom the action is brought may file a special motion to dismiss." *Rebel Commc'ns, LLC*, 2010 WL 2773530, at *2; NRS 41.660(1)(a).  The Nevada anti-SLAPP statute requires courts to employ a two-step process in ruling on a special motion to dismiss. A "court first has to '[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon good faith communication in furtherance of the right to petition . . . in direct connection with an issue of public concern.'" *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, No. 2:14-cv-424, 2016 WL 4134523, at *3 (D. Nev. Aug. 2, 2016) (quoting NRS 41.660(3)(a)) (alterations in original).  If the movant fails to satisfy this threshold burden, the Court must deny the motion. *See Baharian-Mehr v. Smith*, 189 Cal. App. 4th 265, 271-72 (Cal. Ct. App. 2010) ("[I]f the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step.").

If the moving party satisfies its initial burden, the court then determines whether the non-moving party "has demonstrated with prima facie evidence a probability of prevailing on the claim[.]"  NRS 41.660(3)(b).  "Although called a 'motion to dismiss,' anti-SLAPP motions are treated like motions for summary judgment." *Las Vegas Sands Corp.*, 2016 WL 4134523, at *3); *Murguia v. Palmer*, No. No. 3:12-cv-00347, 2013 WL 1250449, at *3 (D. Nev. Mar. 27, 2013).

Accordingly, "summary judgment standards apply." *Balestra-Leigh v. Balestra*, No. 3:09-cv-551, 2010 WL 4280424, at *4 (D. Nev. Oct. 19, 2010).

**II.    Summary judgment standard.**

"Under the *Erie* doctrine, federal law governs the procedural aspects of summary judgment in a diversity case, while the law of the forum controls the substantive issues." *Leslie v. Las Vegas Metro. Police Dep't.*, No. 2:14-cv-01430, 2015 WL 10504244, at *5, n. 66 (D. Nev. Dec. 18, 2015) (citing *Sullivan v. Mass. Mut. Life Ins. Co.,* 611 F.2d 261, 263-64 (9th Cir. 1979)); *Somaya v. Bank of India*, No. 12-cv-4926, 2014 WL 931097, at *6 (N.D. Cal. Mar. 5, 2014) ("The federal summary judgment standard is procedural, therefore it controls in a diversity case in federal court.") (citations omitted).

"Summary judgment is proper when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Abney v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-cv-2418, 2010 WL 2680517, at *1 (D. Nev. June 30, 2010) (quoting Fed. R. Civ. P. 56(c)).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law.  *Abney*, 2010 WL 2680517, at *1 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.  *Abney*, 2010 WL 2680517, at *1 (citing *Blanck v. Hager,* 360 F.Supp.2d 1137, 1148 (D. Nev. 2005)); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) ("The defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims.").

**Argument**

**I.     The Court should deny Prince's special motion to dismiss because Prince cannot satisfy his initial burden to establish by a preponderance of the evidence that this action is based upon a "good faith communication."**

> **A.     Prince does not even assert—much less establish by a preponderance of the evidence—that the "communications" were truthful or made without knowledge of falsehood.**

Prince "bears the initial burden of production and persuasion and must make a threshold showing that the lawsuit is based on good faith communications made in furtherance of the right to petition the government." *Murguia*, 2013 WL 1250449, at *3; NRS 41.660(3)(a).  Prince asserts that to meet his initial burden, he need only show that Century's claims relate to legal proceedings.  (*See* ECF #37 at 9-10 ("All of the alleged conduct and communications, however, were performed by the Defendant attorneys in connection with legal proceedings (or 'to further a right to petition') and are protected by the Anti-SLAPP statute.").)  Prince misconstrues the applicable standard.

Under Nevada's anti-SLAPP statute, "[t]he moving party must first make a threshold showing that the lawsuit is based on *good faith communications* made in furtherance of the right to petition the government."  *Doe*, 2015 WL 3489404, at *1 (citations and quotation marks omitted).  Prince conveniently elides over this express requirement and ignores the statute's plain and unambiguous language.  Notwithstanding his suggestion to the contrary, to make the required threshold showing, Prince must establish that the communications fit within one of four specifically articulated categories of "good faith communications," each of which requires that the communication "*is truthful or is made without knowledge of its falsehood*."  NRS 41.637 (emphasis added).  Thus, under the plain and unambiguous statutory language, a "good faith communication is one that is 'truthful or made without [the] knowledge of falsehood.'"  *Doe*, 2015 WL 3489404, at *1 (citations and quotation marks omitted).

Tellingly, and fatally, Prince fails to acknowledge or address the "truthful or made without knowledge of falsehood" requirement in his motion.  (*See* ECF #37 at 9-10.)  Prince's failure to

accurately articulate the burden imposed by Nevada's anti-SLAPP statute is not surprising given that he devotes less than one full page of argument in his brief to attempting to satisfy his initial burden under the statute.  Whether by obfuscation or oversight, Prince fails to make the required threshold showing and the Court should deny Prince's motion.  *See Coburn v. Holper*, No. 64608, 2015 WL 4512045, at *1 (Nev. July 22, 2015) (affirming denial of motion to dismiss under anti-SLAPP statute where party "did not meet his burden to make a threshold showing that the conduct alleged" in the complaint was a good faith communication it furtherance of the right to petition); *Doe*, 2015 WL 3489404, at *1 (affirming denial of motion to dismiss under anti-SLAPP statute where party "failed to sufficiently prove that the comments in question were in fact 'truthful or made without [the] knowledge of falsehood.'") (alteration in original).

