ROBERT T. EGLET, ESQ.
Nevada Bar. No. 3402
ERICA D. ENTSMINGER, ESQ.
Nevada Bar No. 7432
**EGLET PRINCE**
400 South Seventh Street, #400
Las Vegas, Nevada 89101
*eservice@egletlaw.com*
(702) 450-5400 phone
(702) 450-5451 facsimile

JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
MEGAN H. HUMMEL
Nevada Bar No. 12401
**LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.**
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89169
*Attorneys for Defendant*
*Dennis Prince*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CENTURY SURETY COMPANY, a foreign corporation, | Case No.: 2:16-cv-02465-JCM-PAL |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT DENNIS PRINCE'S** |
| vs. | **SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** |
| DENNIS PRINCE, GEORGE RANALLI, AND SLYVIA ESPARZA, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Defendant Dennis Prince, ("Prince") by and through its attorneys, Eglet Prince and Lipson, Neilson, Cole, Seltzer & Garin, P.C., hereby files this Reply In Support Of His Special Motion To Dismiss Pursuant To NRS 41.660.

## MEMORANDUM OF POINTS AND AUTHORITIES

Century's lawsuit, and its opposition to Prince's motion, highlights the importance of the Nevada Anti-SLAPP statute.  Century argues that allegations in a complaint can expose a plaintiff's attorney to personal liability merely because the defendant disputes the allegations, or because the plaintiff's attorney cannot know for certain whether the allegations are true when the complaint is filed.  Such arguments are contrary to Nevada law, and are clearly intended to chill vigorous representation by forcing attorneys to choose between preserving potentially valuable claims (prior to discovery even starting) or risk personal liability.  More importantly, Century's claims could unfairly chill litigants and their attorneys from exercising their legal right to take action to protect against bad faith by insurance companies in litigation.  To allow Century's claims to proceed sends a message that insurance companies can act in bad faith by refusing to defend their insureds, and then threaten to bring conspiracy or civil RICO claims against any party or attorney who dares to negotiate a settlement or assignment to protect against the potential consequences of the insurer's bad faith.

More importantly, the biggest flaw with Century's lawsuit is that it is simply not possible to intentionally "set up" a failure to defend claim- especially where the insurer: is given notice of the claims, performs its own internal evaluation of the alleged claims, is provided with the complaint and copies of defaults, and then makes the <u>internal decision</u> not to defend its insureds.  As set forth in Prince's motion, his conduct and communications were done in good faith, and in furtherance of the right to petition the courts for redress for his client's catastrophic injuries.  Century's claims are barred under NRS 41.660 and should be immediately dismissed.

## I.  CENTURY'S OPPOSITION IGNORES PRINCE'S GOOD FAITH RELIANCE UPON *EVANS V. SOUTHWEST GAS,* AND HIS NEED TO PRESERVE VALUABLE CLAIMS FROM AN EXPIRING STATUTE OF LIMITATIONS.

In its Opposition, Century correctly notes that under Nevada's anti-SLAPP statute, "[t]he moving party must first make a threshold showing that the lawsuit is based on ***good faith communications*** made in furtherance of the right to petition the government." ECF No. 44 at 10:6-9 (emphasis in original). In doing so, Century concedes that NRS 41.660 bars its claims against Prince if Prince's communications to Judge Herndon were made in good faith.  To make

such a showing, Prince need only establish by a <u>preponderance of the evidence</u> that he made the communications in the Pretner action in good faith.  NRS 41.660(3)(a).

Century does not dispute that Prince's communications were made in "furtherance of the right to petition." Century alleges, however, that Prince somehow failed to meet his burden under the first prong of NRS 41.660 because he did not demonstrate that his communications were "truthful or made without knowledge of falsehood" under NRS 41.637.  See ECF No. 44 at 10:27-28.  This is not true. In his motion, Prince expressly states that he is relying upon the definition of "good faith communication" set forth in NRS 41.637(3), which includes the requirement that the statements to a judicial body be made in "good faith" or without knowledge of their falsehood.  ECF No. 37 at 10:1-9.  Moreover, Prince's motion repeatedly sets forth his good faith basis for asserting respondent superior allegations against Blue Streak, including, the applicable caselaw and undisputed facts known to Prince when he filed the Pretner Complaint. Century seems to imply that, at the time of filing a complaint, an attorney must have all of the proof he needs to prevail at the time of trial on all of the claims asserted.  This is not, nor could it be, the law. It is Century, however, that ignores the most critical arguments in support of the application of NRS 41.660 to dismiss its claims here.

### A. Century Does Not Dispute that *Evans* Supports Prince's Respondent Superior Allegations Against Blue Streak.

Contrary to Century's suggestion that Prince failed to argue his statements were made it good faith, Prince argued as follows in his motion, "Prince's allegations regarding the "course and scope" of Vasquez's business were brought with the good faith expectation they could be supported with further discovery."  ECF No. 37 at 19:14-17. Prince then spends a significant portion of the motion explaining the legal basis for his allegations - which clearly establishes that he did not (and could not) have had actual knowledge that any of the allegations were conclusively false when he included them in the Pretner Complaint,

> Century's suggestion that "Defendants cannot identify any evidentiary basis suggesting that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident" is simply false…. Had Century contacted Prince, he would have directed them to various cases he had researched, **including the Nevada Supreme Court decision in *Evans v.**

***Southwest Gas Corp.*, 108 Nev. 1002, 842 P.2d 719 (1992), which clearly supports an allegation that Vasquez was in the course and scope of his employment with Blue Streak at the time of the accident** – even if at the moment of the accident he was not doing anything business related.

…

In addition to being an experienced advocate with extensive knowledge of the applicable case law, when Prince filed the Pretner complaint he knew that: (1) Vasquez was a one-man mobile detailing business; (2) Pretner's father believed a potential witness saw Vasquez working just prior to the collision (Exhibit 5 at CF000062); and (3) the Ford F-150 had a license plate stating "JSTDTLD" as an acronym for "just detailed" (Exhibit 3 at p. 2). This is more than enough information to support the subject allegations. Moreover, <u>Century</u> knew that: (1) Blue Streak provided mobile detailing services at the customers' location; (2) Blue Streak was operated from Vasquez's home; (3) Vasquez drove the "company" trucks home every night (including the subject Ford F-150), while the trailers and other equipment were stored elsewhere; and (4) Vasquez used his a cell number as his business number. (Exhibit 5 at CF000007-34) Blue Streak's website also states that Blue Streak "is always available." See Exhibit 24.

