1

2

3

4                     UNITED STATES DISTRICT COURT

5                        DISTRICT OF NEVADA

6                              * * *

7  CENTURY SURETY COMPANY,                    Case No. 2:16-CV-2465 JCM (PAL)

8                         Plaintiff(s),                  ORDER

9        v.

10  DENNIS PRINCE, et al.,

11                        Defendant(s).

12

13        Presently before the court is defendant Dennis Prince's ("Prince") special motion to

14  dismiss pursuant to Nevada Revised Statute ("NRS") § 41.660.  (ECF No. 37).  Prince had

15  previously filed a special motion to dismiss (ECF No. 17) but was ordered to refile the motion

16  within the court's page limitation on December 13, 2016.[1]  (ECF No. 32).  Prince filed the present

17  special motion to dismiss on December 16, 2016.  (ECF No. 37).[2]

18        Plaintiff Century Surety Company ("Century") filed a response to the special motion to

19  dismiss (ECF No. 44), to which Prince replied (ECF No. 57).

20        Defendant George Ranalli ("Ranalli") joined Prince's original special motion to dismiss

21  (ECF No. 25) and filed an errata with the court to join the refiled special motion to dismiss on

22  December 28, 2016.  (ECF No. 43).  Ranalli also filed his own motion to dismiss.  (ECF No. 26).

23  Century responded in January 2017 (ECF No. 46), and Ranalli replied (ECF No. 53).

24  _____

25        [1]  The original special motion to dismiss will be denied for failure to comply with Local
26  Rule 7-3.  LR 7-3(c) ("A motion to file a brief that exceeds these page limits will be granted only
    upon a showing of good cause. A motion to exceed these page limits must be filed before the
27  motion or brief is due . . . . Failure to comply with this subsection will result in denial of the
    request."); (ECF No. 17).

28        [2]  Having originally been fifty-six pages long, the magistrate judge ordered the motion
    refiled to comply with Local Rule 7-3.  (ECF No. 32).

James C. Mahan
U.S. District Judge

1    Defendant Sylvia Esparza ("Esparza") also joined in the special motion to dismiss on

2    December 20, 2016.  (ECF No. 40).  Also before the court is Esparza's motion to dismiss.  (ECF

3    No. 18).  Century responded by incorporating and adopting by reference its response to Prince's

4    motion.  (ECF No. 45).  Esparza replied to Century's response to Prince's special motion to

5    dismiss, but not specifically in favor of her own motion.  (ECF No. 56).

6    Furthermore, Prince moved to stay the proceedings.  (ECF No. 55).  Ranalli and Esparza

7    both joined in the motion to stay.  (ECF Nos. 59, 60).  A hearing was held on March 7, 2017,

8    regarding that motion.  (ECF No. 69).  Magistrate Judge Leen issued an order which granted

9    Prince's motion.  (*Id.*).  Century filed objections to the order and asked the court to reverse the

10   magistrate judge's order.  (ECF No. 71).  Prince responded to Century's objections (ECF No. 72),

11   and all other defendants joined in Prince's response (ECF Nos. 73, 74).

12   **I.    Introduction**

13   The present case concerns an alleged scheme to fraudulently procure a multi-million dollar

14   judgment against Century as a result of a catastrophic vehicle accident.  (ECF No. 1).  Century

15   brings two claims.  (*Id.*).  Century's first claim is brought under the Nevada Racketeer Influenced

16   and Corrupt Organizations Act ("RICO") per NRS 207.470.  (*Id.* at 12–18).  Century brings a

17   second claim for civil conspiracy, alleging that defendants Prince, Ranalli, and Esparza engaged

18   in a "bad faith insurance 'setup.'"  (*Id.* at 2, 18–19).

19   Michael Vasquez ("Vasquez") is the sole owner and manager of Blue Streak Auto

20   Detailing, LLC ("Blue Streak").  (ECF No. 1 at 3).  On January 12, 2009, Vasquez was driving his

21   Ford F-150 truck on St. Rose Parkway when he struck Ryan Pretner ("Pretner"), who was riding

22   his bicycle on the shoulder of the road.  (ECF Nos. 1 at 3, 37 at 3).  Pretner was "violently thrown

23   from his bicycle resulting in a catastrophic brain injury and over $2,000,000 in medical expenses."

24   (ECF No. 37 at 3).  Vasquez was allegedly "'off work' and running 'personal errands' at the time

25   of the [a]ccident."  (ECF No. 1 at 6).

26   At that time, Vasquez had a personal automobile liability insurance policy ("personal

27   policy") from Progressive.  (*Id.* at 3).  Blue Streak, a mobile detailing business owned and operated

28   by Vasquez, was covered by a commercial liability garage coverage policy ("garage policy") from

**James C. Mahan**
**U.S. District Judge**

1    Century.  (ECF Nos. 1 at 3, 37 at 3).  The personal policy had a $100,000 policy limit whereas the

2    garage policy had a $1,000,000 policy limit.  (ECF No. 37 at 3).

