UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CENTURY SURETY COMPANY, | Case No. 2:16-CV-2465 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| DENNIS PRINCE, et al., | |
| Defendant(s). | |

Presently before the court is defendant George Ranalli's motion for attorney's fees. (ECF No. 77). Plaintiff Century Surety Company filed a response (ECF No. 82), to which Ranalli replied (ECF No. 88).

Also before the court is defendant Dennis Prince's motion for attorney's fees. (ECF No. 79). Plaintiff filed a response (ECF No. 83), to which Prince replied (ECF No. 87).

Also before the court is defendant Silvia Esparza's motion for attorney's fees. (ECF No. 81). Plaintiff filed a response (ECF No. 84), to which Esparza replied (ECF No. 90).

**I.    Introduction**

The present case concerns an alleged scheme to fraudulently procure a multi-million dollar judgment against Century as a result of a catastrophic vehicle accident. (ECF No. 1). Century brought two claims against defendants: violations of Nevada Racketeer Influenced and Corrupt Organizations Act ("RICO") per NRS 207.470, *id.* at 12–18; and civil conspiracy, alleging that defendants Prince, Ranalli, and Esparza engaged in a "bad faith insurance 'setup,'" *id.* at 2, 18–19.

Michael Vasquez ("Vasquez") is the sole owner and manager of Blue Streak Auto Detailing, LLC ("Blue Streak"). (ECF No. 1 at 3). On January 12, 2009, Vasquez was driving his

Ford F-150 truck on St. Rose Parkway when he struck Ryan Pretner ("Pretner"), who was riding his bicycle on the shoulder of the road. (ECF Nos. 1 at 3, 37 at 3). Pretner was "violently thrown from his bicycle resulting in a catastrophic brain injury and over $2,000,000 in medical expenses." (ECF No. 37 at 3). Vasquez was allegedly "'off work' and running 'personal errands' at the time of the [a]ccident." (ECF No. 1 at 6).

At that time, Vasquez had a personal automobile liability insurance policy ("personal policy") from Progressive. *Id.* at 3. Blue Streak, a mobile detailing business owned and operated by Vasquez, was covered by a commercial liability garage coverage policy ("garage policy") from Century. (ECF Nos. 1 at 3, 37 at 3). The personal policy had a $100,000 policy limit whereas the garage policy had a $1,000,000 policy limit. (ECF No. 37 at 3).

Pretner was initially represented by Esparza. (ECF No. 1 at 7). Progressive offered Esparza the personal policy limit—$100,000—immediately following the accident. (ECF No. 37 at 4). Due to the severity of Pretner's injuries, "Esparza could not provide a release until all possible insurance coverage was exhausted." *Id.* at 4. Esparza made a demand on Century for its policy limit. *Id.* Century denied the demand, taking the position that coverage did not exist under its policy because Vasquez was not acting in the scope or course of business at the time of the accident. *Id.* Next, Esparza requested a copy of Century's garage policy. *Id.* However, Century refused to provide Esparza with a copy of the garage policy. *Id.*

Prince was retained by Pretner roughly three weeks prior to the applicable statute of limitations deadline. *Id.* at 17. At that time, Esparza's involvement in the case ceased. (ECF No. 18 at 3). Prince filed a complaint against Vasquez and Blue Streak "[o]n January 7, 2011, five days before the statute of limitations expired." (ECF No. 37 at 5).

Century alleges "Prince informed Progressive that he planned to represent [p]laintiffs before filing suit against Vasquez and Blue Streak, but assured Progressive that he planned to set up [p]laintiff Century Surety for a subsequent bad faith claim and that he would not pursue Vasquez personally." (ECF No. 1 at 4). Century further alleges "[t]here was no evidence to support [that Vasquez was in the course and scope of his business at the time of the accident] and

all of the evidence available and known to [Prince, Esparza, and Ranalli], expressly contradicted material allegations in the complaint." *Id.*

Prince, on the other hand, argues that "[t]he claims against Blue Streak were based upon allegations that Vasquez was in the course and scope of his employment at the time of the collision." (ECF No. 37 at 5). Moreover, Prince argues that the allegations in the state complaint were supported by case law, the nature of the business, and a potential witness. *Id.*

Century was informed that Prince represented Pretner, that there were allegations that there may be coverage under Century's garage policy, and was provided a copy of the complaint. (ECF Nos. 1 at 8, 37 at 5). Century's response was merely to provide Prince with a copy of the garage policy. (ECF No. 37 at 6). Century elected to neither indemnify nor defend Vasquez or Blue Streak, believing that coverage did not exist under its policy and "that Progressive was defending the action." (ECF No. 1 at 8); *see also* (ECF No. 37 at 6).