**B.** **Prince cannot establish by a preponderance of the evidence that this action is based upon a "good faith communication" because the evidence shows that the statements were neither truthful nor made without knowledge of falsehood.**

While Prince makes no effort to satisfy his initial burden, the undisputed evidence makes clear that he could not do so.  Rather, the allegations that Vasquez was in the course and scope of his employment at the time of the accident were expressly contradicted by evidence that was available and known to Prince:

| Prince's misrepresentation to the Court | Known facts and evidence |
|---|---|
| Complaint falsely alleges that Vasquez was in course and scope of employment with Blue Streak:<br><br>• "Vasquez . . . was in the course and scope of his employment or agency at the time of the events described herein." (Complaint, ¶ 5, Ranalli Case File at GR000042.)<br><br>• "On or about January 12, 2009, Vasquez, while in the course and scope of his business with Blue Streak, was driving the 2007 Ford F-150 eastbound on St. Rose Parkway in Henderson, Clark County, Nevada."  (Complaint, ¶ 8, Ranalli Case File at GR000043.) | Evidence shows that Vasquez was ***not*** in course and scope of employment with Blue Streak:<br><br>Police Report:<br><br>• "I specifically asked him questions pertaining to what his destination was and he stated that he was on his way to his Uncle's home coming from his house."  (Ranalli Case File at GR000142.)<br><br>• "Michael stated that he had been on his way to his Uncle's house" (Ranalli Case File at GR000143.)<br><br>• "Vasquez stated he had just gotten off work."  (Ranalli Case File at |

| | |
|---|---|
| • "At all times relevant herein, Vasquez was acting within the scope and course of his employment and/or agency with Blue Streak." (Complaint, ¶ 36, Ranalli Case File at GR000047.) | GR000133.)<br><br>Vasquez affidavit:<br><br>• On the day of the accident, Vasquez worked from 7:00 am until 1:00 pm. (Progressive Claim File at CF000070.)<br><br>• Vasquez "was driving from home located at 1886 Via Firenze Henderson, NV 80044" and "was going to [his] aunt and uncle's house… for the purpose of [a] visit." (*Id.*)<br><br>• "Just prior to the accident, I had been at home, located at 1886 Via Firenze, Henderson NV 89044 for approx. 4 . . . hours." (*Id.*)<br><br>• "The reason I was going to the above location was . . . to visit . . . "family" (*Id.*)<br><br>Progressive letter to Plaintiffs' counsel:<br><br>• "As you are no doubt aware, Mr. Vasquez was not doing anything connected with his work" at the time of the accident. (*Id.* at CF000068-72, 117.) |
| Complaint falsely alleges that Blue Streak owned Ford F-150:<br><br>• "Vasquez and/or Blue Streak are the owners of a 2007 Ford F-150 operated by Vasquez at the time of the events which are the subject matter of this Complaint. Vasquez and Blue Streak used the 2007 Ford F-150 vehicle as an integral part of their business." (Complaint, ¶ 7, Ranalli Case File at GR000043.)<br><br>• "Blue Streak entrusted said vehicle to Vasquez when they [sic] allowed him to drive said vehicle." (Complaint, ¶ 24, Ranalli Case File at GR000046.)<br><br>• "Blue Streak entrusted said vehicle to Vasquez in order to generate income and profits for Blue Streak." (Complaint, ¶ 34, Ranalli Case File at GR000047.)<br><br>• "With the full consent, knowledge and approval of Blue Streak, Vasquez was allowed to operate their [sic] vehicle on public roads." (Complaint, ¶ 37, Ranalli Case File at GR000042.) | Evidence shows that Blue Streak did *not* own Ford F-150:<br><br>Police report:<br><br>• 2007 Ford F-150, license plate JSTDTLD, Registered Owner Name: Michael Vasquez and insured by Progressive Insurance; Registered Owner Address: 1886 Via Firenza, Henderson, Nevada 89044. (Ranalli Case File at GR000003.)<br><br>• Insurance Company Name: Progressive, Policy Number: 66805848-4. (Ranalli Case File at GR000003.)<br><br>Vasquez affidavit:<br><br>• "At the time of the accident, the owner of the vehicle I was driving was Michael Vasquez, who was myself and whose last known address is 1886 Via Firenze Henderson NV 89044." (Progressive Claim File at CF000070.)<br><br>• "The car I was driving that was involved in the accident was insured with Progressive with a policy number of |

| | 66805848-4" (Progressive Claim File at CF000070.) |
|---|---|

In fact, Esparza *recognized* and *admitted* that there was no such evidence to support the allegations at the time that she provided the complete claim file to Prince:

Q:  And is there anything in your file that you produced today that documents in any way that he was, that Michael Vasquez was in fact driving a truck that he used in his business at the time of the accident?  You can flip through your file.  Take as much time as you need.

A:  Yeah.  We don't have anything that says that.  I mean I know that he answered his affidavit and he says that he wasn't working at that time but that's it.  I don't have anything else.

Q:  So there's nothing in your file that reflects any documentation of the fact that he was working at the time of the accident?

A:  No.

Q:  Or that he was driving a truck that he used in his business at the time of the accident; correct?

A:  Correct.

Q:  And in fact, the police reports are consistent in that they show he was not working at the time of the accident; isn't that right?

. . . .

A:  Yes. . . .

(Esparza Dep. at 56:10-57:13.)

Q:  Are you aware of any person that has information to suggest that Michael Vasquez was operating in the course and scope of his employment at the time of the accident?

A:  I'm not aware.

(*Id.* at 69:19-24.)

Q:  [Y]ou have no documents in your file that suggests that he was in fact working at the time of the accident; isn't that correct?

. . . .

A:  Yes.

(*Id.* at 94:12-95:16.)

> Q: And in the affidavit that he provided at your request, he told you that he was driving from his home and was going to his aunt and uncle's house to visit; correct?
>
> . . . .
>
> A: Yes.
>
> Q: And in the affidavit he identified the Ford F150 as being insured by Progressive; correct?
>
> . . . .
>
> A: Yes.

(*Id.* at 66:18-68:22.)