Given his knowledge, Prince had to include the "course and scope" allegations to protect the potential claims of his client.

See ECF No. 37 at pp. 18-19; 5:7-13 (emphasis added).

Notably, Century completely ignores, and therefore does not dispute, Prince's argument that he relied in good faith on the Nevada Supreme Court's decision in *Evans v. Southwest Gas Corp.*, 108 Nev. 1002, 842 P.2d 719 (1992), and related cases, to support his "course and scope" allegations against Blue Streak – a one-man mobile auto detailing business.  ECF No. 37 at pp. 18-19.   Far from concealing his position from Century, Prince explained in his <u>very first communication</u> to Century (which attached a courtesy copy of the Pretner Complaint) that he had "legal research" that "indicates coverage exists under your policy." See ECF No. 38-5 at pp. 98-99.  Century, however, <u>does not dispute</u> that it never bothered to ask Prince what the supporting legal research was, or that Century failed to take any action to challenge those allegations in the state court action (despite clearly documenting the respondent superior claims in its claim file). ECF No. 38-5 at p. 3.

Further, Vasquez's own accounts of his activities were not the "only available evidence" at the time Prince filed the Pretner Complaint.  Century admits that "Vasquez was the sole owner and manager of Blue Streak Auto Detailing, LLC ("Blue Streak"), a Nevada Limited Liability

Company that provided mobile car detailing services, such as washing, waxing, and carpet cleaning."   ECF No. 44 at 3:3-6.   Century further does not (and cannot) deny that the truck Vasquez was driving at the time of the collision had a "JSTDTLD" ("just detailed") license plate, and does not dispute that Vasquez, as the sole owner and operator of the business, advertised that his services were "always available."  See ECF No. 38-3 at p. 3; ECF No. 38-24.

Because Century wholly failed to address *Eva*ns or to dispute its potential application to Pretner's claims, Century cannot dispute that *Evans* provided Prince with a good faith legal basis to allege respondent superior liability against Blue Streak- regardless of whether Vasquez's own lay opinions would have ultimately been found to be true or not.

**B.  Century Ignores Prince's Good Faith Efforts to Protect His Client's Claims From An Expiring Statute of Limitations.**

As discussed in Prince's motion, this Court is not required "to engage in an inquiry as to the plaintiff's subjective motivations before it may determine the anti-SLAPP statute is applicable."  *Campbell v. Zumbrun & Findley, et al.,* 2002 WL 1999755 (Cal. App. 3 Dist.) at *5.  Nonetheless, Century ignores the fact that Prince was compelled to include the respondent superior allegations in the Pretner Complaint because the statute of limitations was set to expire three weeks after Prince was retained.  As such, Prince acted in good faith (and in the best interests of his catastrophically brain-injured client) by including the respondent superior allegations to preserve a potentially valuable claim against Blue Streak.  Had the complaint not included Blue Streak, but discovery later supported a claim for respondent superior, such a claim would have been time barred and immediately subject to dismissal.

Further, this is not a case where Century can show that Prince knowingly made allegations contrary to some indisputable piece of objective evidence, or that Prince made allegations contrary to a point his client had already conceded.  Instead, the "only known evidence" Century repeatedly refers to in its Opposition, consists solely of statements given by the driver Vasquez himself that he was not he was working when he hit Pretner.[1]  Vasquez, of

---

[1]  The police report merely reflects Vasquez's statement to police that he was on a personal errand at the time his truck struck Pretner.

course, is a non-lawyer and the sole owner of the business that would be implicated by his stating otherwise.[2]

Century's Opposition fails to direct this Court to <u>anything</u> in Nevada law that requires a plaintiff's attorney to accept the statement of the defendant driver as the absolute truth prior to filing a lawsuit. Certainly there is <u>nothing</u> under Nevada law that prevents a plaintiff's attorney from including allegations *disputing* the defendant driver's account. To conclude otherwise would subject attorneys to personal liability any time an attorney merely *alleged* issues related to liability and causation in a complaint that contradicted the defendant's version of events. Parties dispute "course and scope" allegations all the time in personal injury actions. Thus, even if the "only available evidence" at the time a complaint is filed is the defendant driver's own self-serving statements denying liability, which was <u>not</u> the case here, such statements do not render all other accounts or *allegations* to the contrary "knowingly false" as Century suggests.

Accordingly, Prince has more than met his burden of demonstrating that his allegations against Blue Streak were "based on good faith communications made in furtherance of the right to petition the government," as required by NRS 41.660. In light of *Evans* and the other factors related to Blue Streak's business operations, the mere fact Prince's allegations contradicted or disputed Vasquez's statements in no way equates to Prince's allegations being "knowingly false." Quite the opposite, as set forth in Prince's motion, these allegations were made with the good faith expectation that further discovery would ultimately confirm that Vasquez was acting in the course and scope of Blue Streak business when his truck struck Pretner.

**C.** **<u>Century Ignores Judge Herndon's Ruling Denying Century's Request to Intervene and Set Aside the Default Judgment.</u>**

As was also discussed in Prince's Motion, Century already raised Prince's allegedly "false" allegations with Judge Herndon, the same judicial officer to whom Century claims Prince

---

[2] Century includes portions of the deposition of Esparza to suggest the evidence was not disputed, however, Century also acknowledges that Esparza, was an immigration attorney. ECF No. 44 at 3:26. As such, she would not be expected to have any working knowledge of *Evans* or other respondent superior cases involving mobile businesses.

made the bad faith communications.   Judge Herndon considered Century's arguments and refused to set aside the default judgments.  ECF No. 38-20.  Had Judge Herndon taken issue with Prince's allegations, or believed Prince's allegations to be obviously false or made in bad faith (as Century now suggests), then Judge Herndon could have sanctioned Prince or taken other action to address the allegations.  Judge Herndon, however, did not express any concern about Prince's allegations being false or in bad faith, and instead laid the blame for the default judgment squarely at Century's feet,

> **I think Century stuck their head in the sand and said, hey.  We determined we're not going to have coverage here because of what we believe the facts to be**. So we're going to stand back and we're not going to defend.  We're not going to intervene.  We're not going to seek any reservation of rights or any declaratory relief.  We're just going to let the baby fall forward and hopefully we won't have any involvement.  Then oops.  It's going into default. I know the lawsuit says course and scope of employment.  Clear as day on page 3 of the facts alleged in the complaint.  But that's okay.  Now they're in default.
>
> Just like I'm certain that Mr. Prince could guess that the insurance company was going to try and take the position of, you know what.  This wasn't course and scope.  I would also fall out of my chair if the insurance company said even though a lawsuit was filed alleging course and scope, even though it went into default, I never guessed they were actually assess that position when they came in for judgment and put it in the order.  Of course the insurance company could have or should have reasonably guessed that a part of the lawsuit was part of the order.