3           Pretner was initially represented by Esparza.  (ECF No. 1 at 7).  Progressive offered

4    Esparza the personal policy limit—$100,000—immediately following the accident.  (ECF No. 37

5    at 4).  Due to the severity of Pretner's injuries, "Esparza could not provide a release until all

6    possible insurance coverage was exhausted."  (*Id.* at 4).  Esparza made a demand on Century for

7    its policy limit.  (*Id.*).  Century denied the demand, taking the position that coverage did not exist

8    under its policy because Vasquez was not acting in the scope or course of business at the time of

9    the accident.  (*Id.*).  Next, Esparza requested a copy of Century's garage policy.  (*Id.*).  However,

10    Century refused to provide Esparza with a copy of the garage policy.  (*Id.*).

11           Prince was retained by Pretner roughly three weeks prior to the applicable statute of

12    limitations deadline.  (*Id.* at 17).  At that time, Esparza's involvement in the case ceased.  (ECF

13    No. 18 at 3).  Prince filed a complaint against Vasquez and Blue Streak "[o]n January 7, 2011, five

14    days before the statute of limitations expired."  (ECF No. 37 at 5).

15           Century alleges "Prince informed Progressive that he planned to represent [p]laintiffs

16    before filing suit against Vasquez and Blue Streak, but assured Progressive that he planned to set

17    up [p]laintiff Century Surety for a subsequent bad faith claim and that he would not pursue

18    Vasquez personally."  (ECF No. 1 at 4).  Century further alleges "[t]here was no evidence to

19    support [that Vasquez was in the course and scope of his business at the time of the accident] and

20    all of the evidence available and known to [Prince, Esparza, and Ranalli], expressly contradicted

21    material allegations in the complaint."  (*Id.*).

22           Prince, on the other hand, argues that "[t]he claims against Blue Streak were based upon

23    allegations that Vasquez was in the course and scope of his employment at the time of the

24    collision."  (ECF No. 37 at 5).  Moreover, Prince argues that the allegations in the state complaint

25    were supported by case law, the nature of the business, and a potential witness.  (*Id.*).

26           Century was informed that Prince represented Pretner, that there were allegations that there

27    may be coverage under Century's garage policy, and was provided a copy of the complaint.  (ECF

28    Nos. 1 at 8, 37 at 5).  Century's response was merely to provide Prince with a copy of the garage

**James C. Mahan**
**U.S. District Judge**

policy.  (ECF No. 37 at 6).  Century elected to neither indemnify nor defend Vasquez or Blue Streak, believing that coverage did not exist under its policy and "that Progressive was defending the action."  (ECF No. 1 at 8); *see also* (ECF No. 37 at 6).

Defaults were entered against Vasquez and Blue Streak on June 27, 2011.  (ECF Nos. 1 at 8, 37 at 6).  Prince sent copies of the defaults to Century.  (ECF No. 37 at 6).  Century replied that it had "no coverage for this matter" and that Progressive was handling the case.  (*Id.*).

Thereafter, Progressive and Prince negotiated a settlement agreement, and Progressive retained Ranalli to "represent Vasquez and Blue Streak in connection with the covenant and settlement negotiations."  (*Id.* at 7).  "Progressive informed [d]efendant Ranalli that Prince 'has agreed to give us a [c]ovenant [n]ot to [e]xecute in exchange for the payment of our policy limit' and instructed [d]efendant Ranalli to work with Prince to draft a settlement agreement."  (ECF No. 1 at 9).

> Progressive and Defendant Prince agreed to a settlement under which Progressive would pay its $100,000 policy limit, Pretner and his co-legal guardians would obtain an assignment by Blue Streak and Vasquez of their rights to proceed against Plaintiff Century Surety under the Garage Policy, and Defendant Prince would proceed to obtain a default judgment against Vasquez and Blue Streak. The agreement also provided that Pretner and his co-legal guardians would provide a covenant not to execute on the resulting [state court] judgment.

(*Id.*).  Vasquez was allegedly "reluctant to sign" the settlement agreement "because he did not believe Century Surety had any responsibility for the accident," and executed the agreement only due to "pressure from Defendant Ranalli."  (*Id.* at 9–10).

"On February 15, 2012, Prince filed an [a]pplication for [e]ntry of [d]efault [j]udgment requesting judicial determination of damages" and, after a hearing, a default judgment in the amount of $18,050,185.45 was entered in plaintiffs' favor.  (ECF No. 37 at 7); *see also* (ECF No. 38–16).  Subsequently, Prince, as a result of the assignment of rights and the covenant not to execute, filed *Andrew v. Century Sur. Co.* in state court, and Century removed the case to federal court.  *See* No. 2:12-CV-00978-APG-PAL, 2014 WL 1764740 (D. Nev. Apr. 29, 2014); (ECF No. 26 at 3).  Prince, on behalf of his client, sought to collect "damages related to the default judgment and Century's bad faith."  (ECF No. 37 at 7–8); *see also* (ECF No. 1 at 11).