Defaults were entered against Vasquez and Blue Streak on June 27, 2011. (ECF Nos. 1 at 8, 37 at 6). Prince sent copies of the defaults to Century. (ECF No. 37 at 6). Century replied that it had "no coverage for this matter" and that Progressive was handling the case. *Id.*

Thereafter, Progressive and Prince negotiated a settlement agreement, and Progressive retained Ranalli to "represent Vasquez and Blue Streak in connection with the covenant and settlement negotiations." *Id.* at 7. "Progressive informed [d]efendant Ranalli that Prince 'has agreed to give us a [c]ovenant [n]ot to [e]xecute in exchange for the payment of our policy limit' and instructed [d]efendant Ranalli to work with Prince to draft a settlement agreement." (ECF No. 1 at 9).

> Progressive and Defendant Prince agreed to a settlement under which Progressive would pay its $100,000 policy limit, Pretner and his co-legal guardians would obtain an assignment by Blue Streak and Vasquez of their rights to proceed against Plaintiff Century Surety under the Garage Policy, and Defendant Prince would proceed to obtain a default judgment against Vasquez and Blue Streak. The agreement also provided that Pretner and his co-legal guardians would provide a covenant not to execute on the resulting [state court] judgment.

*Id.* Vasquez was allegedly "reluctant to sign" the settlement agreement "because he did not believe Century Surety had any responsibility for the accident," and executed the agreement only due to "pressure from Defendant Ranalli." *Id.* at 9–10.

"On February 15, 2012, Prince filed an [a]pplication for [e]ntry of [d]efault [j]udgment requesting judicial determination of damages" and, after a hearing, a default judgment in the amount of $18,050,185.45 was entered in plaintiffs' favor. (ECF No. 37 at 7); *see also* (ECF No. 38–16). Subsequently, Prince, as a result of the assignment of rights and the covenant not to execute, filed *Andrew v. Century Sur. Co.* in state court, and Century removed the case to federal court. *See* No. 2:12-CV-00978-APG-PAL, 2014 WL 1764740 (D. Nev. Apr. 29, 2014); (ECF No. 26 at 3). Prince, on behalf of his client, sought to collect "damages related to the default judgment and Century's bad faith." (ECF No. 37 at 7–8); *see also* (ECF No. 1 at 11).

Century filed an answer in the *Andrew* case on June 15, 2012, arguing "[p]laintiffs' alleged right to seek damages against Century was obtained through fraud, misrepresentation, and/or collusion."[1] (ECF No. 37 at 7). Century first tried, in October 2012, to intervene in the state court action, but its motion to intervene was denied in its entirety. *Id.* at 7–8. Century never filed any counterclaims in the *Andrew* case and has been denied the opportunity to reopen discovery to investigate its fraud and collusion defense "because Century had 'raised that issue from the outset.'" *Id.* at 8.

On December 2, 2016, defendant Prince filed a motion for leave to file excess pages related to his special motion to dismiss. (ECF No. 16). On December 5, 2016, Prince filed his special motion to dismiss. (ECF No. 17). Also on December 5, 2016, defendant Esparza filed a motion to dismiss. (ECF No. 18). On December 12, 2016, defendant Ranalli filed a motion to dismiss. (ECF No. 26).

On December 13, 2016, Magistrate Judge Leen denied Prince's motion for leave to file excess pages. (ECF No. 32). On December 16, 2016, Prince filed a renewed special motion to dismiss which comported with the requirements of LR 7-4. (ECF No. 37). On July 13, 2017, this court granted defendant's special motion to dismiss, thereby dismissing plaintiff's claims against

---

[1] As of March 27, 2018, the *Andrew* case is stayed pending resolution of a certified question of law to the Nevada Supreme Court. *See Andrew*, 2:12-cv-00978-APG-PAL (ECF No. 256); *Century Surety Co v. Andrew (NRAP 5)*, case no. 73756 (Nev.).