Esparza provided all of this information in the complete case file to Prince when he was retained.  (*Id.* at 63:19-20.)  While Prince received this information three weeks before the statute of limitations was to expire, (ECF #37 at 17), Prince does not suggest that he performed any further discovery or investigation in this period prior to filing the Complaint.  Instead, Prince intentionally ignored the only known evidence—Vasquez's affidavit and the police reports—which indicated that Vasquez was driving the Ford F-150 as his personal vehicle, running a personal errand, and was ***not*** in the course and scope of his employment with Blue Streak at the time of the accident.  Thus, not only was there no evidence to suggest that there was any truth to the allegations that Vasquez was in the course and scope of his employment with Blue Streak, the allegations were completely contrary to, and refuted by, the evidence that was clearly known to Prince.  *See Coburn*, 2015 WL 4512045, at *1 (false statements "are not protected activity within the meaning of the anti-SLAPP statute.").

Tellingly, Prince does not at any point in his motion expressly assert that the allegations at issue were truthful or that he made them without knowledge of their falsity.  The closest that he comes is identifying three "facts" that he contends provided "more than enough information to support the subject allegations": (1) Vasquez was a one-man mobile detailing business; (2) Pretner's father believed a potential witness saw Vasquez working just prior to the collision; and (3) the Ford

F-150's license plate was "JSTDTLD."  (ECF #37 at 18.)  But these "facts" did not actually provide any evidentiary support of the allegations.  For instance, after Pretner's father informed Progressive of this alleged witness, Progressive confirmed that Vasquez "had been off work around 2 or 3 pm in the afternoon and had been home and was back out that evening . . . in his personal truck." (Progressive Claim File at CF000240.).  As Pretner's sister, Dana Andrew, explained, her dad "was a little bit caught up with" this alleged witness, but she viewed it "as a potential misstatement or information that was not verified" and thought that "until we had the opportunity to fully explore that or investigate that, you know, or confirm or verify that, I was not necessarily confident that that information had any relevance or reliability."  (July 8, 2013 Deposition of Dana Andrew ("Andrew Dep."), attached to Gass Decl. as **Exhibit F**, at 27:10-16; *id.* at 28:2-4.)  Thus, she recognized that this "wasn't a reliable piece of information at the time" (*Id.* at 26:5-6) and was concerned this information was "inaccurate" or a "misstatement."  (*Id.* at 27:4-7, 50:16-22.)

Nor do these facts satisfy Prince's required threshold showing.  Prince has not offered any evidence that the allegations were truthful or made without knowledge of their falsity and, consequently, cannot establish by a preponderance of the evidence that this action is based upon a "good faith communication."  *Las Vegas Sands Corp.*, 2016 WL 4134523, at *3 (finding that movant failed to establish that its communication was made in good faith and, accordingly, could not establish anti-SLAPP liability); *Balestra-Leigh*, 2010 WL 4280424, at *4 (denying anti-SLAPP motion to dismiss where movant provided "no evidence" that statements were truthful or made without knowledge of falsehood).

**II.**   **If the Court finds that Prince satisfies his initial burden to establish a "good faith communication"—which he does not—Century is entitled to limited discovery before the Court rules on Prince's motion.**

Nevada's anti-SLAPP statute directs a court to stay discovery pending a ruling by the court on the special motion to dismiss or disposition of any appeal from the ruling on the motion.  NRS

41.660(3)(e).[4]  The Ninth Circuit has "cautioned that '[p]rocedural state laws are not used in federal court if to do so would result in a direct collision with a Federal Rule of Civil Procedure'" and has "accordingly refused to apply certain discovery-limiting provisions of the anti-SLAPP statute because they would conflict with Fed. R. Civ. P. 56." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  Because "state law procedural rules are inapposite insofar as they conflict with the law of federal procedure," if "Defendants wish the Court to make a fact-based determination under the Anti–SLAPP statutes, it may do so under a motion for summary judgment later, but it may not stay discovery under the state statute at this early stage and ask the Court to make what amounts to a Rule 56(a) determination without the benefit of any discovery." *Pike v. Hester*, No. 3:12-cv-00283, 2013 WL 839784, at *6 (D. Nev. Mar. 5, 2013); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2009) ("[T]o permit a defendant to invoke the Anti–SLAPP statute to require a plaintiff to present evidence to support his claims before an opportunity for discovery would directly conflict with Federal Rule of Civil Procedure 56.").[5]

Consequently, if the Court finds that Prince satisfies his initial burden under the statute, it should allow Century to conduct limited discovery before ruling on the motion.  *Drussel v. Elko Cty. Sch. Dist.*, No. 3:12-cv-00551, 2013 WL 3353531, at *5 (D. Nev. July 2, 2013) ("In federal court, a plaintiff is entitled to seek limited discovery to oppose an Anti–SLAPP motion.").  At minimum, Century would be entitled to documents and depositions concerning the specific communications at issue and Prince's knowledge as to those issues.  *See Rebel Commc'ns, LLC*, 2011 WL 3841340, at *1 (holding that plaintiff was "entitled to limited discovery to oppose defendants' special Anti-

---

[4] The statute expressly provides for discovery, however, in connection with the second-step of the special motion to dismiss analysis. *See* NRS 41.660(4).

[5] Indeed, the D.C. Circuit Court of Appeals has held that the entire framework of state anti-SLAPP statutes conflicts with the Federal Rules of Civil Procedure and, therefore, are inapplicable in federal court. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti–SLAPP Act's special motion to dismiss provision.").  A position with which an increasing number of Ninth Circuit judges agree. *See, e.g.*, *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182-83 (9th Cir. 2016) (Kozinski, J., concurring) ("These interloping state procedures have no place in federal court" and "[w]e should follow the D.C. Circuit's lead in giving these trespassing procedures the boot.").