See ECF No. 38-26 at 32:25-33:24 (emphasis added).[3]

Having considered Century's arguments, Nevada law regarding respondent superior claims, and Prince's conduct and communications, Judge Herndon obviously felt there was a sufficient basis for Prince to make the subject allegation, and a sufficient basis for Century to provide a defense, because he refused to set aside the default judgment. Judge Herndon's ruling lends additional support to Prince's position that his "course and scope" allegations were brought

---

[3] Notably, Century could have sought appellate review of Judge Herndon's Order via a request for writ relief under *Stephens Media, LLC v. Eighth Judicial Dist. Ct.*, 125 Nev. 849, 857, 221 P.3d 1240, 1246 (2009), but elected not to do so.

in good faith based upon Nevada law and the facts available to him.

**D. Century Ignores Caselaw Establishing That Vasquez and Blue Streak Were Free To Enter Into a Settlement to Defend Themselves After Century Failed to Provide a Defense.**

Century's Opposition also ignores Prince's discussion of various caselaw, addressing insurance bad faith claims, establishing that execution of the October 2011 Settlement Agreement was fully legal and appropriate in light of Century's refusal to defend its insureds. See ECF No. 37 at 21:16-22:16.  Indeed, Century does not dispute that the law provides that when a liability insurer denies coverage and refuses to provide a defense, the insured is free to make the best good faith deal possible with the third party including a stipulated judgment with a covenant not to execute.  *See Hamilton v. Maryland Casualty*, 41 P.3d 128, 134 (Cal. 2002); *USAA v. Alaska Insurance Company*, 114 Cal.Rptr.2d 449, 453 (Cal. App. 2002).  Moreover, when an insurer breaches the duty to provide a defense, the duty of cooperation does not prevent the insured from entering into a settlement with the claimant and assigning his rights under the policy as consideration therefor.  *Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969); *see also Colorado Insurance Company v. Surety Control Company, Inc.*, 2012 WL 3964982 at *3 (Ariz.App. Div. 1 2012).

Century also does not dispute that, under Nevada law, an insured's claims for breach of contract and breach of the duty of good faith and fair dealing are fully assignable against an insurer.  *See Gallegos v. Malco Enterprises of Nevada, Inc.*, _____ Nev. _____, 255 P.3d 1287 (2012).  As such, an action for damages in excess of the policy limits based upon an insurer's wrongful breach of the duty of good faith and fair dealing (including the duty to defend) is assignable whether the action is considered sounding in tort or contract.  *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 328 P.2d 198, 202 (1958).

Century simply cannot refute the extensive legal precedent supporting the legality - and necessity- of enforcing settlement agreements like the October 2011 Agreement.  Instead, Century hopes to use lawsuits like this to strong-arm litigants and attorneys and to discourage them from entering into such agreements by threatening personal liability.  Such lawsuits could effectively chill the rights of attorneys and litigants to execute agreements to protect themselves

8

when they believe an insurer has acted in bad faith. Century cannot have the "best of both worlds" by wrongfully refusing to defend its insureds, and then threatening the parties and their attorneys with civil RICO and conspiracy charges to avoid legal agreements that would hold Century fully accountable for its bad faith. This is the very reason that NRS 41.660 exists, and Century's claims should be dismissed.

**E.** **Century Does Not Dispute the Prince Did Not Have a Copy of the Century Policy At the Time the Pretner Complaint was filed, and Could Not Intentionally "Set-Up" a Failure to Defend Claim.**

The entire thrust of Century's Complaint is that Prince – before he even filed the Pretner Complaint- developed an elaborate plan to "set up" Century by knowingly making false allegations to trigger coverage under the Century policy. ECF No. 44:2:2-7. As such, Century argues that the allegations must have been made in bad faith. This argument also fails.

The entire theory of Century's case is fundamentally flawed because it is not possible to "set up" a failure to defend claim because it is ultimately the insurer's decision how to proceed once notice of the claim is received. It is undisputed that Prince sent a copy of the Complaint to Century, with a request to discuss the claims. ECF 38-5 at 98-99. It is undisputed that Century documented the claims, and conducted its own internal investigation into the respondent superior allegations against Blue Streak. ECF 38-5 at pp. 2-3. It is further undisputed that Prince sent copies of the defaults to Century, and Century told Prince it was not providing a defense. ECF No. 38-5 at p. 226. Finally, it is undisputed that Century never had any communications with Prince regarding the merits of the claims prior its deciding not to defend the case.

As such, Prince had no possible way of knowing (much less controlling) in advance what Century would, or would not do, after he filed the Pretner Complaint (or during the following eleven months preceding entry of the default judgment), and therefore Prince had no plausible way to conspire or otherwise "set up" a failure to defend claim against Century. Century's own repeated failure to take action to address Pretner's claims cannot be the basis of claims that Prince acted fraudulently or in bad faith. Prince was at all times acting in good faith and in accordance with his obligation to vigorously represent his injured client, and Century must live

1  with the consequences of its bad faith and poor decision-making. [4]

2  More importantly, Century has not (and cannot), dispute that Prince did not even have a
3  complete copy of the Century Policy at the time he filed the Pretner Complaint.  Indeed, Century
4  had previously refused to provide Pretner's prior counsel with a complete copy of Century's
5  "garage policy"- a nonstandard type of commercial insurance policy with coverage provisions
6  that can vary significantly from case to case.   ECF No. 38-5 at p.96 ("Dear Ms. Esparza, With
7  all due respect, we decline to send you a copy of the entire policy.") Prince did not receive a
8  complete copy of the Century policy until March 8, 2011. ECF No. 38-5 at p. 138, three months
9  after the complaint was filed, and after the statute of limitations had already run.  Century cannot
10  now argue that Prince engaged in insurance fraud by falsely alleging facts to invoke coverage
11  under a policy that Prince had never seen, and that Century had refused to provide.