James C. Mahan
U.S. District Judge

1   Century filed an answer in the *Andrew* case on June 15, 2012, arguing "[p]laintiffs' alleged

2   right to seek damages against Century was obtained through fraud, misrepresentation, and/or

3   collusion." (ECF No. 37 at 7). Century first tried, in October 2012, to intervene in the state court

4   action, but its motion to intervene was denied in its entirety. (*Id.* at 7–8). Century never filed any

5   counterclaims in the *Andrew* case and has been denied the opportunity to reopen discovery to

6   investigate its fraud and collusion defense "because Century had 'raised that issue from the

7   outset.'" (*Id.* at 8).

8   **II.      Legal Standard**

9           ***A.  Motion to dismiss***

10          The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

11  can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and

12  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

13  Although rule 8 does not require detailed factual allegations, it does require more than labels and

14  conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic

15  recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662,

16  677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed

17  with nothing more than conclusions. *Id.* at 678–79.

18          To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state

19  a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff

20  pleads factual content that allows the court to draw the reasonable inference that the defendant is

21  liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent

22  with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does

23  not meet the requirements to show plausibility of entitlement to relief. *Id.*

24          In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply

25  when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations

26  contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.*

27  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

28  at 678. Where the complaint does not permit the court to infer more than the mere possibility of

**James C. Mahan**
**U.S. District Judge**

1    misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.*

2    at 679.   When the allegations in a complaint have not crossed the line from conceivable to

3    plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

4           The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

5    1216 (9th Cir. 2011).  The *Starr* court held:

6

7           First, to be entitled to the presumption of truth, allegations in a complaint or
            counterclaim may not simply recite the elements of a cause of action, but must
8           contain sufficient allegations of underlying facts to give fair notice and to enable
            the opposing party to defend itself effectively.  Second, the factual allegations that
9           are taken as true must plausibly suggest an entitlement to relief, such that it is not
            unfair to require the opposing party to be subjected to the expense of discovery and
10          continued litigation.

     *Id.*
11

12          **B.  *Special motion to dismiss***

13          The court will first consider Prince's special motion to dismiss pursuant to NRS § 41.660,

14   which protects "good faith communication in furtherance of the right to petition or the right to free

15   speech in direct connection with an issue of public concern."  Nev. Rev. Stat. § 41.660; (ECF No.

16   37).  Prince argues that Century's complaint is a strategic lawsuit against public participation

17   ("SLAPP") complaint.  (ECF No. 37).  Prince contends that the complaint was brought against the

18   three attorney defendants personally for "improper and retaliatory" purposes.  (*Id.* at 3).  Moreover,

19   Prince emphasizes that the complaint directly targets the defendants' First Amendment right to

20   petition the court system by seeking to "effectively chill Prince and other attorneys from

21   vigorously advocating for injured clients by forcing attorneys to defend themselves against claims

22   for personal liability for purely strategic litigation decisions."  (*Id.* at 2).

23          Nevada's "anti-SLAPP" statute governs how the court must adjudicate the instant motion;

24   the court is to:

25          (a)  Determine whether the moving party has established, by a preponderance of
            the evidence, that the claim is based upon a good faith communication in
26          furtherance of the right to petition or the right to free speech in direct connection
            with an issue of public concern;
27          (b)  If the court determines that the moving party has met the burden pursuant to
            paragraph (a), determine whether the plaintiff has demonstrated with prima facie
28          evidence a probability of prevailing on the claim;

James C. Mahan
U.S. District Judge                                          - 6 -

(c) If the court determines that the plaintiff has established a probability of prevailing on the claim pursuant to paragraph (b), ensure that such determination will not:
    (1) Be admitted into evidence at any later stage of the underlying action or subsequent proceeding; or
    (2) Affect the burden of proof that is applied in the underlying action or subsequent proceeding;
(d) Consider such evidence, written or oral, by witnesses or affidavits, as may be material in making a determination pursuant to paragraphs (a) and (b);
(e) Except as otherwise provided in subsection 4, stay discovery pending:
    (1) A ruling by the court on the motion; and
    (2) The disposition of any appeal from the ruling on the motion . . . .

Nev. Rev. Stat. § 41.660(3).

## III.   Discussion

### A.  *Anti-SLAPP analysis*

#### 1.  *Protected activity*

First, the court must determine if Century's complaint is based entirely on defendants' "[g]ood faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.637. Prince argues, and Century does not contest, that the complaint is based on a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." Nev. Rev. Stat. § 41.637(3); *see also* (ECF No. 37 at 8–9).