**James C. Mahan**
**U.S. District Judge**

- 4 -

defendants.[2] (ECF No. 75). In its order, this court held that Nevada's anti-SLAPP statute precluded plaintiff from bringing its RICO and civil conspiracy claims against defendants. *Id.*

## II. Legal Standard

Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorney's fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof. Moreover, "[a] federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). A Nevada trial court "may not award attorney fees absent authority under a statute, rule, or contract." *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1028 (Nev. 2006).

In *Brunzell*, the Nevada Supreme Court articulated four factors for a court to apply when assessing requests for attorney's fees:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

455 P.2d at 33. The trial court may exercise its discretion when determining the value of legal services in a case. *Id.* at 33–34.

Additionally, a trial court applying Nevada law must utilize *Brunzell* to assess the merits of a request for attorney's fees, yet that court is not required to make findings on each factor. *Logan v. Abe*, 350 P.3d 1139, 1143 (Nev. 2015). "Instead, the district court need only demonstrate that it considered the required factors, and the award must be supported by substantial evidence." *Id.* (citing *Uniroyal Goodrich Tire Co. v. Mercer*, 890 P.2d 785, 789 (Nev. 1995), *superseded by statute on other grounds as discussed in RTTC Commc'ns, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 29 n.20 (Nev. 2005)).

. . .

---

[2] The order denied defendant Esparza and Ranalli's motions as moot. (ECF No. 75).

James C. Mahan
U.S. District Judge

- 5 -

### III. Discussion

Nevada's anti-SLAPP statute provides that courts shall award reasonable attorney's fees and costs to parties against whom a SLAPP complaint was filed and dismissed. Nev. Rev. Stat. § 41.670(1)(a). Courts may also award up to $10,000 in statutory damages to the party against whom a SLAPP complaint was filed and dismissed. Nev. Rev. Stat. § 41.670(b).

*a. Defendant Ranalli's motion for attorney's fees and costs*

Defendant Ranalli requests attorney's fees and costs of $23,258.00 for work performed by Riley Clayton and Kathy McCarthy of Hall Jaffe & Clayton LLP.[3] (ECF No. 77-1 at 7). Plaintiff does not contest defendant's entitlement to attorney's fees and costs[4]. (ECF No. 83). Further, plaintiff does not contest the reasonableness of counsel's billing rates. *Id.* Instead, plaintiff argues that counsel cannot recover for fees unrelated to the anti-SLAPP motion, that counsel billed an unreasonable amount of hours in litigating this case, and that defendant is not entitled to statutory damages. *Id.*

*i. Whether Ranalli can recover for fees unrelated to the anti-SLAPP motion*

Plaintiff argues that Ranalli cannot recover for attorney's fees that were not related to the anti-SLAPP motion. (ECF No. 83). The parties' briefings have not directed the court to Nevada caselaw interpreting the attorney's fee provision in Nevada's anti-SLAPP statute, and the court's independent research yielded no Nevada caselaw on point. However, the Nevada Supreme Court has previously noted the similarities between Nevada's anti-SLAPP statute and California's: "When [analyzing] Nevada's anti-SLAPP statute . . . we consider California caselaw because California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute." *See John v. Douglas County School Dist.*, 125 Nev. 746 (2009) (superseded by statute on other grounds as recognized in *Delucchi v. Songer*, 396 P.3d 826 (Nev. 2017)). Therefore, Ninth Circuit case law regarding California's anti-SLAPP statute is instructive.

---

[3] Ranalli requests $23,235.00 in attorney's fees (which does not include the cost of preparing a reply in support of his motion for attorney's fees) and $23.00 in costs. (ECF No. 77-1).

[4] Plaintiff posits that Ranalli, Prince, and Esparza's costs incurred in litigating this case were reasonable. *See* (ECF No. 83).