SLAPP motion," including documents and depositions related to: (1) the issue raised by the special motion; (2) "any statements or communications made by the defendants, their agents or representatives in connection with that issue, including defendants' mental state, the circumstances and basis upon which any statements were made; (3) knowledge of any statement's falsity, and (4) the relationship between individual defendants" and other related parties); *Pacquiao v. Mayweather*, No. 2:09-cv-2448, 2010 WL 1439100, at *1 (D. Nev. Apr. 9, 2010) (holding that, "in federal court, a plaintiff is entitled to seek limited discovery to oppose an anti-SLAPP motion" and holding that "defendants' statements about their knowledge and reasoning is solely within their control" and plaintiff was entitled to discovery because "[w]ithout contradictory evidence of defendants' mental state or knowledge, [plaintiff] is unable to oppose defendants' special anti-SLAPP motion.").

### III.   If the Court finds that Prince satisfies his initial burden—which it should not—the Court should deny Prince's motion because Century demonstrates a probability of prevailing on its claims.

Where a defendant satisfies his or her initial burden under the anti-SLAPP statute—which Prince does not—the burden shifts to the non-moving party to establish "with prima facie evidence a probability of prevailing on the claim[.]"  NRS 41.660(3)(b).  The required showing at this second stage "is not high" and a plaintiff "need show only a minimum level of legal sufficiency and triability." *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989 (Cal. Ct. App. 2011) (recognizing that a "plaintiff need show only a case of minimal merit") (citations and quotation marks omitted); *Mann v. Quality Old Time Service, Inc.,* 120 Cal. App. 4th 90, 105 (Cal. Ct. App. 2004) ("A plaintiff is not required to *prove* the specified claim to the trial court; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim.") (citations and quotation marks omitted).[6]

---

[6] Nevada looks to California law on this second-step of the analysis.  *See* NRS 41.665(2) ("When a plaintiff must demonstrate a probability of success of prevailing on a claim pursuant to NRS 41.660, the Legislature intends that in determining whether the plaintiff "has demonstrated with prima facie evidence a probability of prevailing on the claim"

Here, Prince does not challenge Century's ability to establish the elements of its RICO and conspiracy claims nor contend that Century fails to sufficiently state a claim under the applicable pleading standard.  Rather, Prince argues that Century cannot prevail on its claims based on three affirmative defenses: (1) Century's claims are being litigated in the *Andrew* litigation; (2) Century's claims are untimely; and (3) the litigation privilege precludes liability for RICO and civil conspiracy claims.  As discussed below, none of these arguments has merit and Century demonstrates a probability of prevailing on its claims.

### A.   Prince's argument that Century cannot prevail because its claims are being litigated in the *Andrew* litigation is wrong on the facts and the law.

#### 1.   The *Andrew* litigation involve different issues, claims, and parties.

Prince contends that "Century cannot prevail on its claims here because Century's allegations are already being litigated in the *Andrew* case." (ECF #37 at 10.)  This conclusory argument misses the mark.  Plaintiffs in the *Andrew* litigation seek to enforce the $18,050,185.45-plus default judgment against Century.  (*See Andrew* ECF #14 at 2.)  Prince correctly recognizes that in its most recent order, the Court ruled that "Century is bound by the default judgment, absent unreasonableness, fraud, or collusion," and found that "genuine issues of fact remain regarding whether the settlement agreement and subsequent default judgment were obtained through fraud or collusion," but fails to explain how this establishes that Century's RICO and conspiracy claims are being litigated in *Andrew*.  (*Andrew* ECF #210 at 1; ECF #37 at 10-11.)  They are not.

Prince's argument that Century's RICO and conspiracy claims against Prince, Esparza, and Ranalli are being litigated in *Andrew* is built on a faulty premise because neither Prince, Esparza, nor Ranalli are parties to the *Andrew* litigation.  In addition to different parties, Century's RICO and conspiracy claims have different elements and present different issues than whether Century can

---

the plaintiff must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law as of June 8, 2015.").

establish that the settlement agreement and default judgment were obtained through fraud and collusion.  (*See Andrew* ECF #210 at 23-26 (discussing factors to consider in fraud and collusion analysis)); *Cont'l Cas. Co. v. Westerfield*, 961 F. Supp. 1502, 1505-06 (D.N.M. 1997) ("Collusion and fraud in [the bad faith] context are not necessarily tantamount to the common-law tort of fraud in that there need not be a misrepresentation of a material fact.").[7]  In short, Century's claims in this action and the claims and defenses being litigated in *Andrew* are entirely different claims against entirely separate parties.[8]

Indeed, notwithstanding the newly-minted argument advanced here, as counsel for Plaintiffs in the *Andrew* litigation, Prince has repeatedly asserted that issues related to whether Vasquez was in the course and scope of his employment are irrelevant to the issues being litigated in *Andrew* and objected to producing documents related to these issues, instructed Esparza and Pretner not to answer deposition questions on these issues, suspended the depositions of Esparza and Pretner to prevent discovery on these topics, and moved for a protective order seeking to bar Century from pursuing any discovery on these issues.  (*See Andrew* ECF #81 at 18 ("[Q]uestions to Mr. Pretner about the allegations in the Complaint and questions to Ms. Esparza regarding how or why she believed that Vasquez was in the course and scope of his employment are irrelevant."); *id.* ("[A]ny questions designed to inquire as to Mr. Pretner's opinions on the factual allegations made in the underlying Complaint or questions pertaining to how or why Ms. Esparza believed that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident is after

---

[7] In contrast, "[t]o state a claim under Nevada's RICO statute, a plaintiff must allege that the defendant engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commissions, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents . . .."  *Marrocco v. Hill*, No. 2:12-cv-28, 2012 WL 1900953, at * (D. Nev. May 24, 2012) (alterations in original) (citation and quotation marks omitted).