**F.   Prince Had No Obligation to Provide Century With Notice of the Prove-Up
Hearing.**

14  Finally, Century suggests that Prince acted in bad faith because he did not provide
15  Century with notice of the hearing on Pretner's application for default judgment.  ECF No. 44 at
16  7:13-14.   Century, however, fails to provide this Court with any authority establishing that
17  Prince had a legal obligation to do so.  In fact, Nevada law confirms that Prince had no legal
18  obligation to provide Century with notice because Century had already informed Prince that it
19  was not defending the case.

20  Under NRCP 55(b)(2), a plaintiff need only give notice of an application for a default
21  judgment to defendants that have appeared in the action. *See* NRCP 55(b)(2).   The Nevada
22  Supreme Court has held that an "appearance" for purposes of NRCP 55(b)(2) does not require a
23  presentation or submission to the court; indeed, **a course of negotiation between attorneys is**

24  _____

25  [4] Century also does not dispute that the Prince did not file the application for default judgment
26  until eight months after he sent Century copies of the Notices of Default and nearly five months
after the October 2011 Settlement Agreement was executed.  Century therefore had months to
27  monitor the case, intervene in the case, or to otherwise determine the status of the defaults Prince
had sent to them in June 2011.  Century opted to do nothing, and Prince had no way of knowing
28  Century would do nothing – before or after the October 2011 Agreement was negotiated.

**sufficient to constitute an appearance for purposes of NRCP 55(b)(2) where the defendant has indicated a clear purpose to defend the suit**. *See Gazin v. Hoy*, 102 Nev. 621, 624, 730 P.2d 436, 438 (1986) *citing Franklin v. Bartsas Realty, Inc.,* 95 Nev. 559, 598 P.2d 1147 (1979); *Christy v. Carlisle*, 94 Nev. 651, 584 P.2d 687 (1978) (emphasis added).[5]

In this case, after Prince sent the defaults to Century in June 2011, Century responded by informing Prince that Century was <u>not</u> handling the defense,

> Dear Mr. Prince,
>
>       <u>Please be advised that Century has no coverage for this matter</u>. <u>It is my understanding that this matter is being handled by Progressive Insurance</u> and I am copying the adjuster Pam Torres on this email and have forwarded the defaults you sent to Progressive.

See ECF No. 38-5 at p. 226.

Accordingly, Prince sent the notice of hearing on the application for default judgment to counsel hired by Progressive- <u>as directed by Century</u>.[6]

Here, there was "no course of negotiation" between Prince and Century, and Century had clearly not communicated "a clear purpose to defend." To the contrary, Century informed Prince that Progressive, and not Century, was defending the case, and therefore Prince sent

---

[5] Further, pursuant to NRCP 5(a), "No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."

[6] To the extent Century suggests that it was reasonable to rely upon its belief that Progressive was defending its insured, this argument also fails. As discussed in Prince's Motion, Century never took steps to confirm Progressive's representation, or the scope of any representation. See ECF No. 38-9 at 140:25-141:19;142:24-143:7; 147: 14-21; 149:24-150:1. In a similar case, the Montana Supreme Court recently held that an insurer, Scottsdale, was bound by a stipulated judgment entered into by its insured following Scottsdale's refusal to defend the claim. *J & C Moodie Props., LLC v. Deck*, 385 Mont. 382, 392, 384 P.3d 466 (2016). In that case, the Court rejected Scottsdale's defense that it believed a co-insurer was providing coverage, because Scottsdale failed to take steps to discover that the co-insurer was not providing complete coverage. The Court held that, "**Scottsdale made no effort to contact the co-insurer to further understand the claims, offered no coordination, and provided no other defense support pending a ruling that would affirmatively confirm whether coverage existed under the policy. It simply made the unilateral decision that it was done.**" Id. at 392 (emphasis added).

11

1  notice to counsel for Progressive.  Century cannot Prince cannot act in bad faith by following

2  Century's own directives, and he cannot be found to have acted in bad faith for failing to do

3  something he was not required to do.  This argument should be handily rejected.

4  **II. CENTURY ALSO IGNORES NEVADA LAW REGARDING THE BREADTH
5      OF THE LITIGATION PRIVILEGE.**

6      Having failed to address *Evans*, Judge Herndon's refusal to set aside the default judgment,

7  and case law permitting insureds to take action to protect themselves after their insurer refuses

8  to defend them, Century next elects to ignore Nevada precedent regarding the historically broad

9  application of the litigation privilege - which bars nearly all claims against attorneys based

10  upon conduct and communications made in connection with litigation.  Indeed, Century

11  relegates its discussion of the litigation privilege to pp. 27-29 of its 33-page Opposition, and

12  argues that **"[Q]uestions relating to the litigation privilege should not be addressed in**

13  **deciding a preliminary anti-SLAPP motion."** ECF Doc. 44 at 28:13-14 (emphasis added). In

14  support of this argument, Century cites only to California law, and boldly declares the litigation

15  privilege "inapplicable" here.  ECF Doc. 44 at 27:6.  Century is simply wrong.

16      Century's argument that the litigation privilege need to be addressed here is particularly

17  troublesome because Century relies heavily on *Flatley v. Mauro*, 39 Cal. 4th 299 (Cal. 2006), a

18  case in which the court expressly <u>acknowledged</u> the relevance of the litigation privilege to an

19  anti-SLAPP analysis,

20      **There is, of course, a relationship between the litigation privilege and the
21      anti-SLAPP statute.** Past decisions of this court and the Court of Appeal
       have  looked to the litigation privilege as an aid in construing the scope of
22      section 425.16, subdivision (e)(1) and (2) with respect to the first step of the
       two-step anti-SLAPP inquiry—that is, by examining the scope of the
23      litigation privilege to determine whether a given communication falls within
       the ambit of subdivision (e)(1) and (2).
24      . . .

25
26      **The litigation privilege is also relevant to the second step in the anti-
       SLAPP analysis in that it may present a substantive defense a plaintiff
27      must overcome to demonstrate a probability of prevailing**.

28  *Flatley*, Id. at 322-323 (citations omitted; emphasis added).

Prince, having satisfied the first prong of NRS 41.660, and as contemplated by *Flately*, relies upon the extensive history of the litigation privilege in Nevada to demonstrate that Century cannot possibly satisfy the second prong of the anti-SLAPP analysis because all of the claims alleged by Century against Prince are barred by the litigation privilege.