Prince contends that "because both of Century's claims arise from the same conduct by Prince in furtherance of his pursuit of a lawsuit on behalf of his injured client," the activity is protected by Nevada's anti-SLAPP statute. (ECF No. 37 at 10). Century argues, however, that Prince, Ranalli, and Esparza fail on the "good faith" requirement of NRS 41.630. (ECF No. 44 at 11–15). In order for Prince's petition to the court to be in good faith, it must "[be] truthful or [be] made without knowledge of its falsehood." Nev. Rev. Stat. § 41.637.

Century claims that Prince knew Vasquez was not acting in the course or scope of employment at the time of the accident, so the claim against Blue Streak relied on knowingly false statements and, as a result, was done in bad faith. (ECF Nos. 1 at 4, 44 at 12–15). However, Prince asserts his good faith intention when filing the complaint; namely, that "[w]ith the statute of limitations expiring, Prince was obligated to protect his catastrophically injured client, and

1   Prince had to name Blue Streak as a defendant in the complaint to preserve a $1,000,000 claim."

2   (ECF No. 37 at 18) (emphasis removed).  Furthermore, "Prince informed Century that he had legal

3   research to support an allegation that Vasquez was in the course and scope of his business."  (*Id.*).

4          Prince has shown "by a preponderance of the evidence, that the claim is based upon a good

5   faith communication in furtherance of the right to petition or the right to free speech in direct

6   connection with an issue of public concern."  Nev. Rev. Stat. § 41.660(3)(a).  Here, Century has

7   not sufficiently disputed Prince's assertions to show that "the defendant[s] abused the privilege [to

8   petition the court] by publishing the communication with malice in fact."  *Circus Circus Hotels,*

9   *Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983).

10         The heart of Century's argument is that Prince knew that the complaint he filed in the

11  underlying state court action was not truthful, citing to conflicts between the allegations in the

12  complaint and "known facts and evidence." (ECF No. 44 at 11–15).  Century had, however, ample

13  opportunity to contest those facts, yet elected not to.  (ECF No. 37 at 5) ("Prince sent Century a

14  letter of representation that included a courtesy copy of the Pretner complaint . . . Century's claim

15  file acknowledges that Lisa Henderson, a licensed attorney assigned to the claim . . . knew about

16  the [r]espondent [s]uperior allegations against Blue Streak.").

17         Furthermore, Prince argues that he had "a good faith legal basis to allege responde[a]t

18  superior liability against Blue Streak—regardless of whether Vasquez's own lay opinions would

19  have ultimately been found to be true or not." (ECF No. 57 at 5).  Prince alerted Century to these

20  allegations and gave them an opportunity to discuss the factual and legal basis for the *respondeat*

21  *superior* claim.

22         Prince sent letters to both Henderson and claims adjuster Holland enclosing copies
           of the defaults, and requesting they contact his office to discuss the matter in
23         'greater detail.' . . . Rather than contact Prince to discuss the basis for the defaults,
           Henderson responded via e-mail to Prince the same day that, 'Century has no
24         coverage for this matter,' and that it was her 'understanding that this matter is being
           handled by Progressive Insurance.'
25
    (*Id.* at 6).
26
           Similarly, Century had ample opportunity to inquire about and challenge Prince's legal
27
    conclusion.  (ECF No. 37 at 5) ("Prince explained his position to Century, disclosed the policy
28
    limits offer by Progressive, and referred to 'legal research' that 'indicates coverage exists under

James C. Mahan
U.S. District Judge

- 8 -

your policy.'"). Century's decision not to dispute Prince's complaint does not constitute "malice in fact" on Prince's part when filing the complaint. Prince's intention when filing the complaint was to preserve a $1,000,000 claim for his client. (*Id.* at 18). Century, on the other hand, chose not to defend Blue Streak or even reply to Prince when he attempted to contact Century regarding the claim—despite Prince's allegation that Vasquez was, in fact, acting in the course and scope of his business. (*Id.* at 5).

Accordingly, the court finds that Prince has satisfied the first prong of the anti-SLAPP analysis, and Century's claims are based on Prince's good faith filing of a complaint with the state court.

### 2. *Probability of prevailing on the claim*

#### i. *RICO*

##### a. *Legal standard*

"Nevada courts have interpreted the state RICO statute consistently with the provisions of federal RICO." *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994) (citing *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 298 n.2 (Nev. 1993) ("Nevada's racketeering statutes . . . are patterned after the federal [RICO] statutes"), *cert. denied*, 510 U.S. 857 (1993)).

To plead a civil RICO claim, plaintiff must demonstrate: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

Further, because RICO claims involve underlying fraudulent acts, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Thus, to sufficiently plead its RICO claim, a plaintiff must specify the time, place, and content of the alleged underlying fraudulent acts and statements, as well as the parties involved and their individual participation. *Edwards*, 356 F.3d at 1066.

James C. Mahan
U.S. District Judge

1    The standard for the special motion to dismiss requires that the court determine "whether

2    the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim."