James C. Mahan
U.S. District Judge

In *Graham-Sult v. Clainos*, 756 F.3d 724 (9th Cir. 2014), the court faced a similar argument to the one raised here. The district court in *Graham-Sult* granted fees for hours that defendants' lawyers expended that were not exclusively in pursuit of the anti-SLAPP motion. On appeal, plaintiff argued the trial court abused its discretion in awarding fees for hours not spent exclusively in pursuit of the anti-SLAPP motion. *Id.* at 752.

The court held that the award of attorney's fees in that case was not an abuse of discretion. *Id.* "[T]he entire action against [defendants] *was* subject to the motion to strike; no causes of action against them survived it." *Id.* "Further, the anti-SLAPP statute is 'intended to compensate a defendant for the expense of responding to a SLAPP suit. To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit.'" *Id.* (citing *Wanland v. Law Offices of Mastangi, Holstedt & Chiurrazi*, 141 Cal. App. 4th 15 (2006)).

Here, the court holds that Ranalli is entitled to recover all reasonable attorney's fees incurred in defending this action, even those not directly related to the anti-SLAPP motion. Similarly to the defendants in *Graham-Sult*, the defendants in this case would not need to litigate this suit whatsoever but for plaintiff's baseless allegations. Therefore, the court will not limit defendant Ranalli's recovery to fees that directly relate to the anti-SLAPP motion.

Defendant Ranalli's motion adequately applies the *Brunzell* factors to this case. Defendant's motion highlights the qualities of the attorneys and demonstrates that they charged reasonable rates and delegated work appropriately. (ECF No. 77 at 5-6). Further, the character of the work done and the work actually performed by the lawyer merit the requested award. The case, which alleged civil conspiracy and racketeering against prominent lawyers, posed novel questions of law, and defendant Ranalli's attorneys pursued an appropriate litigation strategy to ensure their client's interests were protected. Furthermore, the actual result was very favorable to their client, as the court's order granting defendant Prince's motion to dismiss effectively terminated the litigation against defendant Ranalli. Accordingly, the *Brunzell* factors merit the requested award.

. . .

### ii. Whether Ranalli's counsel billed an unreasonable number of hours

Plaintiff requests that the court reduce Ranalli's requested fee award by $78. (ECF No. 83). Plaintiff states that Ranalli's counsel unreasonably billed its time for an errata related to its joinder to defendant Prince's re-filed anti-SLAPP motion. *Id.* Ranalli argues that the errata was not filed to correct an error his counsel made; instead, the errata ensured that Ranalli's joinder would cite to the re-filed underlying motion. (ECF No. 88). The court holds that the time spent by counsel in filing its errata was reasonable.

### iii. Whether Ranalli is entitled to statutory damages

Under Nevada's anti-SLAPP statute, a court may award, in addition to reasonable costs and attorney's fees, up to $10,000 to a prevailing party. Nev. Rev. Stat. § 41.670(1)(b). The party seeking the award bears the burden of establishing entitlement to such award. *See Voggenthaler v. Md. Square, LLC*, no. 2:08-cv-01618-RCJ-GWF, 2010 WL 4316883, at *2 (D. Nev. Oct. 20, 2010). The choice to grant an award under NRS § 41.670(1)(b) lies within the court's discretion. *Id.*

Ranalli argues that plaintiff filed this lawsuit as a "last ditch effort to avoid the default judgment that had been entered against it in the underlying [state court] case." (ECF No. 77). Ranalli asserts that the court should award the maximum statutory award to punish plaintiff for its conduct and to compensate Ranalli for the damage to his reputation occasioned by the filing of a lawsuit alleging he committed RICO and civil conspiracy violations. *Id.*

Plaintiff argues that it engaged in the present litigation due to a "good faith belief that its claims were proper and supported by the evidence." (ECF No. 83). Plaintiff states that the related federal litigation (*Andrew*) had not been decided and was still being litigated at the time defendant filed the instant motion for attorney's fees.[5] *Id.* Plaintiff further notes that the purpose of the statutory award is to deter sanctionable conduct on behalf of plaintiffs, and not to award defendants compensatory damages. *Id.*

The court declines to award defendant statutory fees pursuant to NRS § 41.670(1)(b). Ranalli has not demonstrated that this case, and plaintiff's litigation strategies in pursuing it, are

---

[5] As the court previously noted, the *Andrew* litigation is currently stayed.

so unusual so as to justify a punitive award. The fee-shifting provision of NRS § 41.670(1)(a) provides for just compensation and deterrence in this case.