[8] Because these are entirely different claims against entirely separate parties, Prince's unsupported suggestion that the only legal remedy available to Century for RICO and civil conspiracy is a finding of non-liability in the *Andrew* litigation misses the mark.  (ECF #37 at 10.)  For example, Nevada's RICO statute allows Century to seek treble damages and attorneys' fees.  NRS 207.470(1).

acquired evidence and is irrelevant.").)  Prince's earlier efforts and arguments on this issue belie his contention that Century's RICO and conspiracy claims are being litigated in *Andrew*.

### 2. Century could not have brought its RICO and conspiracy claims as counterclaims in the *Andrew* litigation.

Prince asserts, but makes no effort to prove, that Century cannot bring its RICO and conspiracy claims here because it "failed to bring any affirmative counterclaims in *Andrew*, and the April 11, 2013 deadline for amending the pleadings has long passed."  (ECF #37 at 11; *id.* at 8.) While Prince fails to cite any Federal Rule of Civil Procedure on which he purports to base this argument, nothing in Rule 13, which governs counterclaims, would have allowed (much less required) Century to assert RICO and civil conspiracy counterclaims against Prince, Esparza, and Ranalli—none of whom are parties in the *Andrew* litigation.   *See* Fed. R. Civ. P. 13(a),(b) (compulsory and permissive counterclaims" include only those claims that a party has "against an ***opposing party***") (emphasis added); *In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir. 2007) ("A counterclaim under Rule 13 must be against an ***opposing party***.") (emphasis added) (citations and quotation marks omitted); *Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459, 462 (N.D. Cal. 2008) ("In order for a defending party to assert a compulsory counterclaim, the claim must be raised against an ***existing party***.") (emphasis added) (citation and quotation marks omitted). Notwithstanding Prince's unsupported assertion to the contrary, courts have recognized that a defendant cannot assert a counterclaim against a plaintiff's attorney under Rule 13.  *See, e.g.*, *Kwik-Sew Pattern Co., Inc. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960160, at *2 (W.D. Mich. Nov. 19, 2008) (holding that "any purported counterclaim against Plaintiffs' counsel and the members of that law firm is improper because they are not parties to this litigation"); *Hawkins*, 250 F.R.D. at 463 (holding that defendant could not assert counterclaims against plaintiff's attorney and law firm because they were not "opposing parties," but recognizing that it "could initiate a separate suit against [the plaintiff's attorney and law firm]").

While "Rule 13(h) permits a party to join additional parties (who are not original to the litigation) to a counterclaim or crossclaim," the rule "requires that any such joinder of a new party be anchored to a counterclaim or cross-claim against an original party." *Hawkins*, 250 F.R.D. at 462; *see* C. Wright, A. Miller, & E. Cooper, 6 Federal Practice and Procedure, § 1435 (3d ed. Supp. 2016) ("If it is not directed to an existing party, neither the counterclaim nor the party to be added will be allowed in the action."). Thus, Century could not have asserted RICO and civil conspiracy counterclaims against Prince, Esparza, and Ranalli in the *Andrew* litigation and it is free to assert such claims here. *See Money Matters Mgmt. v. Niche Mktg., Inc.*, No. 07-cv-0591, 2007 WL 3052996, at *4 (S.D. Cal. Oct. 19, 2007) (holding that because entity against whom fraud claim was asserted "is not a party to the complaint, a counterclaim under Rule 13 is improper"); *GIA-GMI, LLC v. Michener*, No. 06-cv-7949, 2007 WL 1655614, at *4 (N.D. Cal. June 7, 2007) (recognizing that defendants could not assert counterclaim because it was not asserted against an "opposing party" under Rule 13, but were "free to file their claims against [non-party] as a separate lawsuit").[9]

### 3. Century's RICO and civil conspiracy claims do not collaterally attack the Default Judgment.

In a conclusory footnote, Prince posits that Century's "complaint collaterally attacks valid state court orders in the underlying case." (ECF #37 at 10.)  Procedural and substantive infirmities doom this nebulous argument.  As a preliminary matter, the argument is entirely undeveloped and Prince fails to identify any doctrine or theory on which he purports to rely (*e.g.*, claim preclusion or issue preclusion), nor discuss the required elements for any such theory.  (*See* ECF #37 at 10, n. 22.)

---

[9] Nor was Century required to bring its RICO and civil conspiracy claims in the *Andrew* litigation under any other Federal Rule of Civil Procedure.  *See, e.g.*, *Pace v. Timmermann's Ranch & Saddle Shop, Inc.*, 795 F.3d 748, 757-58 (7th Cir. 2015) (recognizing that Rule 20 is a permissive rule that "does not *require* a litigant to join additional parties" and holding that, "[b]ecause neither Rule 13 nor Rule 20 provide for compulsory joinder, [plaintiff's] claims . . . were not compulsory counterclaims."); *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200-01 (9th Cir. 1988) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.  The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.") (citation and quotation marks omitted); *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules, Inc.*, 146 F.3d 1071, 1073-74 (9th Cir. 1998) (claims under Fed. R. Civ. P. 14 are "permissive, not compulsory" and a party "retains the option of filing permissive claims in a separate action.").

This debilitating ambiguity forecloses Prince's undeveloped argument.  *See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F. 3d 483, 487 (9th Cir. 2010) (recognizing that bare assertions made only in passing and without supporting argument are waived); *Hilao v. Estate of Marcos*, 103 F.3d 767, 778, n. 4 (9th Cir. 1996) ("The summary mention of an issue in a footnote, without reasoning in support of the [party's] argument, is insufficient to raise the issue").