In his motion, Prince notes that the Nevada Supreme Court has recognized "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *See Circus Circus Hotels v. Witherspoon,* 99 Nev. 56, 60, 657 P.2d 101, 104 (1983).   ECF No. 37 at pp.11-12.   As its name indicates, the privilege is **absolute**: it "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." *Fink v. Oshins*, 118 Nev. 428, 432, 49 P.3d 640, 643 (2002).   As such, Nevada law is clear that allegations made in legal proceedings fall within the absolute privilege and are not actionable, regardless of whether the filing was malicious or in bad faith. *Id.*

Century acknowledges that this Court must apply the substantive law of the forum state in which it resides (ECF No. 44 at 10:4-5), yet in its discussion of the litigation privilege Century does not discuss a single Nevada case involving the application of the litigation privilege.  Id. at pp. 27-29.  Century merely cites to California law and then summarily concludes, with no supporting legal authority, that "***Prince's*** expansive interpretation of the litigation privilege" cannot bar its claims because the litigation privilege must necessarily conflict with the legislative intent of Civil RICO claims.[7]   ECF No. 44 at 226:22-29:3 (emphasis added).  Century's argument is entirely without merit and should be rejected.

The expansive interpretation of the litigation privilege is not Prince's interpretation - it is the interpretation of the Nevada Supreme Court.  Notably, Century does not even mention *Circus Circus* or *Fink* in its Opposition, and therefore Century fails to refute that such cases are dispositive of all of Century's claims under the second prong of NRS 41.660. Moreover,

---

[7] Century cites to *Gallagher v. City of Las Vegas*, 959 P. 2d 519, 521 (Nev. 1998) to purportedly support this conclusion, however, Gallagher does not address the legislative intent of the Nevada Civil RICO statues, but is a workers compensation case that on generally addresses principles of statutory construction.  As such, *Gallagher* provides no guidance here.

despite citing to other unpublished Nevada Supreme Court cases, Century ignores Prince's lengthy discussion of *Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court,* No. 57991, 2012 Nev. Unpub. LEXIS 461 (Mar. 30, 2012), in which the Nevada Supreme Court thoroughly examined the litigation privilege, and expressed support for the broadest possible application of the litigation privilege – with regard to <u>both</u> conduct and communications.

This is omission is significant here because <u>this Court</u> recently relied upon *Bullivant Houser* and *Fink* in determining that the litigation privilege should be broadly applied to bar a claim against attorneys for abuse of process based on default judgments improperly entered against the defendant after service to an outdated address.  This Court held,

> Nevada follows the "long-standing common law rule that communications [made] in the course of judicial proceedings [even if known to be false] are absolutely privileged."
> . . .
> The "court's should liberally apply the absolute litigation privilege standards liberally, resolving any doubt in favor of its relevancy or pertinency.

*See Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Group*, Case No. 2:14-CV-424 JCM at p. 5-6 *citing Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court,* No. 57991, 2012 Nev. Unpub. LEXIS 461 at *2; *Fink v. Oshins*, 49 P.2d at 644.

This Court further held in *Las Vegas Sands* that,

> **[T]here is "no reason to distinguish between communications made during the litigation process and conduct occurring during the litigation process."** … [A]bsolute privilege bars any civil litigation based on the underlying communication."

*Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Group*, Case No. 2:14-CV-424 JCM at p. 5-6 (citations omitted).

In *Las Vegas Sands*, this Court ultimately concluded that the litigation privilege was much broader than the anti-SLAPP statute because it barred claims related to conduct and communications made to a judicial body regardless of whether they were made in good faith. Id. As such, this Court dismissed all of the plaintiff's claims under the litigation privilege, but declined to award attorneys' fees to the defendant under NRS 41.660 because the defendant law

14

firm had knowingly provided the court with an outdated address for the plaintiff despite having clear notice of more current information (thereby not acting in good faith).[8] In this case, however, Prince has already established by a preponderance of the evidence that his conduct and communications had a good faith basis under Nevada law. Because the litigation privilege bars Century's claims against Prince, Century will not prevail on the merits of its claims and Century fails the second prong of the analysis.

The California cases cited by Century only further undermine its position. Although Century suggests that *Flatley* stands for the proposition that California's litigation privilege does not apply to claims of fraud or unlawful activity, this is not true. *Flately* only examined the "**narrow circumstance**" where "the defendant concedes, or the evidence conclusively establishes [the conduct] was illegal as a matter of law." Id. (emphasis added). In *Flatley*, the Defendant conceded that he engaged conduct that the Court held constituted criminal extortion as a matter of law. Notably, the *Flatley* Court noted that the litigation privilege *would* bar claims based upon the illegal conduct, but the conclusive illegality of the extortion necessarily failed the first, "good faith communication" prong of the California anti-SLAPP statute. This holding is irrelevant here because Prince has not conceded to any illegal activity, and the conduct alleged by Century certainly was not conclusively illegal "as a matter of law."

More importantly, *Flately* cites to *Navellier v. Sletten,* 29 Cal.4th 82, 52 P.3d 703 (2002), in which the court applied the California anti-SLAPP statute to allegations similar to those alleged by Century here. In *Navellier,* the plaintiff alleged that the defendant trustee engaged in fraud by executing an undisclosed settlement agreement which eliminated the plaintiff's ability to assert certain claims in a lawsuit. The *Navellier* Court found that the alleged fraud in connection with the "negotiation, execution and repudiation of a release of claims" *was* covered by the California anti-SLAPP statute,

---

[8] Alternatively, this Court need not even determine whether NRS 41.660 applies here because the litigation privilege is equally dispositive of Century's claims. Just as the Nevada Supreme Court did in *Bullivant Houser*, and this Court did in *Las Vegas Sands*, this Court may dismiss all of Century's claims based solely on the application of the absolute litigation privilege under *Circus Circus* and *Fink*.

> **Examination of the relevant documents reveals that each of Sletten's acts (or omissions) about which plaintiffs complain falls squarely within the plain language of the anti-SLAPP statute. In alleging fraud, as the dissent acknowledges, plaintiffs complain about Sletten's alleged negotiation, execution, and repudiation of the Release.** …When moving to dismiss Sletten's counterclaims under Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.), plaintiffs relied on the Release. Sletten's negotiation and execution of the Release, therefore, involved "statement[s] or writing[s] made in connection with an issue under consideration or review by a … judicial body" [citations omitted].