3    Nev. Rev. Stat. § 41.660(3).  If the complaint is shown to be predicated on the defendants' "good

4    faith communication in furtherance of the right to petition or the right to free speech in direct

5    connection with an issue of public concern," then the plaintiff must show by clear and convincing

6    evidence that they have a likelihood of prevailing on its claim.  *Shapiro v. Welt*, 389 P.3d 262, 266

7    (Nev. 2017) ("After 2013 . . . the plaintiff's burden increased to clear and convincing evidence.").

8                                  ***b.  Predicate acts***

9    Here, Century pleaded three predicate acts stemming from Prince, Ranalli, and Esparza's

10   conduct in relation to Pretner's state court claim: (1) alleging Vasquez was in the course and scope

11   of his employment constituted offering false evidence and insurance fraud; (2) alleging that Blue

12   Streak owned the Ford F-150 constituted offering false evidence and insurance fraud; and (3) acts

13   related to the settlement agreement and obtaining Vasquez's signature on the covenant not to

14   enforce constituted obtaining a signature by means of false pretenses, suborning perjury, offering

15   false evidence, and insurance fraud.  (ECF No. 1 at 13–17).[3]

16   Century contends that "Prince was not interested in going after Vasquez personally because

17   Progressive is one of his clients."  (ECF No. 1 at 8).  Prince, on the other hand, contends that he

18   "made the strategic litigation decision to protect a potential $1,000,000 claim from being time

19   barred by asserting claims against Blue Streak."  (ECF No. 37 at 17).  Indeed, Century admits that

20   Prince went so far as to "inform[] [p]laintiff Century Surety that he represented Pretner and his co-

21   legal guardians and provide[] a copy of the complaint to [p]laintiff Century Surety."  (ECF No. 1

22   at 8).

23   Century alleges that Ranalli's actions while drafting and executing the settlement

24   agreement constituted acts sufficient to sustain a RICO claim.  (*Id.* at 15–18).  These actions

25   _____

26       [3]  "'Racketeering activity,'" as will be discussed later, "means engaging in at least two
     crimes related to racketeering that have the same or similar pattern, intents, results, accomplices,
     victims or methods of commission, or are otherwise interrelated by distinguishing characteristics
27   and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the
     last of the incidents occurred within 5 years after a prior commission of a crime related to
28   racketeering." Nev. Rev. Stat. § 207.390.  A predicate act is one of the incidents used to allege
     racketeering activity.  *See* Nev. Rev. Stat. § 207.360.

James C. Mahan
U.S. District Judge

include "work[ing] with Prince to draft the settlement agreement, rather than defend Vasquez and Blue Streak" and "persuad[ing] Vasquez to sign the settlement agreement," which allegedly "contained misrepresentations." (*Id.* at 16).

The only allegation of Esparza's involvement is that she, having previously represented Pretner, "interviewed other attorneys and was involved in the decision to retain . . . Prince" and shared her case file with him. (*Id.* at 7). Century contends that, in the course of litigation representing Pretner, "Prince then orchestrated a settlement agreement along with the help of Defendant Ranalli." (*Id.* at 4). Century alleges that Esparza's previous representation of Pretner means that she "knew about and participated in the commission of these predicate acts." (*Id.* at 17).

### c. *Enterprise and pattern*

Despite these allegations, Century fails to adequately plead—let alone show by clear and convincing evidence—the elements of a RICO claim. *Shapiro*, 389 P.3d at 266. In order to sufficiently allege the existence of an enterprise, Century would have to show that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Indeed, Century fails to identify "an entity separate and apart from the pattern of activity in which it engages." *Id.* (defining "enterprise"). Instead, Century's allegations concern only an isolated court case wherein Prince, Ranalli, and Esparza interacted with one another regarding Pretner's claims against Vasquez and Blue Streak. (ECF No. 1).

Century's complaint also fails the "continuity requirement," which "focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). Prince's conduct during the course of the state court case does not "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (emphasis in original) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

As a result, Prince's allegations in state court that Vasquez acted in the course and scope of his employment, the assertion that Blue Streak owned the Ford F-150, and the subsequent execution of a settlement all do not sufficiently show an "enterprise" or a pattern of racketeering

activity.  This conduct also does not indicate that Prince—because of the resolution in a single complaint in state court—"amount[s] to or pose[s] a threat of continued criminal activity."  *Sever*, 978 F.2d at 1535.

Instead, the defendants' actions can, at best, be "characterized as a single episode with a single purpose which happened to involve more than one act taken to achieve that purpose," which is insufficient to sustain a RICO cause of action.  *Sever*, 978 F.2d at 1535.  Here, Century admits that there was *single* purpose, specifically the "bad faith" insurance scheme allegedly designed by Prince, Rinalli, and Esparza to obtain a multi-million dollar judgment against Century.  (ECF No. 1).  All other "predicate acts" are just steps taken to achieve that one purpose.  *Sever*, 978 F.2d at 1535.