  *iv.*  *Summary*

  The court will award Ranalli attorney's fees for all billed hours detailed in his motion at the rates contained therein.[6] Therefore, the court will award defendant Ranalli attorney's fees in the amount of $23,235.00 and costs of $23.00.

  b. *Defendant Prince's motion for attorney's fees and costs*

  Defendant Prince requests attorney's fees and costs of 79,027.60 for work performed by himself and Erica Entsminger of Eglet Prince and Joseph Garin, Megan Hummel, Amber Williams, Nancy Cooper, and Josephine Sineneng-Tejada of Lipson, Neilson, Cole, Seltzer & Garin, P.C.[7] (ECF No. 79). Plaintiff does not argue that Prince should be completely precluded from obtaining a fee award. Instead, plaintiff argues that neither Prince nor his law partner can recover for time spent working on this case. (ECF No. 84). Further, plaintiff argues that Prince's use of the *Laffey* matrix to inflate billing rates is inappropriate. *Id.* Furthermore, plaintiff argues that counsel billed an unreasonable amount of hours in litigating this case. *Id.* Finally, plaintiff argues that Prince is not entitled to statutory damages. *Id.*

  *i.*  *Whether Prince is entitled to attorney's fees for work he performed on this case*

  Prince is not entitled to attorney's fees for work that he personally performed while on this case. An attorney who represents himself during litigation is ordinarily not allowed to recover attorney's fees based on his own representation. *See Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001) (citing *Trope v. Katz*, 902 P.2d 259 (Cal. 1995), for the proposition that an attorney representing himself cannot recover fees under the applicable California statute).

---

[6] Clayton billed 34.5 hours at $210 an hour for a total of $7,245. McCarthy billed 82 hours at $195 an hour for a total of $15,990.

[7] Prince requests $79,012.00 in attorney's fees (which does not include the cost of preparing a reply in support of his motion for attorney's fees) and $15.60 in costs. (ECF Nos. 79-3, 79-5).

The parties' arguments pertaining to this topic focus primarily on California state law governing attorney's fee awards. Prince, as the moving party, has the burden of demonstrating that he is entitled to attorney's fees. *See Voggenthaler*, 2010 WL 4316883, at *2. Prince has not cited any case law to support the proposition that he can recover attorney's fees for his personal involvement in this case. Accordingly, the court will deny Prince's motion to the extent it requests an award of attorney's fees based on Prince's own time entries.

> ii. *Whether Prince is entitled to attorney's fees for work his partner performed on this case*

Prince argues that he is entitled to attorney's fees for work that Entsminger, a partner at Prince's firm, performed on the case. (ECF No. 79). Prince asserts that Entsminger's work for Prince in his personal capacity demonstrates the existence of a valid attorney-client relationship. (ECF No. 87). Plaintiff responds that Prince cannot recover for attorney's fees incurred by a fellow law partner. (ECF No. 83).

Here, Entsminger's time entries demonstrate that she spent 39 hours working on this case, including drafting the special motion to dismiss. (ECF No. 79-3). This work was on behalf of Prince in his personal capacity, and not in his capacity as a partner of Eglet Prince. Further, Prince's assertions regarding the existence of an attorney-client relationship demonstrate that Prince could be personally liable to Entsminger for these fees in the event the court declined to award attorney's fees for the work performed by Entsminger.

Plaintiff cites the lack of a formal written agreement between Prince and Entsminger as support for its proposition that Prince cannot recover attorney's fees for the work performed by Entsminger. In Nevada, a formal written agreement is not required for an attorney-client relationship to exist. *Williams v. Waldman*, 108 Nev. 466, 471 (1992). Further, Entsminger represented Prince in his personal capacity, and not based on Prince's status as a member of their law firm. The court holds that Prince can recover attorney's fees for the work performed by Entsminger even though the parties did not execute a written agreement.