While the Court need not, and should not, consider Prince's argument, the result is the same either way because Prince cannot meet his "burden of proving the preclusive effect of the judgment." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009).  Again, the parties, claims, and issues involved in this action are completely different from those involved in the underlying state court action.  While Prince does not articulate the purported basis for his "collateral attack" argument, these facts preclude application of any theory on which Prince *could* potentially base his argument.  *See Wilcox v. First Interstate Bank of Or., N.A.*, 815 F.2d 522, 530-31 (9th Cir. 1987) (holding that party's "RICO claims [were] not collaterally estopped" by jury verdict on different claims under different standard); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) ("Similarity between issues does not suffice; collateral estoppel is applied only when the issues are identical.  If different facts are in issue in a second case from those that were litigated in the first case, then the parties are not collaterally estopped from litigation in the second case.") (citations omitted).[10]

## B.    Century's RICO and conspiracy claims are timely.

Prince argues that Century's RICO and conspiracy claims "fail because they are barred by the statute of limitations."  (ECF #37 at 23.)  "An assertion of the statute of limitations is an affirmative defense, and under Nevada law, the defendant bears the burden of proof for affirmative defenses."  *Fireman's Fund Ins. Co. v. Sloan Valve Co.*, No. 2:10-cv-01816, 2013 WL 76264, at *1

---

[10] Judge Gordon previously held that the *Rooker-Feldman* doctrine was not applicable in the *Andrew* litigation because Century was not seeking a *de facto* appeal of the Default Judgment.  (*Andrew* ECF #123 at 14.)

(D. Nev. Jan. 3, 2013); *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, No. 11-cv-246, 2013 WL 2351814, at *8 (S.D. Cal. May 24, 2013) ("The statute of limitations is an affirmative defense. As with any affirmative defense, Defendant bears the burden of proof at trial and thus must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party.") (citations and quotation marks omitted).  Prince cannot satisfy this burden here.

### 1.    Century's RICO claims are timely.

Nevada has a five year statute of limitations for RICO claims.  NRS 207.520.  Prince asserts that "Century had actual notice of two of the three alleged 'predicate acts' on March 3, 2011 when it received copies of the Pretner complaint" and "[b]ecause two of the three predicate acts took place well outside the five-year statute of limitations, Century does not have two requisite predicate acts to support a Civil RICO Claim [sic]."  (ECF #37 at 24.)  Prince's argument fails under well-settled Nevada law.

Under Nevada's RICO statute, "a civil action or proceeding under NRS 207.470 may be commenced at any time within 5 years after the violation occurs or after the injured person sustains the injury, ***whichever is later***."  NRS 207.520 (emphasis added).  The term "injury" "encompasses discovery of both an injury and the cause of that injury, in this case [defendants'] alleged racketeering activity."  *Siragusa v. Brown*, 971 P.2d 801, 806-07, 811 (Nev. 1998).  While Prince contends that "Century had actual notice of two of the three alleged 'predicate acts' on March 3, 2011 when it received copies of the Pretner complaint," (ECF #37 at 24), Prince does not assert that Century suffered (and was aware of) an *injury* at that time.  Nor could he.[11]

---

[11] To the contrary, Prince asserts that Century's claims have not yet accrued because "there is no pending judgment against Century, and therefore Century has incurred no damages."  (ECF #37 at 11, n. 23.)  While Prince is wrong that Century has not suffered an injury, the argument illustrates Prince's involuted argument that Century's claims are untimely.

The earliest date on which Century *could have possibly* sustained a RICO injury was April 11, 2012—the date on which the default judgment was entered.  While the statute could not have started to run before April 11, 2012, the entry of the default judgment does not automatically establish when the statute of limitations began to run because the question is when Century *discovered* that it had been injured.  *See Siragusa*, 971 P.2d at 811 ("Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action."); *Ward v. Chanana*, No. 07-cv-06290, 2008 WL 5383582, at *3 (N.D. Cal. Dec. 23, 2008) ("[T]he civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.") (citation and quotation omitted).

Prince offers no argument or evidence to suggest that Century was aware of the default judgment prior to being served with the Complaint in the *Andrew* litigation.  (*See Andrew* ECF #210 at 24-25 (as Judge Gordon recognized in the *Andrew* litigation:  "Although Century had notice of the lawsuit and the entry of default, there is no evidence Century knew Vasquez and Blue Streak had settled in exchange for a covenant not to execute.  Nor is there evidence Century was notified of the application for default judgment or the date and time of the default judgment hearing.") (internal citation omitted).)  Consequently, Prince cannot establish that Century's RICO claims are untimely under the five-year statute of limitations.

In an effort to avoid this conclusion, Prince posits that "although Century claims it did not learn about the Settlement Agreement and default judgments until April 28, 2012 (the third predicate act), Century should have taken to action [sic] to discover that information following receipt of the Complaint from Prince in March 2011."  (ECF #37 at 24.)  Prince's argument is perplexing, as no amount of diligent discovery in ***March 2011*** would have allowed to Century to "discover" a settlement agreement signed in ***October 2011*** and a default judgment entered on ***April 11, 2012***.  In

any case, "[t]he question of when [the alleged wrongdoing] was or should have been discovered is a question of fact," which "is generally inappropriate for resolution on summary judgment." *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307-08 (9th Cir. 1992) (citation and quotation marks omitted); *Siragusa*, 971 P.2d at 806 ("We have held that '[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact.'") (citation and quotation marks omitted).

Consequently, Prince's vague and unspecific contention that Century should have discovered its RICO injury at some point before April 28, 2012 falls far short of Prince's summary judgment burden on his statute of limitations affirmative defense. *See Fireman's Fund Ins. Co.*, 2013 WL 76264, at *1 ("Defendant has not carried its burden because questions of material fact remain about when the statute of limitations began to run."); *Alvarado Orthopedic Research, L.P.*, 2013 WL 2351814, at *9 ("Here, Defendant fails to carry its burden" because it "makes no attempt to show that the discovery rule is inapplicable" and instead "implies the burden is on the Plaintiff. [Plaintiff] need not justify the application of the discovery rule, for the burden lies with Defendant.") (citation and quotation omitted).