Id. 29 Cal.4th at 90.

Contrary to Century's argument otherwise, the California Supreme Court has found allegations of fraud may fall under the purview of the California anti-SLAPP statute.

Finally, Century's citation to *Greenberg v. Sierra Madre Inv'rs Lp*, B218822, 2011 WL 3198847, at *10 (Cal. Ct. App. 2011), an unpublished California appellate court case, is particularly troublesome and misleading.  Century includes this case in a string cite and argues that it establishes that if "an attorney commits actual fraud in his dealings with third parties, the fact that he did so in the capacity of attorney does not relieve him of liability."  ECF Doc. 44 at 29:23-27.  Century fails to acknowledge, however, that *Greenberg* does not address either the litigation privilege or the California anti-SLAPP statute.  *Greenberg* involves the "agent's immunity exception" to a highly specific California statute §1714.10, titled, "Cause of action against attorney based on civil conspiracy with client."  This statute, which has no Nevada counterpart, expressly permits claims against an attorney for conspiring with his or her client to cause an injury only if such conduct violates the attorney's own duty to the plaintiff.

This statute, and its various exceptions, is entirely irrelevant because Nevada has no such statute.  Moreover, if the Nevada Legislature wished to carve out an exception to the litigation privilege to address specific allegations of fraud against attorneys, it could have done so, but it has not. This Court need not consider Century's California authority because the Nevada Supreme Court has already directed that the litigation privilege be broadly applied.  Century cannot meet its burden of demonstrating that its claims will survive Nevada's litigation privilege as set forth in *Circus Circus, Fink* and *Bullivant Houser,* and Prince's Motion should be granted.

16

**III.   CENTURY'S LAWSUIT IS A CLEAR ATTEMPT TO OBTAIN DISCOVERY CENTURY FAILED TO TIMELY PURSUE IN THE *ANDREW* CASE.**

Century next dedicates considerable time in its opposition requesting that this Court allow it to conduct discovery on "documents and depositions concerning the specific communications at issue and Prince's knowledge as to those issues."  ECF Doc. 44 at 16:19-23. Clearly, one of the underlying purposes of this lawsuit is to engage in further discovery to be used somehow in *Andrew*.  This request should be denied because the discovery Century requests is unnecessary, and is the same discovery that Judge Gordon previously denied to Century based on its failure to timely conduct such discovery in *Andrew*.

Century argues that, "[I]f the Court finds that Prince satisfies his initial burden under the statute, it should allow Century to conduct limited discovery before ruling on the motion." Id. at 16:16-17.   Put another way, Century suggests that if this Court is inclined to rule that Century's lawsuit is frivolous, retaliatory or otherwise aimed at chilling his ability to vigorously represent his injured client, then Century should be rewarded with free discovery.[9]

As discussed in Prince's motion, permitting Century to engage in discovery here would effectively circumvent Judge Gordon's order precluding such discovery,

> **Century stated at the September 17, 2015 hearing that discovery should be re-opened on the issue of fraud and collusion. However, Century raised this defense from the outset and discovery proceeded for over a year before I ruled Century was not bound by the default judgment. Century therefore had ample opportunity to investigate its fraud or collusion defense.**

See ECF No. 38-5 at p. 28. fn 9. (emphasis added).

Under NRS 41.660(4), the Court is not required to permit discovery in connection with anti-SLAPP motion.  Rather, NRS 41.660(4) permits a party to conduct discovery only upon a showing "that information necessary to meet or oppose the burden pursuant to paragraph (b) of subsection 3 is in the possession of another party or a third party and is not reasonably available without discovery."  Century makes no such showing here.  As Judge Gordon correctly

---

[9] Prince has also filed a motion to stay discovery concurrently herewith, and incorporates those arguments as if expressly set forth herein.

1  concluded, Century has had notice of "fraud and collusion" issues for over <u>four years</u> and

2  therefore had more than sufficient opportunity to conduct any discovery it desired.

3    Prince, who filed the Pretner Complaint and obtained the default judgment, is counsel for

4  Pretner in *Andrew*. Defendants Ranalli and Esparza were listed as a fact witness in *Andrew* on

5  **July 11, 2012**. See Andrew's Initial Disclosure of Witnesses and Documents Pursuant to LR 26-

6  1, attached as **Exhibit "1**." Century thereafter listed Defendant Prince as a fact witness on

7  **October 26, 2012**. See Century's First Supplement to Disclosure of Witnesses and Documents

8  Pursuant to LR 26-1, attached as **Exhibit "2".** By that time, Century had already received the

9  *Andrew* Complaint, the October 2011 Settlement Agreement, and Progressive's complete claims

10 file containing all communications between Prince, Ranalli and Progressive.  See **Exhibit "3".**

11   Century again attempts to mislead the Court by suggesting, with supporting discovery

12 orders, that Prince somehow obstructed Century's ability conduct discovery into Prince's

13 conduct relative to the default judgment. ECF No. 44 at 19:12-21.  This is false.  Century is

14 correct that Prince has, and continues to, dispute the relevance of his own brain-injured client's

15 understanding of Nevada respondent superior law, or Esparza's understanding (as she was an

16 immigration attorney with no background in personal injury law).  Century has not, however,

17 made any showing to this Court that it was prevented from conducting <u>any</u> discovery on its fraud

18 and collusion defense prior to the close of discovery in *Andrew*.  Indeed, although Century took

19 the deposition of Defendant Esparza and certain Progressive claim representatives in *Andrew*,

20 Century <u>never</u> noticed the depositions of either Prince or Ranalli. Century is now attempting to

21 use this case, and Prince's motion, to circumvent Judge Gordon's order, and therefore Century's

22 request for discovery related to this motion should be denied.

23 . . .

24 . . .

25 . . .

26 . . .

27 . . .