Moreover, because all of the alleged instances of insurance fraud referenced in Century's complaint are in furtherance of a purported single bad-faith insurance "set up," Century has not adequately alleged multiple instances of insurance fraud that would constitute the "predicate acts" required to support a RICO claim.  *Perelman v. State*, 115 Nev. 190, 192 (Nev. 1999) ("Although NRS 686A.291 makes the filing of a false statement a crime, the overall intent of the statute is to address the filing of a false claim through the use of fraud, misrepresentations, or false statements. Thus, **when multiple false statements are made in support of one claim, only one crime has been committed**." (emphasis added)).[4]

In sum, Century has not sufficiently pleaded a pattern of activity or conduct.  Without a pattern of predicate acts, Century cannot sustain a RICO claim.  *Living Designs, Inc.*, 431 F.3d at 361.

### d.  *Racketeering activity*

This court now considers whether Century's complaint sufficiently alleges "racketeering activity (known as 'predicate acts')" to meet the third element of its RICO claim.  *Edwards*, 356 F.3d at 1066.  Prince's allegations in the state court complaint do not amount to offering false

---

[4]  While "proof of prior convictions of 'predicate crimes' or of a RICO violation is not a prerequisite to a civil RICO cause of action," the predicate acts follow the same analysis in a civil RICO claim as they would in a criminal RICO case.  *Hale v. Burkhardt*, 764 P.2d 866, 868 (Nev. 1988).

James C. Mahan
U.S. District Judge

1    evidence or to insurance fraud under NRS § 207.360.  Consequently, Century has not adequately

2    demonstrated a pattern of racketeering activity.

3         First, Prince's complaint does not satisfy the statutory definition of "offering false

4    evidence."[5]  Prince's complaint was not forged or fraudulently altered, and Century never contends

5    that it was.  *See* (ECF No. 1).  Moreover, Prince argues that the claims presented in the state court

6    complaint were not only made in good faith but also had sufficient factual and legal basis to assert

7    *respondeat superior* liability against Blue Streak.  (ECF No. 37 at 18).

8         In addition, Century has not shown, by clear and convincing evidence, that Prince ever

9    "knowingly and willfully" acted to defraud Century.  Nev. Rev. Stat. § 686A.2815; *Shapiro*, 389

10   P.3d at 266.  To the contrary, Prince argues he filed a good faith complaint, potentially preserving

11   a million dollar claim for his client with the statute of limitations about to run, and he informed

12   Century of that complaint.  *See* (ECF Nos. 1 at 8, 37 at 17).  Century alleges that insurance fraud

13   is a predicate act arising from Prince's complaint in state court.  (ECF No. 1 at 12–18).  In this

14   instance, however, negotiating a settlement agreement and covenant not to enforce and then

15   "persuading" Vasquez to sign it does not meet the statutory definition of insurance fraud.  *See* Nev.

16   Rev. Stat. § 686A.2815.

17        Century does not allege that the settlement between Prince and Progressive concealed or

18   omitted facts.  (ECF No. 1).  To the contrary, Century argues only that the complaint and settlement

19   agreement contained patently false information.  (ECF No. 44 at 11–14).  To the extent any of the

20   allegations in the complaint were false, Century had both notice of those claims and an opportunity

21   to contest the factual and legal allegations in the underlying state court complaint.  (ECF No. 37

22   at 5–6, 15–16).  Century was the one that elected to neither defend Vasquez nor Blue Steak in the

23   law suit, or *otherwise appear at all*.  (*Id.*).

24        Moreover, Progressive's policy limit offer and request for a covenant not to execute

25   predated Prince's involvement in the case:

26
_____

27        [5]  "A person who, upon any trial, hearing, inquiry, investigation or other proceeding
     authorized by law, offers or procures to be offered in evidence, as genuine, any book, paper,
     document, record or other instrument in writing, knowing the same to have been forged or
28   fraudulently altered, is guilty of a category D felony and shall be punished as provided in NRS
     193.130." Nev. Rev. Stat. § 199.210.

James C. Mahan
U.S. District Judge

- 13 -

> Progressive offered Pretner's prior counsel Esparza the full $100,000 from the beginning.  Because of the extent of Pretner's injuries, however, Esparza could not provide a release until all possible insurance coverage was exhausted.  Accordingly, on May 26, 2009, Esparza requested that Progressive provide a [c]ovenant [n]ot to [e]xecute to allow her to explore coverage under other policies, including the Century policy.

(ECF No. 37 at 4) (footnote omitted).