Plaintiff's other arguments regarding Entsminger's eligibility to receive a fee award are based upon California law and do not invalidate Prince's entitlement to pursue attorney's fees based on work performed by Entsminger. *See* (ECF No. 83).

James C. Mahan
U.S. District Judge

- 10 -

       *iii.      Whether the court should adjust counsels' billing rates based on the Laffey matrix*

Prince requests that the hourly rates for the attorneys who represented him in this case be adjusted based on the *Laffey* matrix. (ECF No. 79). The *Laffey* matrix represents reasonable inflation-adjusted billing rates for Washington D.C. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Multiple courts have refused to extend the matrix to cases outside of the District of Columbia. *See, e.g., id.*; *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009); *Voggenthaler*, 2010 WL 4316883, at *3. This court will not use the *Laffey* matrix in its lodestar calculations.

The court will use the hourly rates for Entsminger, Williams, Cooper, and Sineneng-Tejada listed in Prince's exhibit 3 in its lodestar calculations. *See* (ECF No. 79-3) (detailing the hourly rates actually billed in this case). Prince cites the difficulty of litigating anti-SLAPP lawsuits as a reason to inflate the hourly billing rates of counsel. (ECF Nos. 79, 87). However, as plaintiff notes, Prince never explains why Entsminger, Williams, Cooper, and Sineneng-Tejada are particularly qualified to litigate anti-SLAPP claims. (ECF No. 83). Accordingly, the court will not adjust the billing rates presented in the attachments to defendant's motion, *see* (ECF No. 79-3 at 2), as these rates represent reasonable hourly rates for the work performed.

The court will adjust the rate for work performed by Garin. As his affidavit demonstrates, Garin has extensive experience litigating professional liability claims. (ECF No. 79-2). Further, Garin normally bills $425 per hour to clients. *Id.* As this rate represents a reasonable rate for an attorney with Garin's experience,[8] the court will use $425 an hour as the lodestar rate when analyzing fees awardable for Garin's work.

The court will also adjust the rate for work performed by Hummel. Hummel has been licensed to practice law since 2011. *Id.* Further, "Hummel has drafted a number of anti-SLAPP motions and defendant several clients against RICO claims in federal court." *Id.* The court will use $250 an hour as the lodestar rate when analyzing fees awardable for Hummel's work. *See Sinanyan v. Luxury Suites Int'l, LLC*, no 2:16-cv-00690-GMN-NJK, 2016 WL 4394484, at *4 (D.

---

[8] *See Sinanyan v. Luxury Suites Int'l, LLC*, no 2:16-cv-00690-GMN-NJK, 2016 WL 4394484, at *4 n.4 (D. Nev. Aug. 17, 2016) (collecting cases).

James C. Mahan
U.S. District Judge

Nev. Aug. 17, 2016) ("Rate determinations in other cases in the District of Nevada have found hourly rates as much as . . . $250 for an experienced associate to be the prevailing market rate in this district.").

### iv. *Whether Prince can recover for fees unrelated to the anti-SLAPP motion*

Plaintiff argues that Prince cannot recover a fee award for work unrelated to the anti-SLAPP motion. (ECF No. 84). As the court explained previously in ruling on defendant Ranalli's motion, the court holds that Prince can recover for attorney's fees not directly related to his anti-SLAPP motion.

### v. *Whether Prince's counsel billed an unreasonable amount of hours*

Plaintiff cites ten itemized billing lines from defendant Prince's motion that plaintiff argues were inefficient, unnecessary, and otherwise redundant. (ECF No. 84). The line items relate to counsel's work in preparation to re-file the special motion, which initially exceeded the page limitations outlined in the local rules. *See* (ECF Nos. 17, 37).

The court holds that the line-items related to re-drafting the special motion to dismiss were not reasonably billed in this case.[9] Magistrate Judge Leen's order denying plaintiff's motion notes that defendant Prince's motion was more than double the maximum allowable length pursuant to LR 7-4(b). The court was "not at all satisfied" that good cause existed to allow defendant to exceed the page limits outlined in LR 7-4. Therefore, the court holds that the costs incurred by defendant in re-preparing and re-filing its motion were the result of inefficiencies and cannot be passed on to plaintiff. However, the court will allow the costs related to preparing the motion to exceed page limits and related to LNCSG's initial review of Magistrate Judge Leen's order. Therefore, the court will reduce attorney Entsminger's allowable hours by 3.9.