### 2. Century's conspiracy claims are timely.

Century's civil conspiracy claims are "governed by the catch-all provision of NRS 11.220, which provides that an action 'must be commenced within 4 years after the cause of action shall have accrued.'" *Siragusa*, 971 P.2d at 806 (quoting NRS 11.220). Prince contends that "Century has had actual notice of claims for fraud and civil conspiracy for over four years," and therefore "will not be able to prevail" on its conspiracy claim, because: (1) "The Andrew Complaint which disclosed the Settlement Agreement was filed on April 28, 2012"; and (2) Century asserted its defense of 'fraud' and 'collusion' on June 15, 2012." (ECF #37 at 23.) Here too, Prince's argument does not withstand scrutiny.

Under Nevada law, "an action for civil conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim." *Siragusa*, 971 P.2d at 806. "[W]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of [a conspiracy] cause of action is a question of fact for the trier of fact." *Id.* at 807 (second alteration in original) (citation and quotation marks omitted). Accordingly, summary judgment is ordinarily inappropriate to determine when a plaintiff discovered its claims because "such factual determinations cannot be made as a matter of law." *Id.* at 812 ("Once again, we note the general rule that the question of when a claimant discovered or should have discovered the facts constituting a cause of action is one of fact.").

Prince does not offer any cogent argument that would warrant a departure from this well-established rule here. Instead, Prince points to the April 28, 2012 complaint and Century's June 15, 2012 answer asserting a 'fraud' and 'collusion' defense as operative dates for Century's conspiracy claims, but offers no analysis explaining why he believes that Century knew or should have known of its civil conspiracy claims at that time. Prince again conflates the "fraud and collusion" defense with Century's RICO and conspiracy claims, ignoring that these claims are not coterminous and require proof of different elements and facts.

Moreover, Prince does not suggest, must less establish, that based on the complaint and answer, Century knew or should have known all of the facts necessary for its conspiracy claim. *Siragusa*, 971 P.2d at 807. To the contrary, Century did not know, and had no reason to know, of critical facts necessary to support its civil conspiracy claims until early 2013, when it began to learn some of the details concerning the relationship between Prince, Esparza, and Ranalli through discovery and depositions in *Andrew*. *Id.* This is particularly true here where, as discussed above, Prince worked to thwart Century's efforts to pursue discovery on issues that could have revealed information related to the conspiracy claim.

In sum, Prince cannot establish that Century's conspiracy claims are untimely as a matter of law.  *See Flowers v. Carville*, 292 F. Supp. 2d 1225, 1231 (D. Nev. 2003) ("[T]his Court may only grant summary judgment as a matter of law on [plaintiff's] claim of conspiracy if uncontroverted evidence irrefutably proves [plaintiff] knew all the facts necessary to constitute a claim for conspiracy"); *Siragusa*, 971 P.2d at 807.

### C.    The absolute litigation privilege is inapplicable.

Prince also argues that Century cannot demonstrate a "probability of prevailing on its claims because all of the causes of action arise from Prince's privileged actions as litigation counsel" and, therefore, Prince cannot be held liable for any civil damages."  (ECF #37 at 11.)  There is no basis under Nevada law for Prince's unbounded interpretation of the litigation privilege as it applies in the anti-SLAPP context and the Court should reject this argument.

While Prince brings his motion pursuant to Nevada's anti-SLAPP statute, he quickly departs from that narrow framework by conflating the litigation privilege with the anti-SLAPP statute. But Prince's "attempted analogy between the litigation privilege and the anti-SLAPP statute is inapt" because "the litigation privilege is an entirely different type of statute than [the anti-SLAPP statute]. The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings; the latter is a procedural device for screening out meritless claims."  *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 (Cal. 2003) (citations omitted).  Courts have made clear that anti-SLAPP statutes and litigation immunity serve two distinct and purposes and afford different protections.  *See Flatley v. Mauro*, 39 Cal. 4th 299, 321 (Cal. 2006) ("Assuming without deciding that the litigation privilege may apply to such [communications]s, we conclude that they are nonetheless not protected under the anti-SLAPP statute because the litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes").  Prince fails to acknowledge the distinction.

For instance, Prince asserts that he would be entitled to the protections of Nevada's anti-SLAPP suit "even if Prince intentionally engaged in conduct or communications he knew to be false . . . . (ECF #37 at 14.)   But this again ignores the anti-SLAPP statute's "good faith communications" requirement.   Contrary to Prince's argument, the Nevada Supreme Court has recognized that Nevada's anti-SLAPP statute would not protect the intentionally false conduct or communications described by Prince:

> [T]he anti-SLAPP statute only protects citizens who petition the government from civil liability arising from *good-faith communications to a government agency*.   Thus, Nevada's anti-SLAPP statute is not an absolute bar against federal substantive claims; rather, it bars claims from persons who seek to abuse other citizens' rights to petition their government, and it allows meritorious claims against citizens who do not petition the government in good faith.

*John*, 219 P.3d at 1281. Thus, in Nevada, the scope of the litigation privilege presents a different question than the scope of the anti-SLAPP statute and questions relating to the litigation privilege should not be addressed in deciding a preliminary anti-SLAPP motion.