28

**IV. CENTURY HAD MORE THAN SUFFICENT NOTICE TO ASSERT ITS CLAIMS BEFORE THE STATUTES OF LIMITATIONS EXPIRED.**

Because NRS 41.660 and the litigation privilege preclude Century's claims, the statute of limitations should be largely irrelevant. In any event, Century's failure to timely assert its claims further demonstrates that Century will not prevail in this action.[10]

For the Court's convenience, the following are the dates relevant to this action,

- January 12, 2009- Date of the collision (ECF No. 38-3 at p.2)
- June 15, 2009- Century rejects Esparza's demand (ECF No. 38-5 at p. 90)
- August 10, 2010- Century refuses to provide Esparza with the Policy (Id. at 96)
- December 18, 2010- Prince is Retained to take over Pretner's case (ECF No. 38-7)
- January 7, 2011 – Prince Files Pretner Complaint (ECF No. 38-5 at 100)
- March 3, 2011 – Prince sends copy of complaint to Century (Id. at 97-99)
- March 8, 2011- Century sends Prince copy of the Century Policy (Id. at 138)
- June 27, 2011- Prince sends Century copy of defaults. (Id. at 201-211)
- June 27, 2011- Century informs Prince is not providing coverage (Id. at 226)
- August 3, 2011- Progressive decides to hire Ranalli (ECF No. 38-10)
- October 20, 2011- Settlement Agreement and Covenant not to Execute signed (ECF No. 38-13)
- February 15, 2012- Prince files Application for Entry of Default Judgment (ECF No. 38-14)
- April 11, 2012- Default Judgment Entered (ECF No. 38-16) [11]

It is undisputed that Prince provided Century with courtesy copies the Complaint in March 2011, and copies of the defaults in June 2011. Century does not dispute that it refused to defend Vasquez and Blue Streak, closed its file, and elected not to monitor the case. Accordingly, as of June 27, 2011, Century not only had notice of a potential default judgment (the claimed "injury"), but it knew or should have known that its own decision-making had placed its insureds in jeopardy of a default judgment.

---

[10] Defendant Ranalli also addresses these issues in his Reply Brief, and Prince hereby incorporates such arguments by express references. ECF Doc. 53.

[11] As demonstrated by this timeline, Century's conspiracy claim is also factually implausible. Century does not dispute that once Prince was retained, Esparza took no further action (or made any communications) with regard to Pretner's claims. Prince filed the Complaint with the "predicate" allegations in January, 2011, and sent notice of the complaint, and the subsequent defaults to Century in March and June of 2011. Ranalli was not retained by Progressive until August 2011, after Century had already elected to close its file without defending its insureds. ECF No. 38-5 at 226). Given this timeline, none of the Defendants could have possibly acted in concert with any other Defendant to effectuate the various "predicate acts" that were necessary for the "set up" alleged by Century.

Notably, Century does not dispute Prince's citation to caselaw describing Century's decision not to defend its insureds, as the "riskiest of all litigation strategies" for which the insurer and "must suffer the consequences." See *Transportation Ins. Co. v. Piedmont Construction Group, LLC*, 686 S.E.2d 824, 829 (Ga. App. 2009).   ECF No. 37 at 15:12-14. Century also cannot dispute that the Ninth Circuit has reaffirmed the imposition of automatic liability for a default judgment where the insurer wrongfully refuses to provide a defense to its insured.  *Pershing Park Villas Homeowners Association v. United Pacific Insurance Company*, 219 F.3d 895 (9th Cir. 2000).  Indeed, the Montana Supreme Court recently upheld a stipulated judgment against an insurer because, "[W]here an insurer refuses to defend a claim and does so unjustifiably, the insurer becomes liable for defense costs and judgments… In other words, where an insurer refuses to defend its insured, it does so at its own peril."  See *J & C Moodie Props., LLC v. Deck*, 385 Mont. 382 (Mont. 2016) at p. 21.  Accordingly, Century cannot suggest that it did have notice of the potential injury (the default judgment) or the various other "predicate acts" (Prince's respondent superior allegations) long before the statute of limitations expired, or that Century had no obligation to take action to discover facts related to such claims (or to take action to ensure the injury never occurred in the first place).

At a minimum, Century admits that it could have had knowledge of its alleged injury, entry the default judgment, by at least April 11, 2012. ECF No. 44 at 24:1-4.  As such, Century had notice of the default judgment for over <u>four and half years</u> before it filed the instant action, and its claim for civil conspiracy will necessarily fail on that basis.   Although Century argues it could not be on notice of the civil conspiracy claim because it "did not know, and had no reason to know, of the critical facts necessary to supports its civil conspiracy claims until early 2013." ECF Doc. 44 at 26:22-24. Century, however, does not address exactly which "critical facts" were unavailable to them.  Although *Siragusa v. Brown*, 114 Nev. 1384, 971 P.2d 801 (1998) recognizes the discovery rule may apply in connection with civil conspiracy claims, the Court cautioned,

> [T]he expansion of the discovery rule carries with it the requirement that the plaintiff
> exercise reasonable diligence . . . .  Plaintiffs may not close their eyes to means of
> information reasonably accessible to them and must in good faith apply their attention

to those particulars within their reach.

Id. at 807.

Although Century argues it did not have sufficient facts to bring a conspiracy claim against Prince or the other co-defendants until now, Century has clearly been litigating these issues for well over four years in *Andrew*.   Since June 2012, Century has defended the *Andrew* action by alleging "fraud and collusion" in connection with entry of the default judgment, and as discussed above, Esparza, Ranalli and Prince were all listed a witnesses in *Andrew* (yet Century inexplicably elected not to depose Ranalli or Prince) in 2012.

Without citing to exactly which facts or evidence it claims it could not have discovered in *Andrew*, Century suggests that it was not on notice of the civil conspiracy claim because a "fraud and collusion" defense and conspiracy claim "are not coterminous and require proof of different elements and fact." ECF No. 44 at 26:16-18.  This argument is pure form over substance because Century has alleged the <u>exact same conduct</u> by Prince as both the basis for its defense in *Andrew* and its claims here.   Indeed, Century even utilized the same insurance "set up" language in its **November 2012** Opposition to Andrew's Motion for Summary,

> **Plaintiffs' counsel negotiated a deal in an attempt to "set up" Century for bad faith for a claim they all knew was not covered by Century's Garage Policy.** Indeed, if there had been coverage under the commercial business policy, Progressive would likely not have paid its $100,000 policy limits under the personal automobile policy, claiming it was a business event, not a personal one.
>
> . . .
>
> **And like these cases, Plaintiffs, Plaintiffs' counsel, Vasquez, and Progressive, knew that Vasquez was not driving in the course and scope of his employment, and thus that the Accident was thus not covered by the Garage Policy**.