Esparza had been handling the claim for the years prior to Prince's involvement, and Esparza had consistently been offered Progressive's policy limits.  (*Id.* at 21).  Progressive made the same policy limit offer to Prince.  (*Id.*) ("Progressive proposed the covenant to Prince to finally be able to pay the policy limits *it had been offering for years*." (emphasis added)).  Prince even disclosed Progressive's policy limit offer to Century.  (*Id.* at 5) ("Prince sent Century a letter of representation that included a courtesy copy of the Pretner complaint . . . .  In the attached cover letter, Prince . . . disclosed the policy limits offer by Progressive . . . .").  Thereafter, Progressive hired Ranalli to negotiate the covenant after Century had denied the claim.  (*Id.*).  Prince did not and could not "orchestrate" an offer that was made prior to his involvement in the case.

The execution of a settlement agreement does not constitute—as Century contends—perjury, subornation of perjury, or obtaining a signature by false pretenses.  (ECF No. 1 at 17).  Century fails to allege any "representation of some fact or circumstance which is not true and is calculated to mislead."  *See Hale*, 764 P.2d at 868 (Nev. 1988).  Instead, Century alleges simply that Ranalli "persuaded" Vasquez to sign the agreement.  (ECF No. 1 at 16).

Consequently, Century has not adequately shown any racketeering activity to serve as the basis of a RICO claim.  To the contrary, Judge Gordon, presiding over the *Andrew* case, expressly ruled that "Century breached its duty to defend" in the underlying case.  *Andrew*, 2014 WL 1764740, at *6; *see also* (ECF No. 37 at 2) ("[Judge] Gordon ruled as a matter of law that Century breached its duty to defend its insureds, and was therefore bound by the state court judgment.").  Indeed, Judge Herndon was explicit in Century's failure to act during the hearing regarding Century's motion for leave in the underlying state court case:

> I think Century stuck their head in the sand and said, hey.  We determined we're not going to have coverage here because of what we believe the facts to be.  So we're going to stand back and we're not going to defend.  We're not going to intervene.  We're not going to seek any reservation of rights or any declaratory relief.  We're

just going to let the baby fall forward and hopefully we won't have any involvement. Then oops. It's going into default.

(ECF No. 38-26 at 34).

Accordingly, Prince did not and could not "orchestrate" Century's failure to defend. Instead, Prince contacted Century regarding Pretner's claims, and Century made a unilateral decision to deny coverage, refuse to defend Vasquez or Blue Streak, and to not appear in the state court litigation. (ECF No. 37).

### e.   Injury

Consistent with the foregoing, Century has failed to show that its injury "flow[s] from the defendant's violation of a predicate Nevada RICO act." *Allum v. Valley Bank*, 849 P.2d 297, 299 (Nev. 1993). Century admits that it "was aware of the underlying litigation" but chose not to appear in the litigation to defend its insured or contest Prince's allegations. (ECF No. 1 at 11). Instead, Century relied on "it[s] belie[f] that Progressive was defending the action." (*Id.*).

Despite relying on an unwarranted assumption that Progressive was litigating in its stead, Century contends that the default judgment was entered "as a result of the [d]efendants' actions." (*Id.* at 17–18). To the contrary, the injury stems from Century's failure to defend or appear. Century had notice of the litigation alleging coverage. (*Id.* at 11). In fact, Century does not dispute that "[a]s of June 27, 2011, Century had denied coverage, closed its file, and declined to defend Blue Streak or Vasquez." (ECF No. 37 at 6); *see also* (ECF No. 57 at 19). Thus, Century purposefully declined its opportunity to participate in the underlying state litigation.

As a result of Century's failure to sufficiently plead a RICO claim, the court does not need to address whether the absolute litigation privilege applies in this instance. Accordingly, the special motion to dismiss will be granted as to Century's RICO claim.

### ii.   Civil conspiracy

"In Nevada, an actionable civil conspiracy is defined as a combination of two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (internal quotation marks and citation omitted); *see also Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015) ("In Nevada, however, civil conspiracy

1  liability may attach where two or more persons undertake some concerted action with the intent to

2  commit an unlawful objective, not necessarily a tort.").

3        Here, Century's claim for civil conspiracy involves the "fraudulent" procurement of a

4  default judgment against Century by Prince, which invokes the requirements of Federal Rule of

5  Civil Procedure 9(b).  When pleading a claim for civil conspiracy, a plaintiff must plead with

6  particular specificity as to "the manner in which a defendant joined in the conspiracy and how he

7  participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984).

8        Century has not sufficiently pleaded either a "concerted action" or an "inten[t] to

9  accomplish some unlawful objective." *Flowers*, 266 F. Supp. 2d at 1249.[6]  The formation of "a

10  conspiracy agreement, explicit or tacit, to harm [Century]" constitutes a mere recitation of the

11  elements for civil conspiracy.  (ECF No. 1 at 18); *see also Iqbal*, 556 U.S. at 677.  Century's only

12  other allegation is a conclusory assertion of a "bad faith set up which wrongfully resulted in a

13  multi-million dollar judgment." (ECF No. 1 at 18).