The court holds that the rest of the hours billed were reasonable. In his motion, defendant Prince notes "the *Brunzell* factors weigh heavily in favor of awarding the requested fees." (ECF No. 79 at 7). Prince's attorneys brought significant litigation experience to this case and obtained a very favorable outcome for their client. The case presented unique questions of law that required

---

[9] As the first line item references defendant Prince's personal work on this case, and the court has already held that defendant Prince cannot bill for his own time spent on the case, the court will not consider whether the contested item was reasonably billed.

James C. Mahan
U.S. District Judge

- 12 -

sophisticated legal representation. Further, plaintiff does not contest defendant's entitlement to some measure of attorney's fees. *See* (ECF No. 84) (suggesting that defendant Prince should receive attorney's fees in the amount of $13,236.30). The court holds that the adjusted fee award in this case is reasonable. *See Brunzell*, 455 P.2d at 33.

      *vi.    Whether Prince is entitled to statutory damages*

Prince requests $10,000 in statutory damages "to Deter Century from Filing Additional SLAPP Lawsuits." (ECF No. 87). As the court discussed previously, statutory damages are not appropriate in this case. Prince's arguments regarding deterrence do not persuade the court that statutory damages are appropriate in this case, as there is no evidence that plaintiff engages in a pattern or practice of bringing SLAPP lawsuits. Therefore, the court will not award Prince statutory damages.

      *vii.    Summary*

Defendant Prince is entitled to attorney's fees in the following amounts:

| | | |
|---|---|---|
| Entsminger: $400/hour for 35.1 hours | — | $14,040.00 |
| Garin: $425/hour for 21.8 hours | — | $9,265.00 |
| Hummel: $250/hour for 35.2 hours | — | $8,800.00 |
| Williams: $200/hour for 15.5 hours | — | $3,100.00 |
| Cooper: $110/hour for 3.80 hours | — | $418.00 |
| Sineneng-Tejada: $110/hour for 0.9 hours | — | $99.00 |
| **Total:** | — | **$35,722.00** |

The court will award Prince costs of $15.60.

    *c.    Defendant Esparza's motion for attorney's fees and costs*

Defendant Esparza requests $4,200[10] in attorney's fees and $278.77 in costs for work performed by Matthew Sharp or Matthew L. Sharp, Ltd. (ECF No. 81-2). Plaintiff responds that an across-the-board 10-30% reduction in fees is appropriate, as Esparza's time entries are formatted as monthly block-billing entries. (ECF No. 85).

---

[10] Counsel's invoice appears to contain a mathematical error. *See* (ECF No. 81-2 at 2). Counsel billed 10 hours in December of 2016 at $250 an hour, which should equal $2,500; however, counsel's invoice lists the billed amount for December to be $2,250. *Id.*

| | |
|---|---|
| 1 | The court holds that a summary reduction of hours billed is inappropriate in this case. The billing entries at issue provide sufficient detail for meaningful analysis. *See* (ECF No. 81-2). The court holds that the billing entries in this case are reasonable, and will award Esparza attorney's fees of $4,200 (16.8 hours at $250/hour). |

### IV. Conclusion

Defendants motions demonstrate that attorney's fees are proper in the instant matter. The court holds that Ranalli is entitled to $23,258.00 in attorney's fees and costs, Prince is entitled to $35,737.60 in attorney's fees and costs, and Esparza is entitled to $4,478.77 in attorney's fees and costs.

The court will not award fees pursuant to NRS § 41.670(1)(b).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Ranalli's motion for attorney's fees (ECF No. 77) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Prince's motion for attorney's fees (ECF No. 79) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Esparza's motion for attorney's fees (ECF No. 81) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that defendants Ranalli, Prince, and Esparza shall file proposed judgments consistent with this order within twenty-one (21) days of the date of this order.

DATED March 28, 2018.

_____
UNITED STATES DISTRICT JUDGE