Further, contrary to Prince's unbounded interpretation, "the litigation privilege is not without limit" and courts "have found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws."   *People v. Persolve, LLC*, 218 Cal. App. 4th 1267, 1274 (Cal. Ct. App. 2013) ("For example, the litigation privilege does not apply to perjury" or "subornation of perjury").   Thus, "[i]f a statute is more specific than the litigation privilege and would be significantly or wholly inoperable if the privilege applied, the privilege will not shield violations of that statute."   *Id.*   This is the case here, as Nevada's RICO statute expressly identifies predicate acts that give rise to civil liability including obtaining possession of money or property valued at $650 or more, or obtaining a signature by means of false pretenses, perjury or subornation of perjury, offering false evidence, and insurance fraud.   NRS 207.360.   Prince's expansive interpretation of the litigation privilege must be rejected because it would ignore the plain language of the statute, conflict with clear legislative intent, and create out of whole cloth a blanket exemption

from Nevada RICO laws for attorneys.  *See Gallagher v. City of Las Vegas*, 959 P. 2d 519, 521 (Nev. 1998) (recognizing that under "well-established principles of statutory construction" the "leading rule is to ascertain the legislature's intent, and to accomplish that goal we may examine the context and spirit of the statute in question, together with the subject matter and policy involved" and the Court's "interpretation should be in line with what reason and public policy would indicate the legislature intended, and should avoid absurd results.").

Thus, "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint."  *Flatley*, 39 Cal. 4th at 323-24 ("By necessary implication, the [anti-SLAPP] statute does not protect activity that, because it is illegal, is not in furtherance of constitutionally protected speech or petition rights."); *see also Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1108 (C.D. Cal. 2009) ("The Anti–SLAPP statute cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law, and for that reason, not protected by constitutional guarantees of free speech and petition.").  In *Flatley*, the California Supreme Court "reject[ed] [defendant's] contention that, because some forms of illegal litigation-related activity may be privileged under the litigation privilege, that activity is necessarily protected under the anti-SLAPP statute."  *Flatley*, 39 Cal. 4th at 321, n. 10, 325 (rejecting premise of defendant's argument that anti-SLAPP statute protects any speech "uttered in the context of litigation" because it "conflates the litigation privilege with the anti-SLAPP statute").

In sum, the litigation privilege does not bar the type of illegal conduct alleged here.  *Id.*; *see also Greenberg, Glusker, Fields, Claman & Machtinger, LLP v. Sierra Madre Invs. LP*, No. B218822, 2011 WL 3198847, at *10 (Cal. Ct. App. 2011) ("[I]f, as alleged here, an attorney commits actual fraud in his dealings with third parties, the fact that he did so in the capacity of attorney does not relieve him of liability.") (citation and quotation marks omitted).

**IV.    The Court should not grant Prince's motion without first granting Century leave to amend.**

The "Ninth Circuit has ruled that granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  *Bitstamp Ltd. v. Ripple Labs. Inc.*, No. 15-cv-01503, 2016 WL 158917, at *10 (N.D. Cal. Jan. 14, 2016) (quoting *Verizon Delaware, Inc.*, 377 F.3d at 1091) (quotation marks omitted).  Consequently, if the Court finds Prince's motion well-taken, Century respectfully request that the Court grant Century leave to amend its complaint.  *See Verizon Delaware, Inc.*, 377 F.3d at 1091 (recognizing that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."); *Bitstamp Ltd.*, 2016 WL 158917, at *10 (granting plaintiff leave to amend complaint dismissed under anti-SLAPP statute); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2009) (same).

**Conclusion**

For the reasons set forth above, this Court should deny Defendant Dennis Prince's Motion to Dismiss.

Dated:  January 5, 2017                    Respectfully submitted,


                                          By: /s/ J. Ric Gass, Esq.
                                          COZEN O'CONNOR
                                          MARIA LOUISE COUSINEAU
                                          Nevada Bar No. 002876
                                          601 S. Figueroa Street, Suite 3700
                                          Los Angeles, CA  90017

                                          GASS WEBER MULLINS LLC
                                          J. Ric Gass (admitted *pro hac vice*)
                                          Michael B. Brennan (admitted *pro hac vice*)
                                          309 North Water Street, Suite 700
                                          Milwaukee, Wisconsin  53202

                                          CHRISTIAN, KRAVITZ, DICHTER,
                                          JOHNSON & SLUGA
                                          Martin J. Kravitz
                                          8985 S. Eastern Avenue, Suite 200
                                          Las Vegas, Nevada 89123

                                          Attorneys for Plaintiff
                                          CENTURY SURETY COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of January, 2016, I served the foregoing **CENTURY SURETY COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DENNIS PRINCE'S MOTION TO DISMISS PURSUANT TO NRS 41.660 [ECF #37, 40, and 43]** as follows:

☐　　US MAIL:　by placing the document(s) listed above in a sealed envelope, postage prepaid, in the United States Mail at Las Vegas, Nevada, addressed to the following:

☐　　BY FAX:　by transmitting the document(s) listed above via facsimile transmission to the fax number(s) set forth below:

☒　　BY ELECTRONIC SERVICE: by electronically serving the document(s) listed above with the United States District Court's CM/ECF upon the following:

Joseph P. Garin, Esq.
Megan H. Hummel, Esq.
LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, NV 89144
(702) 382-1500, Telephone
(702) 382-1512, Facsimile
jgarin@lipsonneilson.com
mhummel@lipsonneilson.com
Attorneys for Defendant,
Dennis Prince

Robert T. Eglet, Esq.
Erica D. Entsminger, Esq.
EGLET PRINCE
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Attorneys for Defendant,
Dennis Prince

Riley A. Clayton, Esq.
Steven T. Jaffee, Esq.
HALL JAFFE & CLAYTON, LLP
7425 Peak Drive
Las Vegas, NV 89128
Attorney for Defendant,
George Ranalli

Matthew L. Sharp, Esq.
MATTHEW L. SHARP, LTD.
432 Ridge St.
Reno, NV 89501
Attorneys for Defendant,
Sylvia Esparza

　　　　　　　　　　　　/s/ Cynthia Lowe
An employee of CHRISTIAN, KRAVITZ, DICHTER, JOHNSON & SLUGA