November 11, 2012 at 22:11-15; 23:24-26, attached hereto as **Exhibit "4."**

On October 17, 2012, Century also attempted to intervene in the state court action based on the same "false allegations" by Prince that Century now alleges in its Complaint,

> Under that agreement and assignment of rights, Pretner has now filed a bad faith action against Century Surety, in which he claims that the false findings of fact in this court's Default Judgment are binding on Century Surety. Conveniently for Pretner's counsel, if binding, those false statements in the

Default Judgment would arguably result in coverage under the Century Surety policy, when the true facts show there was none. … **Century nonetheless seeks to intervene to set aside the void default judgment and its false statements, to prevent a miscarriage of justice in this Court**.

ECF No. 38-19 at 9:6-13.

Whether asserted as a defense or a claim, Century ultimately alleges that it should not be bound by the default judgment because the judgment was procured by some type of fraud perpetuated by Prince, Esparza and Ranalli. Century, however, cannot "close [its] eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars within their reach." *Sirgusa,* Id. at 807.  Given what Century new in April 2012, and months earlier, Century cannot possibly invoke the discovery rule to claim it lacked sufficient notice of its conspiracy claims against Prince before 2013.

**A.  Century Presents No Evidence It Could Not Have Asserted its Claims in *Andrew*.**

Whether via a counter-claim or third-party claim, Century has not demonstrated any procedural impediment that would have prevented it from bringing these claims in *Andrew*. Although such claims would still have been subject to dismissal under NRS 41.660, FRCP 14 provides that "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The deadline to amend the pleadings in *Andrew* has long passed, and that case is currently stayed.  Accordingly, Century should be precluded from filing this new action to circumvent the expired deadlines and adverse rulings entered by Judge Gordon, or from claiming the discovery rule exempts its claims from the relevant statutes of limitation given its notice of the issues in *Andrew*.

**B.  Century Already Has a Forum to Seek Redress of Their Alleged Injury Without Seeking To Impose Personal Liability on The Defendant Attorneys**.

Lastly the *Andrew* case highlights why public policy supports the application of NRS 41.660 and the litigation privilege to protect attorneys from personal liability.  Although such laws could result in an aggrieved party being left without a remedy under very narrow circumstances, in most instances, such as here, there are various court rules and caselaw that

provide parties, and courts, with remedies to adequately address allegations of false statements or fraud in court proceedings.

Century certainly cannot argue that application of NRS 41.660 or the litigation privilege would deprive it of a remedy for the conduct alleged in its Complaint. Quite the contrary, Century has already availed itself of one such remedy in *Andrew*. Indeed, Century concedes that it will be permitted to present evidence of fraud and collusion in *Andrew*. ECF No. 44 at 18:15-21. If Century's arguments are correct, and it prevails, then Century will owe nothing to Pretner (thereby suffering no damages).

## V.   AMENDMENT OF CENTURY'S COMPLAINT IS FUTILE

Century's request to amend its complaint is futile because no amendment to Century's Complaint will alter the underlying basis of the claims so as to deprive Prince the protections of NRS 41.660. Although Century tacitly corrects various material facts it misstated in its own Complaint (related to which Defendant attorney sent or received certain correspondence), correction of those errors will not change the result here. Century does not dispute that Prince's conduct and communications were in furtherance of a right to petition, and Prince has more than met his burden of establishing that he acted in good faith in his dealings with the Court. Accordingly, Century's request to amend its complaint should be denied.

## VI.   CONCLUSION

At best, Century's lawsuit is an attempt to improperly relitigate the same "fraud and collusion" defense it has been litigating in *Andrew* for years. At worst, Century's lawsuit could effectively chill plaintiff's attorneys from alleging facts that may implicate the insurer's duty to defend, and chill the negotiation of agreements and settlements designed to address bad faith by insurers in litigation, by threatening them with personal liability. Defendant Prince, like many attorneys representing plaintiffs, was essentially required to file the Pretner action with one hand tied behind his back. Without the benefit of any discovery, and after Century had refused to provide a copy of the policy, Prince had three weeks to file a complaint for a plaintiff catastrophically injured by the sole owner of mobile detailing business.

23

1    Prince's situation is not unique.  Attorneys everyday are faced with similar situations that

2 require them to make strategic decisions in furtherance of their ethical duty to provide vigorous

3 representation to their clients- often based upon precious little information.  NRS 41.660 and the

4 litigation privilege are therefore routinely applied by courts to protect attorneys from personal

5 liability stemming from such decisions. Accordingly, Century's claims should be denied in their

6 entirety.

7 DATED this 19th day of January, 2017.

8                                              **EGLET PRINCE**

9                                              */s:/ Robert T. Eglet, Esq.*

10                                             _____
                                               Robert T. Eglet (Bar No. 3402)
11                                             Erica D. Entsminger (Bar No. 7432)
                                               400 South 7th Street, Box 1, 4th Floor
12                                             Las Vegas, NV 89101

13                                             **LIPSON, NEILSON, COLE, SELTZER &**
                                               **GARIN, P.C.**
14                                             Joseph P. Garin (Bar No. 6653)
15                                             Megan H. Hummel (Bar No. 12401)
                                               9900 Covington Cross Drive, Suite 120
16                                             Las Vegas, Nevada 89144
17                                             *Attorneys for Defendant Prince*

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 19th day of January, 2017, I served the foregoing **DEFENDANT DENNIS PRINCE'S REPLY IN SUPPORT OF SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** by electronically serving the document(s) listed above with the United States District Court's CM/ECF upon the following:

Maria Louise Cousineau
**COZEN O'CONNOR**
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
*Attorney for Plaintiff*

J. Ric Gass
Michael B. Brennan
**GASS WEBER MULLINS LLC**
309 North Water Street
Milwaukee, Wisconsin 53202
*Attorneys for Plaintiff*

Martin J. Kravitz
**CHRISTIAN, KRAVITZ, DICHTER, JOHNSON & SLUGA, LLC**
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
*Attorney for Plaintiff*

Joseph P. Garin
Megan H. Hummel
**LIPSON NEILSON COLE SELTZER & GARIN, P.C.**
9900 Covington Cross Drive, Suite 120
Las Vegas, NV 89144
*Attorneys for Defendant*

Matthew L. Sharp
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV 89501
*Attorney for Defendant*

_____
*/s/ Kimberly Culley*
An Employee of EGLET PRINCE