14        First, Century has not shown by clear and convincing evidence that defendants Prince,

15  Ranalli, and Esparza acted in concert with one another.  *Shapiro*, 389 P.3d at 266.  Here, Century's

16  complaint alleges that Esparza joined and participated in the "conspiracy" by virtue of her

17  involvement in the decision to retain Prince and giving Prince her case file on Pretner's accident.

18  (ECF No. 1 at 7).  Century alleges that Esparza's previous representation of Pretner means that she

19  "knew about and participated in the commission of these predicate acts."  (*Id.* at 17).  This

20  conclusory allegation is not enough to sustain a finding that Esparza engaged in a civil conspiracy.

21        The complaint admits that "instead of retaining counsel to defend Vasquez and Blue Streak,

22  Progressive hired Defendant Ranalli to work with Prince to draft and execute the settlement

23  agreement."  (*Id.* at 9) (emphasis removed).  As a result, "Ranalli was instructed to work on a

24  settlement agreement as Prince had already agreed with Progressive regarding the assignment in

25  exchange for a covenant not to execute after payment of Progressive's policy limits."  (ECF No.

26  26 at 16).  As stated above, these facts show that Ranalli did not act in concert with Prince, as the

27

28        [6] The court need not address whether the civil conspiracy claim is time-barred under a four-year statute of limitations, or viable in conjunction with the RICO claim, because Century's RICO claim fails the anti-SLAPP analysis as a matter of law.

James C. Mahan
U.S. District Judge

settlement agreement had already been agreed upon.  Therefore, Century has failed to sufficiently allege—much less prove by clear and convincing evidence—a concerted action sufficient to maintain a cause of action for civil conspiracy.  *Shapiro*, 389 P.3d at 266.

Second, Prince's settlement agreement with Progressive in this case is not tortious, and therefore cannot be the basis for an "unlawful objective" to sustain Century's conspiracy claim. As previously discussed, Century had ample opportunity to engage in the litigation to protect its own interests and those of Blue Streak, but it elected instead to rely on its belief that Progressive was litigating in its place.  (ECF Nos. 1 at 11, 37 at 6).  Progressive, having appeared in the litigation, had the duty to defend its insured—Vasquez—and the right to enter into a good-faith settlement agreement.

> Factors to be considered by the Court in assessing whether a settlement is in good faith is the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants . . . Any negotiated settlement involves cooperation, but not necessarily collusion.  It becomes collusive when it is aimed to injure the interests of an absent tortfeasor. Moreover, the price of a settlement is the prime badge of its good or bad faith.

*In re MGM Grand Hotel Fire Litigation*, 570 F. Supp. 913, 927–928 (D. Nev. 1983).

In short, Century has not sufficiently shown that the settlement was in bad faith. Progressive's settlement with Prince was made at the outset of the claim and offered the policy limit.  *In re MGM Grand Hotel Fire Litigation*, 570 F. Supp. at 927–928; (ECF No. 37 at 4, 6–7). Moreover, Century has not shown that the negotiated settlement went beyond permissible cooperation to constitute tortious "collusion."  *In re MGM Grand Hotel Fire Litigation*, 570 F. Supp. at 927–928.  Indeed, Century had the opportunity to pay out on the insurance claim for its policy limit.  (ECF No. 37 at 4).  Alternatively, Century could have appeared in the litigation to dispute the existence of coverage, rather than unilaterally closing its file.  (ECF No. 37 at 5–7). As a result, Century has not shown by clear and convincing evidence that the aim of the negotiated settlement in the underlying case was to injure Century's interests.

Accordingly, the special motion to dismiss will also be granted as to the civil conspiracy claim.

James C. Mahan
U.S. District Judge

- 17 -

**IV.      Conclusion**

In sum, Century's SLAPP complaint is barred by Nevada law.  The special motion to dismiss satisfies the two-prong statutory test because Century's complaint is based on Prince's good faith petitioning of the court, and Century has not shown a likelihood of prevailing on either of its claims.  Nev. Rev. Stat. § 41.660(1).  As Ranalli and Esparza have joined in Prince's motion, the instant complaint is barred against all defendants. Thus, the complaint will be dismissed. Therefore, Century's objections to the order staying discovery are now moot.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the special motion to dismiss pursuant to NRS 41.660 (ECF No. 37) be, and the same hereby is, GRANTED with prejudice, as to all defendants.[7]

IT IS FURTHER ORDERED that Prince's first special motion to dismiss (ECF No. 17) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Esparza's motion to dismiss (ECF No. 18) and Ranalli's motion to dismiss (ECF No. 26) be, and the same hereby are, DENIED as moot.

IT IS FURTHER ORDERED that Century's objections to the order staying discovery (ECF No. 71) be, and the same hereby are, DENIED as moot.

The clerk shall enter judgment accordingly and close the case.

DATED July 13, 2017.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

---

[7]  "If the court dismisses the action pursuant to a special motion to dismiss filed pursuant to subsection 2, the dismissal operates as an adjudication upon the merits."  Nev. Rev. Stat. § 41.660(5)